**Declaration of Paulino L. Verástegui Palao**

1. I am a lawyer graduated from the Universidad Mayor de San Andrés, La Paz, Bolivia, with a diploma as a state-approved National Attorney. I am an expert in criminal procedure and have been a speaker, professor and participant at numerous courses and conventions on this topic, as reflected in my Curriculum Vitae, which I have attached to this declaration.

2. I have served as a consultant on criminal justice issues for Bolivian and international organizations, and have worked as a professional in this area for more than a decade.

3. Currently, I am a specialized Professional Lawyer in the Access to Justice Project of the Swiss Development Agency (COSUDE).

4. The lawyers who represent the plaintiffs in the case before the United States Federal Court, *Mamani v. Sánchez de Lozada and Sánchez Berzaín*, have asked my opinion regarding a series of legal questions related to Bolivian law. The questions and my responses are presented below.

**Questions and Brief Answers**

5. (a) Whether the payment received by the plaintiffs, through Law No. 3955, of November 6, 2008 (Law for the Victims of the Events of February, September and October 2003), and/or through the Convention on Humanitarian Assistance of November 20, 2003, would have any impact under Bolivian law that would preclude a civil suit against Gonzalo Sánchez de Lozada and José Carlos Sánchez Berzaín, for injuries and deaths suffered as a consequence of the events of September and October 2003.
    (b) Short Answer: As explained in more detail below, according to Bolivian law, none of the benefits described here would prevent a civil suit in Bolivian or international courts against individuals responsible for the injuries and deaths that are alleged in the lawsuit.

6. (a) Whether the plaintiffs may file a civil suit in Bolivia against Sánchez de Lozada and José Carlos Sánchez Berzaín for compensation or reparation for damages as provided in the Criminal Procedures Code, articles 382-388, in order to establish their liability for injuries and deaths suffered as a consequence of the events of September and October 2003.
    (b) Short Answer: As explained in more detail below, the plaintiffs in this action may not present a civil suit in Bolivia against Sánchez de Lozada and Sánchez Berzaín for the injuries that are alleged in the lawsuit because the essential prerequisite to pursue a civil action for injuries that arise from a crime is that the defendants must have been previously convicted and sentenced to prison for those events in a criminal prosecution, and a criminal prosecution against Sánchez de Lozada and Sánchez Berzaín is not possible while they are absent from the country.

7. (a) Whether, under Bolivian law, a lawsuit filed by the plaintiffs and/or other persons against third parties would preclude a civil suit against Gonzalo Sánchez de Lozada and José Carlos Sánchez Berzaín for injuries and deaths suffered as a result of the events of September and October 2003.

1

(b) <u>Short Answer</u>:  As explained in more detail below, according to Bolivian law, civil suits filed against third parties, that is, against individuals other than Sánchez de Lozada and Sánchez Berzaín, would have no effect on the legal liability of Sánchez de Lozada and Sánchez Berzaín for the damages that are alleged in the lawsuit.

8. (a) Whether the Bolivian government would be legally responsible for satisfying the damages awarded in any civil suit in a Bolivian court with regard to injuries and deaths suffered as a consequence of the events of September and October 2003, as set forth in article 94 of the Bolivian Criminal Code.

(b) <u>Short Answer</u>: As explained in more detail below, article 94 of the Bolivian Criminal Code was annulled in 1999, and if a ruling against any individual were obtained in civil court, as reparations for the damages caused by the events of September and October 2003, and if said individual did not have the necessary funds to satisfy the reparation order, the Bolivian Government would not be responsible in any way for the payment of this reparation.

9. (a) Whether the amount of money that has been paid to the plaintiffs through the 2003 and 2008 laws has any proportional relationship to the damages that might be available if the plaintiffs were able to present civil suits in Bolivia against Gonzalo Sánchez de Lozada and José Carlos Sánchez Berzaín.

