**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**(Miami Division)**
**Civ. Nos. 07-22459 & 08-21063 (COHN/SELTZER)**

| | |
|---|---|
| ELOY ROJAS MAMANI, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| GONZALO SÁNCHEZ DE LOZADA | ) |
| SÁNCHEZ BUSTAMANTE, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| JOSÉ CARLOS SÁNCHEZ BERZAÍN, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**DEFENDANTS' MOTION FOR CERTIFICATION FOR INTERLOCUTORY APPEAL**
**UNDER 28 U.S.C. § 1292(b) AND FOR STAY PENDING APPEAL**

Glenn E. Goldstein (Fla. Bar No. 435260)
GREENBERG TRAURIG, P.A.
401 East Las Olas Boulevard
Fort Lauderdale, FL 33301
(954) 765-0500
(954) 765-1477 (facsimile)
    goldsteing@gtlaw.com

Mark P. Schnapp (Fla. Bar No. 501689)
Eliot Pedrosa (Fla. Bar No. 182443)
GREENBERG TRAURIG, P.A.
333 Avenue of the Americas
Miami, FL 33131
(305) 579-0500
(305) 579-0717 (facsimile)
    schnappm@gtlaw.com
    pedrosae@gtlaw.com

Kannon K. Shanmugam (*pro hac vice*)
Ana C. Reyes (*pro hac vice*)
Kristin A. Shapiro (*pro hac vice*)
Greg S. Hillson (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5000
(202) 434-5029 (facsimile)
    kshanmugam@wc.com
    areyes@wc.com
    kshapiro@wc.com
    ghillson@wc.com

June 13, 2014                    *Counsel for Defendants*

**TABLE OF CONTENTS**

Page

INTRODUCTION ...............................................................................................1

ARGUMENT ......................................................................................................3

I.      The court should certify its order for interlocutory appeal ..................................3

        A.      The order involves controlling questions of law................................................3

        B.      There are substantial grounds for a difference of opinion on each question ..........5

        C.      An immediate appeal will materially advance this litigation................................12

II.     The court should grant a stay pending appeal...................................................14

CONCLUSION...................................................................................................18

# TABLE OF AUTHORITIES

Page

## CASES

*Adams* v. *Florida Power Corp.*, 255 F.3d 1322 (11th Cir. 2001)..............................................6

*Alexander* v. *Washington Mutual, Inc.*, Civ. No. 07-4426,
    2008 WL 3285845 (E.D. Pa. Aug. 4, 2008)......................................................................15

*Arakis Energy Corp. Securities Litig., In re*, Civ. No. 95-3431,
    2001 WL 1590512 (E.D.N.Y. Oct. 31, 2001) ................................................................13

*Asis Internet Services* v. *Active Response Group*, Civ. No. 07-6211,
    2008 WL 4279695 (N.D. Cal. Sept. 16, 2008) ................................................................14

*Benedict* v. *Town of Newburgh*, 95 F. Supp. 2d 136 (S.D.N.Y. 2000)..................................15

*Chudasama* v. *Mazda Motor Corp.*, 123 F.3d 1353 (11th Cir. 1997) ...................................15

*Dial* v. *Healthspring of Alabama, Inc.*, 612 F. Supp. 2d 1205 (S.D. Ala. 2007)................4, 15

*Doe* v. *Qi*, 349 F. Supp. 2d 1258 (N.D. Cal. 2004) ................................................................10

*Dynex Capital, Inc., Securities Litig., In re*, Civ. No. 05-1897,
    2006 WL 1517580 (S.D.N.Y. June 2, 2006)....................................................................15

*Ford* v. *Garcia*, 289 F.3d 1283 (11th Cir. 2002) ..................................................................10

*Interhandel (Switzerland* v. *United States)*, 1959 I.C.J. 6 ......................................................8

*Kiobel* v. *Royal Dutch Petroleum Co.*, 133 S. Ct. 1659 (2013)............................................16

*Kotrous* v. *Goss-Jewett Co.*, Civ. No. 02-1520,
    2005 WL 2452606 (E.D. Cal. Oct. 4, 2005) ....................................................................15

*Laperriere* v. *Vesta Insurance Group, Inc.*, 526 F.3d 715 (11th Cir. 2008)............................6

*Lizarbe* v. *Rondon*, 642 F. Supp. 2d 473 (D. Md. 2009) .......................................................10

*Mais* v. *Gulf Coast Collection Bureau, Inc.*,
    944 F. Supp. 2d 1226 (S.D. Fla. 2013) .........................................................................3, 5

*McFarlin* v. *Conseco Services, LLC*, 381 F.3d 1251 (11th Cir. 2004)......................3, 4, 5, 12

*Mohamad* v. *Palestinian Authority*, 132 S. Ct. 1702 (2012) .............................................6, 7

*Mwani* v. *Laden*, 947 F. Supp. 2d 1 (D.D.C. 2013)..............................................................15

ii

Page

Cases—continued:

*Mwani* v. *United States*, Civ. No. 99-125, 2012 WL 78237 (D.D.C. Jan. 10, 2012) ............................................................................................................15

*New Jersey Protection & Advocacy, Inc.* v. *New Jersey Dep't of Education*, Civ. No. 07-2978, 2008 WL 4692345 (D.N.J. Oct. 8, 2008)....................................4, 12, 15

*Pacific Forest Products, In re*, 335 B.R. 910 (S.D. Fla. 2005) ........................................12, 15

*Parratt* v. *Taylor*, 451 U.S. 527 (1981) ............................................................................9