<u>(b) Short Answer</u>:  As explained in more detail below, if the plaintiffs in this action were able to present a civil suit against Sánchez de Lozada and Sánchez Berzaín in Bolivia, they could be awarded reparations that are much greater that the amounts received under the laws of 2003 and 2008, which grant humanitarian aid to victims of the 2003 events.  This is because, amongst others things, a judgment against Sánchez de Lozada and Sánchez Berzaín could include moral damages.

## Detailed Answers

<u>Question No. 1:</u>

10. As to whether the payment made to the plaintiffs based on Law 3955 and other conventions would prevent a civil suit against Sánchez de Lozada and Sánchez Berzaín, it is necessary to point out that the Bolivian Government, through Law 3955 of November 6, 2008 and other conventions, has provided a series of humanitarian aid measures that include a single payment, academic support and public recognition, such as the construction of commemorative squares in municipalities with the names of the deceased victims of the State violence in September and October 2003.

11. These measures are characterized as humanitarian support and do not constitute recognition of liability on behalf of the State, which would only arise if the Bolivian State had been ordered by a court to provide reparation for damages.

12. This liability of the State is addressed in Article 113.II of the Political Constitution of the State, which establishes that, when the State is sentenced to provide reparation for damages, it must in turn initiate a series of "repetition" actions to collect from the officials who caused the damage (in this case Sánchez de Lozada and Sánchez Berzaín), so that they reimburse the public money that the State distributed to the victims as reparation for damages, even more so in this case, as it concerns violations of human rights.

13. No "repetition" action has been initiated in this case because the payments made by the Bolivian State constituted humanitarian aid and not recognition of civil liability for damages caused.

14. Therefore, although article 113.II of the Bolivian Constitution establishes a procedure through which one can attempt to establish State liability for violation of human rights, in this case, there has been no legal recognition that the Bolivian State is responsible for the injuries and deaths suffered as a consequence of the events of September and October 2003. In addition, the State has initiated criminal proceedings against the responsible parties for said acts in order to prevent their impunity.

15. It is important to point out that as long as Sánchez de Lozada and Sánchez Berzaín do not return to Bolivia to face the criminal charges that have been brought against them, the conditions under which the plaintiffs may initiate a process for reparation for damages in Bolivia do not exist.

**Question No. 2:**

16. The plaintiffs may not file a civil suit in Bolivia against Sánchez de Lozada and Sánchez Berzaín for reparation for damages for injuries suffered as a consequence of the events of September and October 2003, as provided in articles 382 to 388 of the Code of Criminal Procedure. This is because the essential requirement in order to proceed via this route is that both defendants (Sánchez Lozada and Sánchez Berzaín) must first be convicted and sentenced to prison for these events in criminal proceedings, through a criminal prosecution that must be brought before the Bolivian Supreme Court of Justice in Proceedings for Liability against High Dignitaries of State.

17. According to Bolivian law, a civil action for reparation for damages that are the product of the commission of a crime may only be initiated after a criminal conviction. Articles 382 to 388 of the Code of Criminal Procedure set forth the procedure for seeking reparation for damages that are the product of the commission of a crime. To initiate this procedure, it is necessary that there be in place an enforceable criminal conviction, that is, there must not be any judicial appeals pending.

18. Given that the defendants in this action, Sánchez de Lozada and Sánchez Berzaín, have not been convicted for the crimes committed in September and October 2003 in Bolivia, such a civil action cannot be presented against them in Bolivia.

19. In order for a criminal case against Sánchez de Lozada and Sánchez Berzaín to move forward, they must be present in Bolivia, as Bolivian criminal procedure does not permit criminal prosecution of persons who are absent from the country. This is set forth in article 90 of Law 1970 (Code of Criminal Procedure), which establishes that when the defendant does not appear before the judge when subpoenaed, the judge will hold him in contempt and order the case suspended.