*Prosecutor* v. *Delalic*, No. IT-96-21-T (ICTY Trial Chamber, Nov. 16, 1998), *available at* 1998 WL 34310017 ........................................................11, 12

*Prosecutor* v. *Halilovic*, No. IT-01-48-T (ICTY Trial Chamber, Nov. 16, 2005), *available at* 2005 WL 3393137 ...................................................12

*Prosecutor* v. *Kamuhanda*, No. ICTR-95-54A-T (ICTR Trial Chamber, Jan. 22, 2004), *available at* 2004 WL 360682 ...........................................12

*Prosecutor* v. *Oric*, No. IT-03-68-Y (ICTY Trial Chamber, June 30, 2006), *available at* 2006 WL 2574250........................................................................10, 11

*Quaak* v. *Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*, 361 F.3d 11 (1st Cir. 2004) ...............................................................................13

*Rafferty* v. *Halprin*, Civ. No. 90-2751, 1993 WL 87945 (S.D.N.Y. Mar. 19, 1993)..............................................................................4

*Reese* v. *BP Exploration (Alaska) Inc.*, 643 F.3d 681 (9th Cir. 2011) ....................................6

*Rhoades* v. *Young Women's Christian Ass'n of Greater Pittsburgh*, Civ. No. 09-1548, 2011 WL 240149 (W.D. Pa. Jan. 24, 2011)....................................12, 15

*Ritz Camera & Image* v. *Sandisk Corp.*, Civ. No. 10-02787, 2011 WL 3957257 (N.D. Cal. Sept. 7, 2011) ...................................................15

*Russello* v. *United States*, 464 U.S. 16 (1983).....................................................................6

*Shochet Securities, Inc.* v. *First Union Corp.*, 663 F. Supp. 1035 (S.D. Fla. 1987) ...................................................................15

*Traub* v. *Cornell University*, Civ. No. 94-502, 1999 WL 224804 (N.D.N.Y. Apr. 12, 1999) ...................................................................................15

Page

Cases—continued:

*United States* v. *Moglia*, Civ. No. 02-6131, 2004 WL 1254128
  (N.D. Ill. June 7, 2004) ................................................................................12

*Xuncax* v. *Gramajo*, 886 F. Supp. 162 (D. Mass. 1995) ...................................10

*Yamaha Motor Corp., U.S.A.* v. *Calhoun*, 516 U.S. 199 (1996) ...........................4

## STATUTES

28 U.S.C. § 1292(b) ........................................................................... *passim*

28 U.S.C. § 1350 note ........................................................................ *passim*

42 U.S.C. § 1983 .......................................................................................9

## MISCELLANEOUS

16 Charles Alan Wright et al., *Federal Practice and Procedure* (3d ed. 2012) .......................5

134 Cong. Rec. 28,611 (1988) ..................................................................7

137 Cong. Rec. 2671 (1991) .....................................................................7

138 Cong. Rec. 4177 (1992) .....................................................................7

*Bolivia Protesters Demand That Washington Extradite Ex-Official*, El Pais,
  June 11, 2008 (Eng.), *available at* 2008 WLNR 1095618 .................................13

Emeka Duruigbo, *Exhaustion of Local Remedies in Alien Tort Litigation:
  Implications for International Human Rights Protection*,
  29 Fordham Int'l L.J. 1245 (2006) .......................................................8

H.R. Rep. No. 102-367 (1991) .................................................................7

Guénaël Mettraux, *The Law of Command Responsibility* (2009) ....................................11, 12

Paula Rivka Schochet, *A New Role for an Old Rule: Local Remedies and
  Expanding Human Rights Jurisdiction Under the Torture Victim Protection
  Act*, 19 Colum. Hum. Rts. L. Rev. 223 (1987) ...........................................8

S. Rep. No. 102-249 (1991) .................................................................8, 9

## INTRODUCTION

Pursuant to 28 U.S.C. § 1292(b), Defendants respectfully move to certify for interlocutory appeal this Court's order of May 22, 2014, insofar as that order denied their motion to dismiss Plaintiffs' claim under the Torture Victims Protection Act (TVPA), and also move for a stay of proceedings pending the Eleventh Circuit's review.  As the Court is well aware, this is an exceptional case, presenting novel and important legal issues concerning the liability of former foreign leaders to their fellow citizens, in a lawsuit brought in American court, for conduct that occurred while they were still in office.  Recognizing the novelty and importance of those issues, as well as the exceptional burdens that discovery would present in a case of this variety, Judge Jordan certified for interlocutory appeal his earlier order denying Defendants' motion to dismiss.  After granting certification (and taking jurisdiction over an additional issue as of right), the Eleventh Circuit reversed.

Certification is once again warranted, for similar reasons.  Section 1292(b) provides that a district court may certify an order for interlocutory appeal when it finds "[1] that such order involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  The Court's order presents two controlling questions of law that satisfy those requirements:  *first*, whether exhaustion precludes Plaintiffs' TVPA claim, and *second*, whether, consistent with the Eleventh Circuit's earlier decision in this case, Plaintiffs have sufficiently alleged secondary liability for extrajudicial killings under the doctrine of command responsibility.  The first question is a purely legal one that the Eleventh Circuit did not address in its earlier opinion; in fact, no court has done so.  And the second question is also a legal one that goes to the heart of Plaintiffs' ability to maintain their action; the proper scope of the doctrine of command responsibility is subject to different interpretations, and

the Eleventh Circuit has already expressed concern about that issue in this very matter.  *See* 654 F.3d 1148, 1154, 1155 n.9 (2011).  If either question is resolved in Defendants' favor, moreover, it would likely lead to the dismissal of Plaintiffs' remaining federal claim (and, presumably, their pendent Bolivian-law claim as well).