20.     Constitutional Court Judgment Nº1109/2006-R, of November 1, establishes, as binding precedent, the following parameters:

> *Proceedings for reparation for damages require, as prerequisite for admissibility, the existence of an enforceable conviction that imposes a prison sentence or a security measure, allowing the victim either in this capacity, or as plaintiff, to demand reparation for damages caused or the corresponding compensation, for which purpose they must present their claim before the sentencing judge (art. 382 of the CPP (Code of Criminal Procedure).*

Therefore, neither Sánchez de Lozada nor Sánchez Berzaín may be held liable in civil proceedings in Bolivia for the reparation of damages that are product of the events of September and October 2003 as long as they have not been convicted in criminal proceedings. In their case these proceedings can only be brought before the Bolivian Supreme Court of Justice.

### Question No. 3

21.     I am aware through press reports that a civil suit has been presented in Bolivia by virtue of the Code of Criminal Procedure, articles 382-388, against seven ex-officials of the government of Sánchez de Lozada, who were convicted by the Supreme Court of Justice for their participation in the events of September and October 2003, after a criminal trial in Bolivia.

22.     As has been explained, according to Bolivian law, such an action can only be brought after criminal conviction. Given that the civil action against Sánchez de Lozada and Sánchez Berzaín cannot be brought without a prior criminal conviction, it is also not possible to join a civil action against Sánchez de Lozada and Sánchez Berzaín to the pending action that has been brought in Bolivia against those sentenced to prison, in this case the ex-military chiefs.

23.     Moreover, according to Bolivian law, article 383 of the Code of Criminal Procedure establishes that the civil action must be against the person who was convicted. Therefore, civil claims filed against third parties for the events of September and October 2003, in this case against individuals other than Sánchez de Lozada and/or Sánchez Berzaín, can have no effect with respect to the legal liability of the defendants in this case, as they have not been convicted.

### Question No. 4

24.     The Bolivian Government has no obligation to establish a reparation fund for fulfilling a sentence in a civil claim for damages resulting from crimes.

25.     Within this context, the former article 94 of the Bolivian Criminal Code of 1972 incorporated the Reparation Fund and established:

> *The State shall create and govern the functioning of a Reparation Fund in order to provide payment for civil liability in the following cases: 1. To victims of crime, in the event of insolvency or incapacity of the convicted party, 2. To victims of judicial error, 3. To victims, where the cause of their state of need cannot be*

4

> *determined. In addition to the resources that this law establishes and those indicated under this Code, the Fund shall be increased through a. Unclaimed inheritance from those responsible for the crimes, b. Confiscated securities and assets from the crime, that have not been claimed within six months from pronouncing sentence; c. Donations that are made to the fund.*

However, article 94 was annulled through the sixth final provision (derogation and annulments), part 2 of Law Nº 1970, Code of Criminal Procedure, of March 25, 1999.

26.     Currently, Law Nº 1970, Code of Criminal Procedure, has replaced the Reparations Fund with a Compensation Fund. This is established in Article 276 and indicates: "The Judiciary Council shall administer a permanent fund for the payment of compensation to victims of judicial error in accordance with what is envisaged within this Code. The Fund's resources shall be constituted by: 1) Ordinary funds that the State assigns; 2) Fines imposed and bails executed; 3) Fees payable to the State; 4) Compensation resulting from crimes that affect collective or diffuse interests; and 5) Donations and legacies to the State that may be made out to the Fund. The administration of these resources shall be governed by the Judiciary Council."

27.     To sum up, the Reparation Fund, established by the Criminal Code of 1972, which had as one of its objectives to cover, in favor of the victims, the civil liability of those convicted who were insolvent or incapable, was eliminated from the legal system in 1999 by the Code of Criminal Procedure. In its place, a Compensation Fund has been created. This has the sole purpose of paying compensation to persons convicted through judicial error.