In addition, interlocutory review is particularly appropriate in this case because it could prevent years of burdensome discovery and litigation.  As far as we are aware, this would be the first case of its kind to proceed to discovery in an American court.  And given that "all the relevant conduct took place thousands of miles away in Bolivia," ECF No. 203, at 19 (hereafter "Op."),[1] that discovery would unquestionably be protracted, expensive, and even potentially dangerous for those who are involved.  Certification for interlocutory appeal, along with a stay, would permit the Eleventh Circuit to resolve potentially dispositive questions before this Court and the parties have devoted time and substantial resources to discovery and further proceedings on the merits.

As the Eleventh Circuit indicated in its earlier opinion, federal courts should proceed cautiously when considering cases of this type:  "We know and worry about the foreign policy implications of civil actions in federal courts against the leaders (even the former ones) of nations. And we accept that we must exercise particular caution when considering a claim that a former head of state acted unlawfully in governing his country's own citizens."  654 F.3d at 1152.  In light of that overarching and compelling concern, the Eleventh Circuit should be afforded the discretion to address any potentially dispositive legal issues at the earliest opportunity.  Accordingly, this Court should grant Defendants' motion for certification for interlocutory appeal.

---

[1] All references to docket entries are to the docket in No. 07-22459.

## ARGUMENT

## I. THE COURT SHOULD CERTIFY ITS ORDER FOR INTERLOCUTORY APPEAL

This is the paradigmatic situation in which certification for interlocutory appeal under 28 U.S.C. § 1292(b) is warranted. Section 1292(b) was designed to facilitate interlocutory appeals where an immediate "appeal may avoid protracted and expensive litigation . . . [and] where a question which would be dispositive of the litigation is raised and there is serious doubt as to how it should be decided." *McFarlin* v. *Conseco Services, LLC*, 381 F.3d 1251, 1256 (11th Cir. 2004) (quoting 1958 U.S.C.C.A.N. 5255, 5260-5261). Because this case readily satisfies the criteria set out in Section 1292(b), the petition for interlocutory appeal should be granted.

### A. The Order Involves Controlling Questions Of Law

A "controlling question of law" is a question that the court of appeals "can decide quickly and cleanly without having to study the record," as opposed to a "question of fact or matter for the discretion of the trial court." *McFarlin*, 381 F.3d at 1257-1258 (internal quotation marks omitted). Put differently, the "controlling question of law" requirement is satisfied when an issue concerns "the legal implications of [undisputed] facts." *Mais* v. *Gulf Coast Collection Bureau, Inc.*, 944 F. Supp. 2d 1226, 1252 (S.D. Fla. 2013). This case presents two questions that satisfy that requirement: whether exhaustion precludes Plaintiffs' TVPA claim, and whether Plaintiffs have sufficiently alleged secondary liability for extrajudicial killings under the doctrine of command responsibility.

*1. Exhaustion.* — On exhaustion, this case presents a clean question of statutory interpretation: specifically, whether the exhaustion provision of the TVPA, 28 U.S.C. § 1350 note, precludes claims by plaintiffs who have already recovered substantial remedies in their home country, or is instead inapplicable where, as here, plaintiffs did not recover from the specific de-

fendants they seek to sue.  That is a prototypical example of a controlling question of law under

Section 1292(b).  A controlling question of law occurs where "the meaning of a statutory or con-

stitutional provision, regulation, or common law doctrine" is disputed.  *McFarlin*, 381 F.3d at

1258 (internal quotation marks omitted); *see also Dial* v. *Healthspring of Alabama, Inc.*, 612 F.

Supp. 2d 1205, 1207 (S.D. Ala. 2007) (noting that the "controlling question of law" requirement

is met when the resolution of the issue "requires an interpretation of the meaning of a statute").

In addition, courts have routinely found that exhaustion and preclusion-related issues present

controlling questions of law for purposes of Section 1292(b).  *See, e.g.*, *New Jersey Protection &*

*Advocacy, Inc.* v. *New Jersey Dep't of Education*, Civ. No. 07-2978, 2008 WL 4692345, at *4

(D.N.J. Oct. 8, 2008); *Rafferty* v. *Halprin*, Civ. No. 90-2751, 1993 WL 87945, at *1 (S.D.N.Y.

Mar. 19, 1993).

    *2.*    *Command responsibility.* — The Court need only identify a single issue that meets

the "controlling question of law" standard; once it does so and grants certification, the court of

appeals has the power to "review the entire order."  *Yamaha Motor Corp., U.S.A.* v. *Calhoun*,

516 U.S. 199, 205 (1996) (internal quotation marks omitted); *see also McFarlin*, 381 F.3d at

1255-1256, 1264.  It bears noting, however, that the sufficiency of Plaintiffs' allegations under

the doctrine of command responsibility also presents a controlling question of law.

    In his earlier order granting certification, Judge Jordan held that his determination as to

the legal sufficiency of Plaintiffs' claims under the ATS—which included application of the doc-

trine of command responsibility—presented a controlling issue of law.  ECF No. 155, at 4.

Judge Jordan correctly reached this conclusion, because a determination as to the legal sufficien-

cy of the claims does not involve the resolution of disputed facts (since well-pleaded allegations

must be accepted as true), but rather the "legal implications of [the alleged] facts." *Mais*, 944 F. Supp. 2d at 1252.