**Question No. 5**

28.     According to Bolivian law, payment made to the victims of military violence in September and October 2003 does not bar a civil suit against the responsible parties. Laws, such as 3955, that authorize payments by the State, state this explicitly, as in article 5, which indicates:

> *The benefits set forth in this Law shall in no way expunge the criminal, civil, or other type of liability incurred by anyone identified as the perpetrator or responsible party in any proceedings held before Bolivian or foreign authorities or before international courts for the events referred to in article 1 of this Law.*

Law 3955, Art. 5.

29.     According to Bolivian law, as mentioned in Law 3955, if the victims succeed in obtaining a civil judgment against any of those responsible for deaths and injuries in September and October 2003, the payments that the Bolivian government has made to them would not be deducted from this judgment, because those payments constitute humanitarian aid and not reparation for damages caused by the defendants to the victims of the crimes committed in September and October 2003.

30.     Bolivian law establishes that a civil judgment for damages for the deaths and injuries in September and October 2003 would include moral damages and would take into account the

5

culpability of the defendants as well as their assets and, as such, is similar to punitive damages in the legal system of the United States. A civil case in Bolivia, if it were possible, could award reparations in greater amounts than those received as a result of government humanitarian aid.

31.   In any event, as established in Inter-American Human Rights Court jurisprudence, whose application is mandatory in Bolivia, moral damages contemplate factors such as the circumstances of the case, the seriousness of the violations committed, the suffering occasioned to the victims, the treatment they have received, and the denial of justice, among other principal factors.

32.   In its Article 113.II, the Bolivian Constitution establishes that if government payments to victims of violence were considered as reparation for damages, the government would have presented a claim against the convicted parties for reimbursement of the payments through a so-called "repetition" action. The Bolivian government has not sued the defendants to recover these payments.

33.   Attached as an exhibit are true and correct copies of the Bolivian legal provisions cited in this statement.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Date: _December 16, 2013_   Signature: _____
                                          Paulino L. Verástegui Palao

**Declaración de Paulino L. Verástegui Palao**

1. Soy abogado licenciado por la Universidad Mayor de San Andrés, La Paz, Bolivia, titulado en provisión nacional. Soy experto en procedimiento penal, y he sido ponente, docente, y participante en numerosos cursos y convenciones sobre este tema, como se refleja en mi Currículum Vitae, que adjunto a esta declaración.

2. He servido como consultor para organizaciones bolivianas e internacionales y me he desempeñado como profesional en ésta área por más de una década en las áreas de justicia penal.

3. Actualmente me desempeño como Profesional Abogado especialista en el Proyecto Acceso a Justicia dependiente de la Agencia Suiza para el Desarrollo (COSUDE).

4. Los abogados que representan a los demandantes en el caso ante la corte federal de Estados Unidos, *Mamani v. Sánchez de Lozada and Sánchez Berzaín*, me han pedido mi opinión sobre una serie de preguntas legales relacionadas con la ley boliviana. Las preguntas y mis respuestas se presentan abajo.

**Preguntas y Respuestas Breves**

5. (a) Si el pago recibido por los demandantes, por medio de la Ley No. 3955, del 6 de noviembre de 2008 (Ley Para las Victimas de Los Sucesos de Febrero, Septiembre y Octubre de 2003), y/o por medio del Convenio de Asistencia Humanitaria del 20 de Noviembre de 2003, tendrían cualquier impacto preclusivo que, según la ley boliviana, impediría una demanda civil en contra de Gonzalo Sánchez de Lozada y José Carlos Sánchez Berzaín, por las lesiones y muertes sufridas como consecuencia de los sucesos de septiembre y octubre de 2003.
(b) <u>Respuesta breve</u>: Como se explica más detalladamente abajo, según la ley boliviana, ninguno de los beneficios aquí descritos impediría una demanda civil contra los individuos responsables por las lesiones y muertes que se alegan en la Demanda tanto en tribunales bolivianos o internacionales.