**B.     There Are Substantial Grounds For A Difference Of Opinion On Each Question**

There are "substantial ground[s] for [a] difference of opinion" as to each question. 28 U.S.C. § 1292(b); *McFarlin*, 381 F.3d at 1258. Of course, the Court need not have second thoughts about the correctness of its ruling in order to grant certification; instead, it need only recognize that no controlling authority squarely resolves the question and that there is uncertainty about the correct answer. *See, e.g.*, *id.* at 1258-1260.

In making that determination, "[t]he level of uncertainty required to find a substantial ground for difference of opinion should be adjusted to meet the importance of the question in the context of the specific case." 16 Charles Alan Wright et al., *Federal Practice and Procedure* § 3930, at 494-495 (3d ed. 2012). Accordingly, where, as here, "proceedings that threaten to endure for several years depend on an initial question of jurisdiction, limitations, or the like, certification may be justified at a relatively low threshold of doubt." *Id.*

*1.     Exhaustion.* — To begin with, there are substantial grounds for a difference of opinion as to whether Section 2(b) of the TVPA precludes Plaintiffs' TVPA claim because they have already received "adequate and available" remedies—sums equivalent to nearly 23 times the average annual income in Bolivia.[2] As Judge Jordan noted, assessing the scope of the

---

[2] Just this week, the Bolivian press reported that individuals have filed suit against Defendants in Bolivia and are seeking to attach Defendants' impounded assets there. *See* Ex. A. According to the plaintiffs' attorneys, Bolivian law permits a suit against individuals who have been deemed to be "in default." *Id.* The plaintiffs claim that the court has authorized their complaint, and have announced their intention to serve notice on Defendants through Bolivia's Foreign Ministry. We understand that two plaintiffs in this suit—Sonia Espejo Villalobos and Hernan Apaza Cutipa—are also plaintiffs in the suit in Bolivia. Those reports appear to contradict Plaintiffs' assertions to this Court that they have not and cannot proceed against the Defendants in Bolivia.

TVPA's exhaustion provision is a "difficult task" and "daunting."  636 F. Supp. 2d 1326, 1330-1333 (S.D. Fla. 2009).  And the exhaustion question is one of first impression that, before the Court's order in this case, no other court appears to have addressed.  Courts routinely grant Section 1292(b) motions to allow appellate courts to resolve difficult questions of first impression. *See Laperriere* v. *Vesta Insurance Group, Inc.*, 526 F.3d 715, 719 (11th Cir. 2008) (per curiam); *Adams* v. *Florida Power Corp.*, 255 F.3d 1322, 1322 (11th Cir. 2001); *Reese* v. *BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011).

In interpreting the TVPA's exhaustion requirement, this Court looked to the statute's text, legislative history, as well as general principles of international and United States law.  Op. 26.  With due respect to the Court, each aspect of that analysis is subject to a substantial difference of opinion.  *First*, as to the statutory text, this Court noted that the TVPA "creates specific *individual* liability for damages."  *Id.*  That is undisputed.  But the TVPA's exhaustion provision is not framed with reference to individual liability; it simply requires plaintiffs to exhaust all "adequate and available remedies in the place in which the conduct giving rise to the claim occurred," without additionally requiring that the remedies come from a specific individual.  That omission is important, because, "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."  *Russello* v. *United States*, 464 U.S. 16, 23 (1983) (internal quotation marks omitted).  In construing the statute, the court of appeals could reasonably attach dispositive weight to that omission.  *Cf. Mohamad* v. *Palestinian Authority*, 132 S. Ct. 1702, 1710-1711 (2012) (construing the word "individual" in the TVPA to refer only to natural persons).

*Second,* this Court reasoned that the "congressional intent behind the TVPA" was to "ensur[e] that human rights violators do not have a 'safe haven' in this country." Op. 26. To the extent that was one of the motivating purposes behind the TVPA, however, Congress did not pursue that aim without qualification. To the contrary, Congress explicitly recognized that entertaining TVPA claims comes with significant attendant costs, including burdening American courts with additional litigation and embroiling them in politically sensitive disputes that require them to sit in judgment of the actions of a sovereign government. *See, e.g.*, H.R. Rep. No. 102-367, Pt. I, at 87-88 (1991). Congress struck an appropriate balance between those interests by requiring exhaustion before a TVPA claim could be brought. *See id.* By design, the exhaustion provision ensures that the costs associated with entertaining a TVPA claim are imposed only when it is absolutely necessary to ensure that victims obtain meaningful relief. As Judge Jordan explained in his prior order, citing the TVPA's legislative history, the specific purpose of the exhaustion provision was to ensure that the TVPA provided a forum only for individuals who "are unable to obtain redress in the country where the torture took place." 636 F. Supp. 2d at 1331 n.9 (quoting 134 Cong. Rec. 28,611, 28,614 (1988) (remarks of Rep. Fascell) (emphasis omitted)). There is no dispute that Plaintiffs have obtained redress in Bolivia. The court of appeals could reasonably conclude that the legislative history of the TVPA supports Defendants' interpretation—especially given Congress's repeated admonitions about the "the *limited* nature of the cause of action it established in the [TVPA]." *Mohamad*, 132 S. Ct. at 1710 (citing 138 Cong. Rec. 4177 (1992) (remarks of Sen. Simpson), and 137 Cong. Rec. 2671 (1991) (remarks of Sen. Specter) (emphasis added)).