6. (a) Si los demandantes pueden imponer una demanda civil en Bolivia en contra de Sánchez de Lozada y José Carlos Sánchez Berzain por compensación o reparación de daños por medio del Código de Procedimiento Penal, artículos 382-388, para establecer su responsabilidad por las lesiones y muertes sufridas como consecuencia de los sucesos de septiembre y octubre de 2003.
(b) <u>Respuesta breve</u>: Como se explica más detalladamente abajo, los demandantes en la presente acción no pueden presentar una demanda civil en Bolivia en contra de Sánchez de Lozada y Sánchez Berzaín por los daños que se alegan en la Demanda porque el prerequisito esencial para que prospere una acción civil por reparaciones por daños que nacen de un delito es que los demandados hayan sido previamente sentenciados a una condena penal de cárcel por estos hechos en un juicio penal, y un juicio penal contra Sánchez de Lozada y Sánchez Berzaín no es posible mientras éstos estén ausentes del país.

7. (a) Si cualquiera demanda interpuesta por los demandantes y/u otras personas en contra

1

de terceras personas tendría cualquier impacto preclusivo que, según la ley boliviana, impediría una demanda civil en contra de Gonzalo Sánchez de Lozada y José Carlos Sánchez Berzaín por las lesiones y muertes sufridas como consecuencia de los sucesos de septiembre y octubre de 2003.

(b) <u>Respuesta breve</u>:  Como se explica en detalle abajo, según la ley boliviana, las demandas civiles interpuestas contra terceras personas, esto es, contra individuos que no son Sánchez de Lozada y Sánchez Berzaín, no tendrían ningún efecto sobre la responsabilidad legal de Sánchez de Lozada y Sánchez Berzaín por los daños que se alegan en la Demanda.

8.    (a) Si el gobierno boliviano tendría responsabilidad legal para satisfacer las sentencias dictadas en cualquier demanda civil en una corte boliviana en relación con las lesiones y muertes sufridas como consecuencia de los sucesos de septiembre y octubre de 2003, según el artículo 94 del código penal boliviano.

(b) <u>Respuesta breve</u>: Como se explica más detalladamente abajo, el artículo 94 del código penal boliviano fue anulado en 1999, y si se pudiera obtener una resolución civil en contra de algún individuo por reparaciones de los daños causados por los eventos de septiembre y octubre de 2003, y si tal individuo no tuviera los fondos necesarios para satisfacer la orden de reparación, el gobierno boliviano no tendrían ninguna responsabilidad de pagar esta reparación.

9.    (a) Si la cantidad de dinero que se ha pagado a los demandantes por medio de las leyes de 2003 y 2008 tienen alguna relación proporcional con los daños y perjuicios que pudieran estar disponibles si los demandantes pudieran presentar demandas civiles en Bolivia en contra de Gonzalo Sánchez de Lozada y José Carlos Sánchez Berzaín.

(b) <u>Respuesta breve</u>:  Como se explica en mayor detalle abajo, si los demandantes en esta acción pudieran presentar una demanda civil contra Sánchez de Lozada y Sánchez Berzaín en Bolivia, podrían recibir reparaciones mucho mayores a las sumas recibidas gracias a las leyes de 2003 y de 2008 que otorgaban ayuda humanitaria a las víctimas de los eventos de 2003.  Esto es porque, entre otras cosas, una sentencia contra Sánchez de Lozada y Sánchez Berzaín podría incluir daños morales.

**Respuestas Detalladas**

**Pregunta Nro. 1:**

10.    En cuanto a que si el pago realizado a los demandantes en mérito a la Ley 3955 y otros convenios impediría una demanda civil en contra de Sánchez de Lozada y Sánchez Berzaín, es preciso señalar que el gobierno de Bolivia mediante la Ley 3955 de 6 de noviembre de 2008 y otros convenios ha dispuesto una serie de medidas de ayuda humanitaria que incluye un pago único, apoyo académico, y reconocimiento público como la construcción de plazas en municipios con los nombres de los fallecidos, a favor de las víctimas de la violencia estatal en septiembre y octubre de 2003.