*Third*, the Court stated that "[c]ustomary international law" supports Plaintiffs' interpretation because Bolivia has not had "the opportunity to specifically redress Defendants' alleged

human rights violations within its own judicial system." Op. 27. In support of that proposition, the Court relied on *Interhandel (Switzerland* v. *United States)*, 1959 I.C.J. 6, 27. In *Interhandel*, the International Court of Justice held that the plaintiff had not exhausted its claims in an American court. *Id.* at 26. That decision, however, does not support the proposition that local remedies have a preclusive effect only if they are obtained in a judicial forum or from the individual defendants that plaintiffs seek to sue. And as Judge Jordan noted in his prior order, scholarship on international law supports the conclusion that "administrative or legislative" remedies, and not just "remedies of a judicial nature," can have preclusive effect. 636 F. Supp. 2d at 1330-1331 (quoting Emeka Duruigbo, *Exhaustion of Local Remedies in Alien Tort Litigation: Implications for International Human Rights Protection*, 29 Fordham Int'l L.J. 1245, 1259 (2006)). A law-review article cited in the TVPA's legislative history, S. Rep. No. 102-249, at 10 n.19 (1991), similarly makes clear that "[o]nly when a state denies reparation will an international claim arise"; "[a]s long as an alien can receive adequate effective redress within the defendant state, no international claim arises"; and, "[i]f an injured alien's claim can be remedied within the domestic sphere, . . . [t]he alien's claim is extinguished." Paula Rivka Schochet, *A New Role for an Old Rule: Local Remedies and Expanding Human Rights Jurisdiction Under the Torture Victim Protection Act*, 19 Colum. Hum. Rts. L. Rev. 223, 228, 233, 234, 236-237 (1987). Under international law, therefore, the better view is that the reparation need not come from a judicial source as against the specific defendant that the plaintiff seeks to sue. The court of appeals could reasonably conclude that international law supports Defendants', not Plaintiffs', interpretation.

*Fourth*, the Court reasoned that "general principles of United States law" support the proposition that "Plaintiffs' prior recoveries from the Bolivian government do not preclude their

TVPA claims against Defendants." Op. 28. Specifically, the Court cited principles governing the exhaustion of remedies in the administrative context. *Id.* The most analogous doctrine under domestic law, however, is not the exhaustion of remedies in the administrative context, but rather the exhaustion of remedies in the context of due-process claims against the government under Section 1983—a context that the TVPA's legislative history specifically cited as illustrative of the operation of the TVPA's exhaustion requirement. S. Rep. No. 102-249, at 10 n.20 (citing *Parratt* v. *Taylor*, 451 U.S. 527, 543-544 (1981)). And in that context, it is undisputed that a plaintiff's claim is precluded if the plaintiff has received adequate remedies from the government, notwithstanding the fact that the remedies come only from "the [government] as opposed to its individual employees." *See Parratt*, 451 U.S. at 543-544. Particularly in light of *Parratt*, the court of appeals could reasonably conclude that general principles of domestic law support Defendants' position.[3]

In short, there are ample grounds for a difference of opinion as to whether Section 2(b) of the TVPA precludes Plaintiffs' TVPA claim because they have already received "adequate and available" remedies. That question alone is sufficient to sustain certification of this Court's order denying Defendants' motion to dismiss the TVPA claim.

2. *Command responsibility.* — The question of whether allegations such as Plaintiffs' are sufficient to satisfy the elements for command responsibility in the context of a modern military operation is also a difficult one of first impression. As the Eleventh Circuit noted in its earlier opinion, "Plaintiffs point to no case where similar high-level decisions on military tactics

---

[3] The Court additionally cited the collateral-source doctrine in tort law. Op. 28-29. As stated above, however, Defendants submit the most analogous doctrine under domestic law is the one that the TVPA's legislative history specifically cited: *viz.*, the exhaustion of remedies in the context of due-process claims against the government under Section 1983.

and strategy during a modern military operation have been held to constitute extrajudicial killing under international law." 654 F.3d at 1155 (alteration and internal quotation marks omitted).

It is a settled principle of international law that the doctrine of command responsibility "by no means involves the imposition of 'strict liability.'" *Prosecutor* v. *Oric*, No. IT-03-68-Y, ¶ 318 (ICTY Trial Chamber, June 30, 2006), *available at* 2006 WL 2574250. As the Eleventh Circuit explained, "[w]e do not accept that, even if some soldiers or policemen committed wrongful acts, present international law embraces strict liability akin to respondeat superior for national leaders at the top of the long chain of command in a case like this one." 654 F.3d at 1154. Instead, Plaintiffs are required to establish, first, that the commander had reason to know that *unlawful* killings were occurring, and second, that the commander failed to take reasonable action to prevent or punish such killings. *See Ford* v. *Garcia*, 289 F.3d 1283, 1288 (11th Cir. 2002).

There is substantial room for disagreement as to whether Plaintiffs' allegations in this case are sufficient to satisfy either requirement, particularly in light of the quickly escalating, violent conflict in Bolivia at the time. As to the knowledge requirement: as this Court recognized, Plaintiffs must allege facts "plausibly suggesting that Defendants knew or should have known, owing to the circumstances at the time, that their soldiers had committed, were committing, or planned to commit extrajudicial killings." Op. 37 (internal quotation marks omitted). What is required to meet that standard, however, is subject to reasonable disagreement. In the cases cited by the Court, the knowledge element was satisfied because defendants had reason to know not just that killings had occurred, but specifically that those killings were unlawful. *See Lizarbe* v. *Rondon*, 642 F. Supp. 2d 473, 491 (D. Md. 2009); *Doe* v. *Qi*, 349 F. Supp. 2d 1258, 1332-1333 (N.D. Cal. 2004); *Xuncax* v. *Gramajo*, 886 F. Supp. 162, 172-173 (D. Mass. 1995). Those cases

10

comport with international law, which imposes a strict knowledge requirement before a defend-ant can be found liable for command responsibility. *See* Guénaël Mettraux, *The Law of Com-mand Responsibility* 200 (2009) (Mettraux) ("The commander must be shown to have known or have had reason to know of *all the material elements* which characterize the offense which his subordinates have committed with which he is being charged." (emphasis added)); *see also id.* at 201-202. Notably, nowhere do Plaintiffs here allege that Defendants knew that *nonviolent* civil-ians unrelated to the uprising had been killed *illegally*, as opposed to knowing that civilians who had been involved in the uprising or who had been caught in the crossfire had died.[4] The Elev-enth Circuit could reasonably conclude that Plaintiffs' allegations do not meet the stringent knowledge requirement of command responsibility.