11.    Estas medidas tienen el carácter de apoyo humanitario y no constituyen un reconocimiento de responsabilidad por parte del Estado que sólo surge si el Estado boliviano hubiera sido condenado por un tribunal a la reparación de daños.

12.    Esta responsabilidad del Estado está incorporada en el artículo 113. II de la Constitución Política del Estado que establece que cuando el Estado sea condenado a la reparación del daño,

2

deberá iniciar a su vez acciones de "repetición" o cobro a los funcionarios que hubieran ocasionado daño (en este caso Sánchez de Lozada y Sánchez Berzain) para que devuelvan el dinero público que el Estado hubiera empleado en la reparación del daño a las víctimas, más aún como en el presente caso se trata de violaciones a derechos humanos.

13.   No se ha iniciado una acción de "repetición" en este caso porque los pagos que ha realizado el Estado boliviano constituyen una ayuda humanitaria y no el reconocimiento de responsabilidad civil por daño causado.

14.   Por tanto, aunque la Constitución de Bolivia establece en el artículo 113. II un procedimiento mediante el cual se puede intentar establecer la responsabilidad del Estado por violaciones a los derechos humanos, en este caso no existe ningún reconocimiento legal de que el estado boliviano sea responsable por las lesiones y muertes sufridas como consecuencia de los sucesos de septiembre y octubre de 2003. Además, el Estado ha iniciado juicio penal contra los responsables de dichos actos para evitar su impunidad.

15.   Es preciso señalar que mientras que Sánchez de Lozada y Sánchez Berzaín no retornen a Bolivia para enfrentar el juicio penal que está abierto en su contra, no existen las condiciones para que los demandantes puedan iniciar un proceso por reparación de daños en Bolivia.

**Pregunta Nro. 2:**

16.   Los demandantes no pueden interponer una demanda civil en Bolivia en contra de Sánchez de Lozada y Sánchez Berzaín por reparación de daños por las lesiones sufridas como consecuencia de los sucesos de septiembre y octubre de 2003 en aplicación de los artículos 382 a 388 del Código de Procedimiento Penal ya que el requisito esencial para que proceda esta vía es que ambos imputados (Sánchez de Lozada y Sánchez Berzaín) hayan sido previamente sentenciados a una condena penal de cárcel por estos hechos en un juicio penal que debe ser llevado a cabo en el Tribunal Supremo de Justicia de Bolivia en un Juicio de Responsabilidades contra Altos Dignatarios de Estado.

17.   Según la ley boliviana, una acción civil por reparación de daños producto de la comisión de un delito sólo puede ser presentada después de una condena penal. Los artículos 382 a 388 del Código de Procedimiento Penal señalan el procedimiento para tal reparación del daño producto de la comisión de un delito. Para el inicio de este proceso es necesario que exista previamente una sentencia de condena penal ejecutoriada, es decir que no esté pendiente de recursos judiciales.

18.   Dado que los demandados en esta acción, Sánchez de Lozada y Sánchez Berzaín, no han sido condenados por los delitos cometidos en septiembre y octubre de 2003 en Bolivia, tal acción civil no puede ser presentada en su contra en Bolivia.

19.   Para que prospere un juicio penal contra Sánchez de Lozada y Sánchez Berzaín es preciso que estén presentes en Bolivia ya que la legislación procesal penal boliviana no permite los procesos penales en contra de personas ausentes del país tal como señala el artículo 90 de la Ley 1970 (Código de Procedimiento Penal) que establece que cuando el imputado no se presenta ante

3

una citación del juez, este lo declarará rebelde y suspenderá el juicio para él.