As to the failure-to-act requirement: as this Court recognized, in order to establish com-mand responsibility, Plaintiffs must additionally establish that Defendants "failed to prevent the extrajudicial killings or failed to punish the soldiers afterwards." Op. 39 (internal quotation marks omitted). Under that requirement, however, a commander is "duty bound only to under-take what appears appropriate under the given conditions." *Oric*, No. IT-03-68-Y, ¶ 329; *Prose-cutor* v. *Delalic*, No. IT-96-21-T, ¶ 395 (ICTY Trial Chamber, Nov. 16, 1998), *available at* 1998 WL 34310017. There is no dispute that Defendants could not have undertaken efforts to punish

---

[4] The Court relied on Plaintiffs' allegations that "Defendants met and discussed a plan to use lethal force to quell public opposition," and "closely supervised the ensuing military operations." Op. 37-38. Plaintiffs, however, do not allege that Defendants were aware that *nonviolent* civil-ians had been killed *unlawfully* as a result of their alleged supervision, or that Defendants planned such illegal killings. Compl. ¶¶ 60-165. The Court also noted the allegation that De-fendants "issued a series of decrees authorizing the military to use force against roadblocks, marches, and demonstrations." Op. 37-38. Those decrees, however, authorized the use of force only against violent protesters. Moreover, Plaintiffs made similar allegations regarding Defend-ants' supervision of the military and issuance of decrees in their prior complaint, and the Elev-enth Circuit determined that those allegations were insufficient. 654 F.3d at 1154; *see* First Am. Compl. ¶¶ 1, 21-23, 34, 36, 38, 42, 47-49, 59, 61, 69, 79, 81.

wrongdoers after the violence ended, because Defendants were forced to leave Bolivia.   The question is thus whether liability arises because Defendants did not stop to investigate and punish allegations of civilian deaths in the short period they had available to them and while the violence—and efforts to end it—remained ongoing.   In light of the undisputed context in which Defendants acted, there is a substantial ground for disagreement as to whether Plaintiffs' allegations are legally sufficient to satisfy the "timeliness" component of the failure-to-act requirement under these circumstances.  *See* Mettraux 241 n.48; *Prosecutor* v. *Kamuhanda*, No. ICTR-95-54A-T, ¶ 610 (ICTR Trial Chamber, Jan. 22, 2004), *available at* 2004 WL 360682; *Prosecutor* v. *Halilovic*, No. IT-01-48-T, ¶ 73 (ICTY Trial Chamber, Nov. 16, 2005), *available at* 2005 WL 3393137; *Delalic*, No. IT-96-21-T, ¶ 395.

### C.   An Immediate Appeal Will Materially Advance This Litigation

There can be no serious doubt that an immediate appeal will "materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b), because such resolution "would serve to avoid a trial or otherwise substantially shorten the litigation," *McFarlin*, 381 F.3d at 1259. Here, an immediate appeal will "materially advance" the termination of this litigation because, if the court of appeals decides either of the questions presented here in Defendants' favor, that determination would likely "dispose of the entire case." *In re Pacific Forest Products*, 335 B.R. 910, 924 (S.D. Fla. 2005).   Indeed, courts routinely grant certification in cases presenting exhaustion or similar issues at the motion-to-dismiss stage, because resolution of those issues could eliminate the need for discovery or a trial.  *See, e.g.*, *Rhoades* v. *Young Women's Christian Ass'n of Greater Pittsburgh*, Civ. No. 09-1548, 2011 WL 240149, at *2 (W.D. Pa. Jan. 24, 2011); *New Jersey Protection & Advocacy*, 2008 WL 4692345, at *5; *United States* v. *Moglia*, Civ. No. 02-6131, 2004 WL 1254128, at *3 (N.D. Ill. June 7, 2004).

In addition, interlocutory review of this Court's order could prevent years of burdensome discovery and litigation.  Discovery in this case will undeniably be complex, expensive, and time-consuming.  Because all of the events transpired in Bolivia, most of the relevant witnesses and documents will be located there, necessitating extensive international discovery.  Even under the best of circumstances, transnational discovery is expensive, burdensome, and time-consuming.  *See, e.g.*, *Quaak* v. *Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*, 361 F.3d 11, 21 & n.4 (1st Cir. 2004); *In re Arakis Energy Corp. Securities Litig.*, Civ. No. 95-3431, 2001 WL 1590512, at *11 (E.D.N.Y. Oct. 31, 2001).  This case does not present the best of circumstances.  In developing the historical record, counsel will be required to travel to locations throughout Bolivia to conduct discovery regarding events that are the subject of serious tension even to this day.  As just one example, the announcement that Minister Berzaín had obtained asylum in the United States caused thousands to riot at the U.S. Embassy in La Paz.  *See Bolivia Protesters Demand That Washington Extradite Ex-Official*, El Pais, June 11, 2008, at 4 (Eng.), *available at* 2008 WLNR 10956188.