20. La Sentencia del Tribunal Constitucional Nº1109/2006-R, de 1 de noviembre establece como precedente obligatorio los siguientes extremos:

> *El procedimiento para la reparación del daño exige como presupuesto de procedencia la existencia de una sentencia condenatoria ejecutoriada que imponga una pena o medida de seguridad, permitiendo que la víctima por tener sólo esa calidad o en su caso como querellante pueda demandar la reparación del daño causado o la indemnización correspondiente, a cuyo efecto debe presentar su demanda ante el juez de sentencia (art. 382 del CPP).*

Por ello no se puede responsabilizar a Sánchez de Lozada o Sánchez Berzaín en un juicio civil en Bolivia para la reparación del daño producto de los hechos de septiembre y octubre de 2003, mientras no sean condenados en un juicio penal, que en el caso de ellos sólo puede ser llevado a cabo por el Tribunal Supremo de Justicia de Bolivia.

**Pregunta Nro. 3**

21. Conozco a través de informes de prensa que se ha presentado una demanda civil en Bolivia en virtud del Código de Procedimiento Penal, artículos 382-388, en contra de siete ex funcionarios del gobierno de Sánchez de Lozada que fueron condenados por el Tribunal Supremo de Justicia por su participación en los hechos de septiembre y octubre de 2003 después de un juicio penal en Bolivia.

22. Como ya se ha explicado, según la ley boliviana, tal acción sólo puede proceder después de una condena penal. Dado que la acción civil contra Sanchez de Lozada y Sanchez Berzaín no puede prosperar sin una previa condena penal, tampoco se puede unir una acción civil en contra de Sanchez de Lozada y Sanchez Berzaín a la acción pendiente que se estaría iniciando en Bolivia en contra de los sentenciados a condena penal, en este caso los ex jefes militares.

23. Más aún, según la ley boliviana el artículo 383 del código de procedimiento penal establece que la demanda se debe dirigir en contra de la persona condenada, por lo que las demandas civiles interpuestas contra terceras personas, esto es, en este caso, contra individuos que no son Sánchez de Lozada y/o Sánchez Berzaín, a raíz de los eventos de septiembre y octubre de 2003, no tendrían ningún efecto sobre la responsabilidad legal de los demandados en este caso ya que no son personas condenadas.

**Pregunta Nro. 4**

24. El gobierno de Bolivia no tiene la obligación de establecer un fondo de reparaciones para cumplir una sentencia en una demanda civil por daños y perjuicios por delitos.

25. En este marco, el anterior artículo 94 del Código Penal de Bolivia de 1972 incorporaba la Caja de Reparaciones, y establecía:

4

> *El Estado creará y reglamentará el funcionamiento de la Caja de Reparaciones, para atender el pago de la responsabilidad civil en los siguientes casos: 1. A las víctimas del delito, en caso de insolvencia o incapacidad del condenado, 2. A las víctimas de error judicial, 3. A las víctimas, en caso de no determinarse el causante del estado de necesidad. Además de los recursos que la ley señale y los que indica este Código, el fondo de la Caja se incrementará con a. Las herencias vacantes de los responsables de los delitos; b. Los valores y bienes decomisados como objeto del delito, que no fueren reclamados en el término de seis meses de pronunciada la sentencia; c. Las donaciones que se hicieren en favor de la caja.*

Pero este artículo 94 fue anulado por disposición sexta final (derogatorias y abrogatorias) numeral 2 de la Ley Nº1970, Código de Procedimiento Penal, de 25 de marzo de 1999.

26.    Actualmente la Ley Nº1970, Código de Procedimiento Penal, ha sustituido la Caja de Reparaciones por el Fondo de Indemnizaciones que está establecido en el artículo 276 que a la letra señala: "El Consejo de la Judicatura administrará un fondo permanente para atender el pago de indemnizaciones a las víctimas de error judicial conforme a lo previsto en éste Código. Los recursos de este Fondo estarán constituidos por: 1) Fondos ordinarios que asigne el Estado; 2) Multas impuestas y fianzas ejecutadas; 3) Costas en favor del Estado; 4) Indemnizaciones resultantes de delitos que afecten intereses colectivos o difusos; y, 5) Donaciones y legados al Estado que se hagan en favor del Fondo. La administración de estos recursos será reglamentada por el Consejo de la Judicatura."