Discovery in this case, moreover, would require piecing together events that occurred during a chaotic civil uprising that ultimately led to the overthrow of the government.  Counsel would need to investigate the circumstances of at least 58 alleged deaths, as well as alleged injuries to more than 400 others.  Potential deponents would include not only civilian and soldier witnesses to each alleged death or injury, but also the cabinet members and members of the military and police who were responsible for maintaining order during the uprising.  Counsel would also need to conduct discovery related to Defendants' defenses—*e.g.*, that Defendants' actions were necessary to rescue approximately 800 hostages in Sorata and to get critical supplies to La Paz.  And Defendants would seek discovery to support their contention that the uprising was led

by, *inter alia*, Evo Morales, the current Bolivian president—a contention supported by contemporaneous State Department cables. *See* ECF No. 183, Ex. 11. Even discovery in the United States would be complicated, as Defendants would seek to depose, among other individuals, State Department officials present in Bolivia at the relevant times, who monitored events and prepared cables supporting Defendants' position.

As was the case when Defendants sought and obtained certification of Judge Jordan's earlier order denying their motion to dismiss, this Court should not undertake the laborious process of supervising and adjudicating such exceptionally complex discovery in a case in which the resolution of crucial threshold questions by the Eleventh Circuit might quickly and easily resolve the entire dispute. Under these extraordinary circumstances, the third prong of the test for Section 1292(b) certification is readily met.

## II.    THE COURT SHOULD GRANT A STAY PENDING APPEAL

If this Court grants Defendants' motion for certification, it should stay all proceedings in this case, including discovery, pending the completion of proceedings on appeal. A stay would plainly be warranted for several reasons.

*First*, as noted above, discovery in this litigation will undeniably be complex, expensive, and time-consuming. In those circumstances, courts have considered a stay pending appeal to be "the most efficient course" that "promote[s] economy of time and effort for the Court, counsel, and litigants." *Asis Internet Services* v. *Active Response Group*, Civ. No. 07-6211, 2008 WL 4279695, at *4 (N.D. Cal. Sept. 16, 2008). Indeed, district courts routinely stay proceedings incident to the certification of an appeal under Section 1292(b) even in cases involving garden-

14

variety discovery obligations, much less the exceptional discovery that would be required on Plaintiffs' claims here.[5]

*Second*, a stay is especially appropriate where, as here, "the issue [on appeal] may be dispositive of plaintiff's federal claims." *Kotrous* v. *Goss-Jewett Co.*, Civ. No. 02-1520*, 2005 WL 2452606, at *5 (E.D. Cal. Oct. 4. 2005). As explained above, if the Eleventh Circuit rules in favor of Defendants on *either* question, dismissal of Plaintiffs' remaining claims will likely be warranted. *See* p. 2, *supra*. In that event, any discovery in this case will have only served to "waste the resources of the litigants in the action before the court, delay resolution of disputes between other litigants, squander scarce judicial resources, and damage the integrity and the public's perception of the federal judicial system." *Chudasama* v. *Mazda Motor Corp.*, 123 F.3d 1353, 1368 (11th Cir. 1997). Put another way, "it might well be a profligate waste of judicial resources to proceed any further in this case in this controversial area without what may be dispositive guidance" as to the threshold legal issues the case presents. *Mwani* v. *United States*, Civ. No. 99-125, 2012 WL 78237, at *1 (D.D.C. Jan. 10, 2012). All parties would benefit by having those threshold issues resolved before engaging in extensive discovery.

*Third*, Plaintiffs will suffer minimal hardship, if any, from a stay. If this Court grants Defendants' motion for certification, Defendants will need to file a similar motion with the Eleventh Circuit. *See* 28 U.S.C. § 1292(b). Defendants expect the Eleventh Circuit to decide wheth-

---

[5] *See, e.g.*, *Rhoades*, 2011 WL 240149, at *2; *Ritz Camera & Image* v. *Sandisk Corp.*, Civ. No. 10-02787, 2011 WL 3957257, at *3 (N.D. Cal. Sept. 7, 2011); *New Jersey Protection & Advocacy*, 2008 WL 4692345, at *5; *Dial*, 612 F. Supp. 2d at 1209; *In re Dynex Capital, Inc., Securities Litig.*, Civ. No. 05-1897, 2006 WL 1517580, at *3 (S.D.N.Y. June 2, 2006); *In re Pacific Forest Products*, 335 B.R. at 925; *Kotrous*, 2005 WL 2452606, at *5; *Benedict* v. *Town of Newburgh*, 95 F. Supp. 2d 136, 144 (S.D.N.Y. 2000); *Traub* v. *Cornell University*, Civ. No. 94-502, 1999 WL 224804, at *4 (N.D.N.Y. Apr. 12, 1999); *Shochet Securities, Inc.* v. *First Union Corp.*, 663 F. Supp. 1035, 1038 (S.D. Fla. 1987); *see also Mwani* v. *Laden*, 947 F. Supp. 2d 1, 6 (D.D.C. 2013); *Alexander* v. *Washington Mutual, Inc.*, Civ. No. 07-4426, 2008 WL 3285845, at *4 (E.D. Pa. Aug. 4, 2008).

er to grant permission to appeal quickly; in the prior appeal in this case, the Eleventh Circuit did so in approximately three months.  If the Eleventh Circuit denies permission to appeal, then the proceedings in this case will have been delayed only a *de minimis* amount of time.  If the Eleventh Circuit grants permission to appeal, however, then it will have determined that this case involves a controlling issue of law about which there is substantial room for disagreement, and which could potentially terminate the case if decided in Defendants' favor.  At that point, a stay would assuredly be appropriate.