27.    En resumen, la Caja de Reparaciones, establecida por el Código Penal de 1972, que tenía como uno de sus objetivos cubrir a favor de la víctima la responsabilidad civil de los condenados insolventes o incapaces ha sido eliminada del ordenamiento legal en 1999 por el Código de Procedimiento Penal y en su lugar ha sido creado el Fondo de Indemnizaciones que tiene como único objeto pagar indemnizaciones a personas condenadas por error judicial.

**Pregunta Nro. 5**

28.    Según la ley boliviana, los pagos efectuados a las víctimas de la violencia militar en septiembre y octubre de 2003 no impedirían una demanda civil en contra de los responsables. Las leyes, como la 3955, que autorizan los pagos estatales lo dicen explícitamente en su artículo 5 que señala:
> *Los beneficios señalados en esta Ley no exoneran en ninguna medida la responsabilidad penal, civil o de otra índole de las personas que hubieran sido identificadas como autores y responsables en los procesos que se sustanciaren ante las autoridades bolivianas, del extranjero o ante Tribunales Internacionales, por los sucesos referidos en el artículo de 1º de la presente Ley.*

Ley 3955, Art. 5.

29.    Según la ley boliviana, como la mencionada Ley 3955, si las víctimas logran obtener una sentencia civil en contra de cualquier de los responsables de las muertes y lesiones en septiembre y octubre de 2003, los pagos que el gobierno boliviano ha hecho a ellos no serían restados de la misma sentencia, porque esos pagos constituyen ayuda humanitaria, no la reparación de los

5

daños causados a las víctimas por los demandados por los delitos cometidos en septiembre y octubre de 2003.

30. La ley boliviana establece que una sentencia civil por daños y perjuicios por las muertes y lesiones en septiembre y octubre de 2003 que incluiría los daños morales, toma en cuenta la culpabilidad de los acusados y sus bienes, y, por tanto, son similares a los daños punitivos en el sistema legal de los EE.UU. Un juicio civil en Bolivia, si éste fuera posible, podría otorgar una reparación mayor a la recibida por los beneficios de ayuda humanitaria del gobierno.

31. En todo caso los daños morales contemplan, como señala la jurisprudencia de la Corte Interamericana de Derechos Humanos, aplicada obligatoriamente por Bolivia, factores tales como las circunstancias del caso, la gravedad de las violaciones cometidas, los sufrimientos ocasionados a las víctimas y el tratamiento que han recibido, y la denegación de justicia entre los principales.

32. La Constitución boliviana en su artículo 113.II establece que si los pagos por parte del gobierno a las víctimas de la violencia fueran considerados como reparación de daños, el gobierno habría demandado a los condenados la devolución de los pagos mediante la denominada acción de "repetición". El gobierno boliviano no ha demandado a los acusados para recuperar sus pagos.

33. Adjunto como anexo copias verdaderas y correctas de las disposiciones legales bolivianas citadas en esta declaración.

Declaro bajo pena de perjurio según las leyes de los Estados Unidos, que lo anterior es verdadero y correcto.

Fecha: 16 diciembre de 2013   Firma: _____
Paulino L. Verástegui Palao

6


**TRANSPERFECT**

City of San Francisco, State of California, County of San Francisco

I, Tamanna Siddique hereby certify that the following is, to the best of my knowledge and belief, a true and accurate translation of the attached documents from Spanish to English:

**00 Opinión experta-16 dic 13**

_____
Tamanna Siddique

Sworn to before me this
December 18, 2013

_____
Signature, Notary Public

_____
Stamp, Notary Public

HEATHER SULLIVAN
Commission # 2040034
Notary Public - California
San Francisco County
My Comm. Expires Sep 1, 2017