Even if the Eleventh Circuit grants certification and then affirms this Court's order, moreover, any prejudice to Plaintiffs would be slight.  The events at issue in this case occurred nearly eleven years ago.  In light of the time that has already passed, there is little reason to think that the relatively short time required for an appeal—the prior appeal in this case was concluded in approximately 14 months[6]—will meaningfully exacerbate any difficulties in discovery.  And, of course, nothing about a stay of formal discovery would prevent Plaintiffs from conducting their own factfinding.  Indeed, it appears that Plaintiffs have already taken numerous factfinding trips to Bolivia, and Plaintiffs have informed this Court that they had an attorney monitor the three-year criminal trial there concerning these alleged events.  *See* ECF No. 191, Becker Decl; ECF No. 151, at 10.

In sum, the parties should not have to undertake the extremely burdensome discovery required by this case during an appeal which may decide that Plaintiffs in fact have no legally sus-

---

[6] The Eleventh Circuit granted Defendants' Section 1292(b) motion on July 8, 2010, and issued its decision on August 29, 2011.  The additional delay in this matter occurred because Plaintiffs requested, and Defendants agreed to, a stay pending the Supreme Court's decision in *Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659 (2013), before filing their amended complaint.

tainable claims.  If this Court grants Defendants' motion for certification—and we respectfully submit that it should—then a stay is plainly warranted.[7]

---

[7] Defendants additionally request that, if necessary, the Court extend the time within which Defendants must answer Plaintiffs' Complaint until 30 days after the Court decides this motion, and, if the Court grants the motion, until 30 days after the completion of proceedings on appeal.

17

## CONCLUSION

For the foregoing reasons, this Court should grant the motion for certification for inter-locutory appeal under 28 U.S.C. § 1292(b), and issue an accompanying stay pending appeal.[8]

Respectfully submitted,

_____/s/ Ana C. Reyes_____
Kannon K. Shanmugam (*pro hac vice*)
Ana C. Reyes (*pro hac vice*)
Kristin A. Shapiro (*pro hac vice*)
Greg S. Hillson (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC  20005
(202) 434-5000
(202) 434-5029 (facsimile)
    kshanmugam@wc.com
    areyes@wc.com
    kshapiro@wc.com
    ghillson@wc.com

Mark P. Schnapp (Fla. Bar No. 501689)
Eliot Pedrosa (Fla. Bar No. 182443)
GREENBERG TRAURIG, P.A.
333 Avenue of the Americas
Miami, FL  33131
(305) 579-0500
(305) 579-0717 (facsimile)
    schnappm@gtlaw.com
    pedrosae@gtlaw.com

Glenn E. Goldstein (Fla. Bar No. 435260)
GREENBERG TRAURIG, P.A.
401 East Las Olas Boulevard
Fort Lauderdale, FL  33301
(954) 765-0500
(954) 765-1477 (facsimile)
    goldsteing@gtlaw.com

June 13, 2014                              *Counsel for Defendants*

---

[8] Pursuant to Local Rule 7.1(a)(3), counsel for Defendants has conferred with opposing counsel regarding this motion.  Opposing counsel has stated that they do not consent to the motion.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on June 13, 2014, I electronically filed the foregoing motion with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served on the counsel listed on the attached Service List by electronic mail (in PDF format).


                                       _____/s/ Ian Ross_____

                                       Ian Ross (Fla. Bar No. 91214)

**SERVICE LIST**

Ira J. Kurzban (Fla. Bar No. 225517)
KURZBAN, KURZBAN, WEINGER & TETZOLI, P.A.
Plaza 2650
2650 SW 27th Avenue, 2nd Floor
Miami, FL 33133
Tel: (305) 443-4675
Fax: (305) 444-3503
E-mail: ira@kkwtlaw.com

Judith Brown Chomsky
CENTER FOR CONSTITUTIONAL RIGHTS
Post Office Box 29726
Elkins Park, PA 19027
Tel: (215) 782-8367
Fax: (215) 782-8368
E-mail: jchomsky@igc.org

Beth Stephens
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway
Seventh Floor
New York, NY 10012
Tel: (212) 614-6431
Fax: (212) 614-6499
E-mail: jgreen@ccr-ny.org

David Rudovsky
KAIRYS, RUDOVSKY, MESSING &
FEINBERG LLP
718 Arch Street, Suite 501 South
Philadelphia, PA 19016
Tel: (215) 925-4400
Fax: (215) 925-5365
E-mail: drudovsk@law.upenn.edu

Tyler R. Giannini
Susan H. Farbstein
INTERNATIONAL HUMAN RIGHTS CLINIC
Harvard Law School
Pound Hall 401, 1563 Massachusetts Avenue
Cambridge, MA 02138
Tel: (617) 495-9362
Fax: (617) 495-9393
E-mail: giannini@law.harvard.edu

Paul Hoffman
SCHONBRUN, DE SIMONE, SEPLOW,
HARRIS & HOFFMAN, LLP
723 Ocean Front Walk
Venice, CA 90201
Tel: (310) 396-0731
Fax: (310) 399-7040
E-mail: hoffpaul@aol.com

Steven H. Schulman
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Building
1333 New Hampshire Avenue N.W.
Washington, DC 20036
Tel: (202) 887-4000
Fax: (202) 887-4288
E-mail: sschulman@akingump.com

Michael D. Small
Jeremy F. Bollinger
AKIN GUMP STRAUSS HAUER & FELD LLP
2029 Century Park East, Suite 2400
Los Angeles, CA 90067
Tel: (310) 229-1000
Fax: (310) 229-1043
E-mail: msmall@akingump.com
E-mail: jbollinger@akingump.com