## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

| | | |
|---|---|---|
| ELOY ROJAS MAMANI, *et al.*, | ) | **Case No. 08-21063-CV-COHN** |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GONZALO DANIEL SÁNCHEZ DE | ) | |
| LOZADA SÁNCHEZ BUSTAMANTE, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | **Case No. 07-22459-CV-COHN** |
| ELOY ROJAS MAMANI, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOSÉ CARLOS SÁNCHEZ BERZAÍN, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## PLAINTIFF ELOY ROJAS MAMANI'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Plaintiff Eloy Rojas Mamani opposes the Motion to Compel Documents Responsive to Defendants' Second Set of Requests for Production of Documents ("Motion") filed by Defendants Gonzalo Daniel Sánchez de Lozada Sánchez Bustamante and José Carlos Sánchez Berzaín ("Defendants"), and hereby responds to Defendants' Memorandum of Law in Support of their Motion ("Mem.").

## I.     INTRODUCTION

This litigation concerns claims under the Torture Victim Protection Act and claims for wrongful death.   Nine Bolivian citizens brought these claims against the former President of Bolivia and his Minister of Defense based on the killings of Plaintiffs' family members in September and October 2003.   During fact discovery in this case, Defendants served each Plaintiff with requests for production of documents.   Certain of those requests directed at Plaintiff Eloy Rojas Mamani are the subject of Defendants' Motion here.

But Defendants are not seeking to compel production of Mr. Rojas Mamani's documents—he has already produced those documents to Defendants.  Instead, Defendants seek documents owned by a third-party Bolivian entity, the Asociación de Familiares de Fallecidos y Caídos en Septiembre y Octubre de 2003 por la Defensa del Gas [the "Association of Relatives of the Deceased and Fallen in September and October 2003 for the Defense of Gas"] (the "Association").   The Association—a distinct legal entity—was formed by a number of Bolivians (including Mr. Rojas Mamani) who lost relatives during the attacks in September and October 2003.   For approximately four years, Mr. Rojas Mamani served as Vice President of the Association and, by virtue of his position, he had the ability to review certain of the Association's documents.   Despite Defendants' insistence, those documents belonging to the Association were not in Mr. Rojas Mamani's possession, custody, or control at that time.   Mr. Rojas Mamani stepped down from his position within the Association in 2009 and still has neither possession, nor custody, nor control of any Association documents.

The appropriate mechanism for Defendants to acquire the Association's documents is a request to the Association, or a request for international judicial assistance (letters rogatory), asking a Bolivian authority to issue the appropriate subpoena or document request to the

Association.  Instead, Defendants advance a myriad of meritless arguments as to why Mr. Rojas Mamani should be compelled to produce the Association's documents, which he does not have.

First, Defendants contend that Mr. Rojas Mamani has waived any objection to providing these documents.  Defendants simply ignore Mr. Rojas Mamani's actual position.  He has not raised a new untimely objection.  He does not change but rather maintains his initial response to Defendants' document requests: he does not possess, have custody of, or control any responsive documents.  To the extent Defendants contend that he did "possess" documents at some point, his answer is the same.  He did not then have possession, custody, or control.  Defendants' waiver argument is a red herring.

Second, Defendants argue Mr. Rojas Mamani had a duty to "preserve" the Association's documents that he could view as Vice President between 2007 and 2009.  But they do not argue that the documents have not been preserved.  Rather, they advance the novel claim that Mr. Rojas Mamani failed to *personally* retain those documents when he stepped down from his position at the Association.  According to Defendants, Mr. Rojas Mamani apparently needed to obtain and make personal copies of every Association document that could conceivably be responsive to Defendants' document requests, which were not served for nearly a decade after his departure.  This argument has no basis in law and ought to be rejected by the Court.  In short, Defendants ask this Court to rule that Mr. Rojas Mamani and the Association are one and the same.  Black-letter law, however, is to the contrary. Corporate entities exist separately from their members, officers, and directors, and exercise independent possession, custody, and control of their own documents.[1]

---

[1] As noted above, the proper way to acquire the Association's documents was to seek discovery from the Association.  This would permit the Association to lodge its own objections to their production, and/or negotiate (or ask this Court for) whatever protections the Association

Finally, Defendants contend that even now Mr. Rojas Mamani has "effective possession and control" of the documents because he testified he could "ask" the current President of the Association to permit him to view the documents.  Mem. at 13.  Mr. Rojas Mamani's ability to view a third-party's documents (an ability it is not clear he even has) is completely irrelevant to the document requests underlying Defendants' Motion, and would pose impossible obligations under the Federal Rules.  If Defendants wanted the Association's documents, they should have served discovery on the Association.

## II.   RELEVANT BACKGROUND

Mr. Rojas Mamani, a Bolivian native, alleges that the Bolivian Armed Forces killed his eight-year-old daughter, Marlene Nancy Rojas Ramos, in their family home in Warisata, Bolivia. Second Am. Compl., Dkt. 156 ¶ 18.[2]  Marlene was killed by a single, high caliber bullet as she moved to look out a window in her home while the Bolivian Armed Forces moved through Warisata, ostensibly to rescue a convoy of foreign tourists.  *Id.* ¶¶ 74-75.  Marlene's death was purposefully directed by Defendants, who orchestrated a scheme designed to quash political dissent by deploying the Bolivian Armed Forces to crush protestors and to kill any innocent Bolivians who happened to be in the way.  *See id.* ¶¶ 180-188.  Numerous other Bolivian civilians were killed in a similar fashion on September 20, October 12, and October 13, 2003. *See generally id.*

---

feels it needs.  Defendants' course here—demanding the documents from Mr. Rojas Mamani— deprives the Association of those protections.

[2] All citations to the docket herein refer to *Eloy Rojas Mamani, et al. v. Gonzalo Daniel Sánchez de Lozada Sánchez Bustamante*, Case No. 08-21063.

After the events of September and October 2003, many relatives of the decedents formed the Association. *See* Reyes Decl.,[3] Ex. G, E. Rojas Mamani June 2, 2017 Dep. Tr. ("Mamani Dep. Tr."), 166:10-15. The Association is a forum for victims' relatives to seek justice for their deceased family members. *Id.* at 168:23-169:14. Mr. Rojas Mamani served as the Vice President (Deputy Chairman) of the Association from approximately 2005 through 2009. *Id.* at 166:23-25; 173:14-20. As Vice President of the Association, Mr. Rojas Mamani had access to the Association's confidential documents. Defendants seize on his ability to view these third-party documents eight years ago as the basis for their motion to compel.

Rather than accurately characterize the facts, Defendants' Motion presents a story that Defendants wish were the case—and would even then be insufficient under the law. As relevant to Defendants' Motion, Mr. Rojas Mamani testified to the following:

- The Association is a legal entity in Bolivia and possesses records relating to its business. *Id.* at 171:10-18.

- The Association's records are confidential, and kept at either the Association's office or with the President (Chairman) of the Association. *Id.* at 171:14-20; 172:2-173:6 ("Q: Where physically are the documents? A: Under his [the Association President's] care"); 174:6-7 ("Q: Who would you ask to go see them? A: To the president of the [A]ssociation."); 213:19-214:4.

- When the leadership of the Association changes, the new president and leaders take charge of the Association's documents. *Id.* at 172:24-173:6; 213:19-214:7.

- The Association's leaders have access to Association documents related to conducting its business. *Id.* at 215:12-22 (indicating Association meeting minutes are the type of document held by the Association). Association executives and members do not have *personal* access to documents. *Id.* at 171:10-18 ("The [A]ssociation keeps the documents, nobody else does. . . . [N]obody has personal access to those [Association] documents. We have a file and nobody can get documents out of it.").

---

[3] All citations to the Reyes Decl. herein refer to the Decl. Ana C. Reyes Supp. Defs.' Mot. Compel Produc. Docs. Responsive Defs.' Second Set Reqs. Produc. Docs., filed concurrently with Defendants' Motion.

- Individual members have personal documents related to their specific deceased family member—these are not Association documents. *Id.* at 212:13-18 (explaining "personal files or documents" belong to "a given person," not the Association); 215:17-22 ("Each of us has [personal] documents").

Notably, Defendants do not quote "Mr. Rojas Mamani admitt[ing] . . . ha[ving] possession, custody, and control over the Association documents at the time he filed the present lawsuit," Mem. at 4, because he admitted no such thing. He testified to being "in charge" of documents during his tenure as a "leader," and stressed that the Association maintains physical custody of the documents in Bolivia. Mamani Dep. Tr. at 172:24-173:23.

## III.   ARGUMENT

### A.   Mr. Rojas Mamani Plainly Stated His Objection and Indicated He Had No Responsive Documents

Defendants first argue that Mr. Rojas Mamani waived his objection to producing Association documents because he *plainly stated* that he "has no documents in his possession due to his role as Vice President." Reyes Decl., Ex. B, Pls.' Resps. & Objs. Defs.' Second Set Reqs. Produc. Docs., at 11 (May 15, 2017) ("Pls.' Responses").[4] Somehow, such straightforward language confused Defendants, who now claim that his statement that he had no documents responsive to their request is an "evasive" objection or, worse still, a "shell game"—as if Mr. Rojas Mamani hid the existence of the Association, or sent his own documents to the Association. Putting aside the fact that Defendants have been aware of the Association—and the Association documents—for at least ten years, this argument is meritless on its face.

Pursuant to Federal Rule of Civil Procedure 34(b)(2)(C), "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection." That is precisely what Mr. Rojas Mamani did here. He lodged an overbreadth objection. *See, e.g.*, Pls.'

---

[4] Mr. Rojas Mamani also lodged a general objection to the fact that Defendants sought information "equally available" to both parties, including "material . . . available from other parties, [or] not within Plaintiffs' possession, custody, and/or control." Pls.' Responses at 2.

Responses at 10-11.  He then stated that he has no Association documents to produce because he "has no documents in his possession due to his role as Vice President."  *Id.*  That was his answer when he responded to Defendants' document requests.  *Id.*  That was his answer at his deposition.  Mamani Dep Tr. at 216:13-16.  That was his answer during the meet and confer process.  *See* Reyes Decl. Ex. D, June 19, 2017 Letter from E. Woods to A. Reyes ("Plaintiffs are not withholding any responsive and nonprivileged documents on the basis of the objections outlined in Pls.' Responses.").  And that is his answer now.  He does not possess these documents.

Mr. Rojas Mamani's clear and specific statement that he has "no documents in his possession due to his role as Vice President" can hardly be characterized as a boilerplate or formulaic response to Defendants' request.  That is exactly the response a party should provide when he has no responsive documents.  Whether Mr. Rojas Mamani had an obligation and failed to preserve documents years ago—as Defendants allege (with no support in fact or law)—is a different question entirely.  Mr. Rojas Mamani's response to that mistaken contention does not somehow constitute a new objection to Defendants' document requests.  Mr. Rojas Mamani is not withholding documents in response to Defendants' requests at issue here, and there is nothing to compel.  The Court should reject Defendants' strained waiver argument.

**B.    Mr. Rojas Mamani Did Not and Does Not Have "Possession," "Custody," or "Control" of the Association Documents**

Defendants' primary contention appears to be that Mr. Rojas Mamani had or continues to have "effective possession" or control of the Association documents either (1) because he was at one time a "leader" of the Association, or (2) because he testified that he could look at documents by speaking to the current Association President.  *See* Mamani Dep. Tr. at 174:4-7.  Even assuming this is an accurate characterization of the Association's policies as regarding its

documents,[5] the fact that Mr. Rojas Mamani previously had access, or could conceivably access the documents today does not mean he exercises "effective possession" or "control" over them. Under well-established precedent, both in the Eleventh Circuit and elsewhere, an entity executive—particularly a *former* entity executive—may not be compelled to produce entity documents.

Under Federal Rule of Civil Procedure 34, "possession, custody, or control" governs the production of documents. The Eleventh Circuit defines control "not only as possession, but as the legal right to obtain the documents requested upon demand." *SeaRock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984). Defendants, the party seeking production, bear the burden of establishing Mr. Rojas Mamani's control of the Association documents. *See Costa v. Kerzner Int'l Resorts, Inc.*, 277 F.R.D. 468, 473 n.2 (S.D. Fla. 2011). They have failed to do so.

1.     Entities Exercise Independent Control of Their Documents

It is a matter of black-letter law that a legal entity exists "separate and distinct from its shareholders, officers, and directors." *FMC Fin. Corp. v. Murphree*, 632 F.2d 413, 421 (5th Cir. 1980).[6] Custodians of corporate or entity records, therefore, hold those documents "in a representative rather than a personal capacity." *Braswell v. United States*, 487 U.S. 99, 109-10 (1988) (reasoning that corporate custodian may not invoke personal Fifth Amendment privilege to resist subpoena directed to corporation). A custodian's "access" to corporate documents is

---

[5] While Defendants treat Mr. Rojas Mamani's deposition testimony as gospel on the Association and its policies, the fact is that Mr. Rojas Mamani could only testify to his best understanding of how he could potentially access Association documents. Absent the benefit of discovery on the Association, it remains unclear whether the Association would allow Mr. Rojas Mamani access to its documents upon his request. This Court should not compel Mr. Rojas Mamani to make copies of documents he has never actually had the right to, and then if he is not permitted to do so (and likely never was), to entertain a spoliation motion from Defendants.

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

"irrelevant" to a subpoena directed to the custodian in his or her personal capacity. *United States v. Kent* (*In re Grand Jury Subpoena*), 646 F.2d 963, 969 (5th Cir. Unit B June 1981).  Indeed, the use of a subpoena directed to an individual "as a vehicle to obtain [entity] records" cannot be upheld as it would illegally "direct [the individual] to produce documents not in her possession, custody, or control." *Id.*

Courts have repeatedly held that "mere access is not possession, custody, or control." *Id.*; *see also, e.g.*, *Wiwa v. Royal Dutch Petrol. Co.*, 392 F.3d 812, 821 (5th Cir. 2004) ("The phrase 'to which he has access' is overbroad; it would require the retrieval of documents from Nigeria— documents not under Oteri's custody, control, or possession, but to which he could conceivably have access by virtue of his prior position with Shell."); *Maale v. Caicos Beach Club Charter, Ltd.*, No. 08-80131-Civ, 2010 WL 297808, at *1 (S.D. Fla. Jan. 19, 2010) ("The word 'control' has a narrower meaning than 'access to.'").  Further, "[c]ontrol does not include making a search of all potential sources which might be able to provide the documents." *Coquina Invs. v. Rothstein*, No. 10-60786-Civ, 2011 WL 13096539, at *1 (S.D. Fla. July 11, 2011).

### 2. Mr. Rojas Mamani Lacks the "Practical Ability" to Obtain the Association Documents

Defendants emphasize that "control" may be found where a party has the "practical ability" to obtain documents.  *See* Mem. at 13-15 (citing, *inter alia*, *Costa*, 277 F.R.D at 471).  Relying on a variety of cases that bear little resemblance to the facts at issue here, Defendants assert that Mr. Rojas Mamani, as a former Association leader, has the practical ability—if not the legal right—to obtain Association documents.  A close read of these authorities shows only that Defendants were unable to find a single case where a former executive was compelled to produce entity records.  *See Costa*, 277 F.R.D at 471 (finding parent company controlled documents held by subsidiaries and affiliates within a "unified corporate structure"); *Batista v.*

*Nissan N. Am., Inc.*, No. 14-24728-Civ, 2015 WL 10550409, at *2 (S.D. Fla. Dec. 8, 2015) (wholly-owned subsidiary had control of documents held by foreign parent corporation when working closely on common transaction); *Core Constr. Servs. Se., Inc. v. Crum & Forster Specialty Ins. Co.*, No. 6:14-cv-1790, 2015 WL 12839114, at *2 (M.D. Fla. June 11, 2015) (corporation had control of retainer agreements and other invoices relating to payments to and from defense counsel); *FDIC v. Bayer*, No. 2:13-cv-752, 2015 WL 12830467, at *2 (M.D. Fla. Feb. 25, 2015) (FDIC had control of documents because federal statute mandated that such records "shall" be made available); *Sciele Pharma, Inc. v. Brookstone Pharm., LLC*, No. 1:09-CV-3283, 2011 WL 3844891, at *4-5 (N.D. Ga. Aug. 30, 2011) (pharmaceutical company's documents held by its drug manufacturers); *Anz Advanced Techs., LLC v. Bush Hog, LLC*, No. 09-00228-KDN, 2011 WL 814663, at *9 (S.D. Ala. Jan. 26, 2011) (documents shared by corporate affiliates).

Simply put, nothing in the record supports the assertion that Mr. Rojas Mamani has the "practical ability" to obtain Association documents.  In *Siegmund v. Xuelian*, a court in this district rejected substantially the same "control" argument Defendants advance here as "contrary to law" because it "'effectively ignores the distinction between a corporation, on the one hand,' and that corporation's former directors and officers on the other." No. 12-62539-Civ, 2016 WL 1359595, at *3 (S.D. Fla. Apr. 6, 2016) (quoting *Am. Maplan Corp. v. Heilmayr*, 203 F.R.D. 499, 502 (D. Kan. 2001)).  Like Defendants here, the *Siegmund* plaintiff moved to compel former directors to produce corporate documents, arguing that the former directors had, "at the very least, the 'practical ability' to obtain the documents from [the corporation]," presumably because the current directors "would be amenable to complying with the requests." 2016 WL 1359595, at *3.  The court disagreed, noting that "[a] possibility that a request *might* be complied with is

not the same as 'control' under Rule 34." *Id.* (emphasis in original).  "A former director's apparent ability to request documents from his former corporation (or from the appropriate custodian at that corporation) is not the same as the ***right*** to obtain those documents upon demand or the ability to enforce compliance with that demand." *Id.* (emphasis in original).

Similarly, in *American Maplan*, discussed at length in *Siegmund*, the district court refused to enforce a subpoena that sought to compel the president and founder of a corporation to produce various corporate documents.  203 F.R.D. at 501-02.  Since there was "no evidence or allegation" that the corporation was in effect the alter ego of the individual, the magistrate judge's order to compel production of the corporate documents had "disregard[ed] VET's corporate form and its existence as a distinct legal entity." *Id.*  As the court noted, the subpoena to the president was an improper attempt by movants to "seek to obtain from one entity or individual what belongs to another." *Id.*; *cf. Kent*, 646 F.2d at 969 ("Because Allen had mere access, her compliance with the subpoena would have required that she illegally take exclusive possession of Kent's documents and deliver them to the grand jury.").

Defendants' perfunctory effort to distinguish *Siegmund*, *see* Mem. at 16, falls flat.  Mr. Rojas Mamani never testified to any *legal right* to anything, stating simply an apparent ability to attempt to "look at [the Association documents] now" by asking the "president of the [A]ssociation."  Mamani Dep. Tr. 173:18–174:7.[7]  Of course, the obligation to request the documents from the Association falls on Defendants, *not Mr. Rojas Mamani*.  Indeed, Mr. Rojas Mamani's statement shows that he in fact lacks the requisite control—if he did control the documents, then he would not have to request access to them.  *See, e.g.*, *SeaRock*, 736 F.2d at

---

[7] Mr. Rojas Mamani has no legal education and could neither testify to any "legal right" to the Association documents, nor his supposed "possession, custody, and control" of the Association documents.

654 (holding deposition transcript did not "support a characterization of his testimony as a statement that he had the *legal right* to obtain the documents on demand" when it was "merely a statement that because he lived in Alabama where the repair work was done he would write letters to the repair shops and attempt to obtain the documents" (emphasis in original)); *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1427 (7th Cir. 1993) ("[T]he fact that a party could obtain a document if it tried hard enough . . . does not mean that the document is in its possession, custody, or control; in fact it means the opposite.").

The reasoning outlined in *Siegmund* and *American Maplan* makes clear that Mr. Rojas Mamani does not have "possession, custody, or control" of the Association documents simply because he was once an executive of the organization.[8]  His testimony that he could ask the "president of the [A]ssociation" is evidence only of an "apparent ability to request documents from his former corporation"—not evidence that the Association will comply.  *See Siegmund*, 2016 WL 1359595, at *3 (citing *Klesch & Co. v. Liberty Media Corp.*, 217, F.R.D. 517, 520 (D. Colo. 2003) ("[E]ven under the most expansive interpretation of 'control,' the 'practical ability' to demand production must be accompanied by a similar ability to enforce compliance with that demand.")).

---

[8] Defendants assert that Mr. Rojas Mamani "may also have a legal right" to "access the Association documents" because they perhaps have "exchanged the requested documents." Mem. at 15 (citing *Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1201 (11th Cir. 2016)).  This is wholesale speculation, and fails to meet their burden to establish Mr. Rojas Mamani's control of the Association documents.  Even so, Mr. Rojas Mamani testified that "nobody has personal access to those documents," and "nobody can get documents out of [the Association's file]," indicating that he has not exchanged documents with the Association.  Mamani Dep Tr. at 171:14-18.

*Sergeeva* is inapposite.  834 F.3d at 1201.  There, the Eleventh Circuit affirmed a district court's judgment that *SeaRock*'s control requirement "may be established where affiliated corporate entities . . . have actually shared responsive information and documents in the normal course of their business dealings." *Id.*  The case involved affiliated companies—all part of the "Trident Group"—that "could not possibly perform their intended functions for Trident Group clients absent the ability to obtain information and documents" from their affiliates.  *Id.*

In sum, the documents belong to the Association, and Defendants should look to the Association for their production.  As Plaintiffs did here, the *American Maplan* Court suggested the use of a subpoena as the appropriate vehicle "to obtain documents from nonparties." 203 F.R.D. at 502; Reyes Decl., Ex. F, July 6, 2017 Letter from E. Woods to A. Reyes ("Defendants should consider properly serving a subpoena on [the Association], the entity that currently possesses and controls the desired documents.").

Finally, all Mr. Rojas Mamani testified to was the ability to "see" or "look at" documents, not to "obtain" or otherwise possess or make personal copies of them.  *See* Mamani Dep. Tr. at 173:23-174:5.  Even assuming the Association will do as Mr. Rojas Mamani speculated and permit him to view its documents, the evidence strongly suggests the Association would *not* permit Mr. Rojas Mamani to copy or take its documents.  *Id.* at 171:14-18 (explaining the Association "ha[s] a file and nobody can get documents out of it").  The ability to "see" Association documents does not satisfy *SeaRock*'s instruction that he also be able to "*obtain the documents* requested upon demand." 736 F.2d at 653 (emphasis added).  As should be clear to Defendants, the ability to "see" or "look at" a document is not the same as the ability to "obtain" it.  *See Obtain*, *Black's Law Dictionary* (10th ed. 2014) (defining "obtain" as, among other things, "[t]o bring into one's own possession; to procure").

3.  Mr. Rojas Mamani Did Not Breach Any Preservation Obligation Because the Association Retains Its Documents

Lastly, Defendants' charge that Mr. Rojas Mamani somehow breached his obligation to preserve the Association's documents when he left them within the Association's archives makes no sense.  As explained above, because Mr. Rojas Mamani did not have "possession, custody, or control" of the Association documents, he was under no obligation to preserve them.  *See Phillips v. Netblue, Inc.*, No. 05-4401, 2007 WL 174459, at *3 (N.D. Cal. Jan. 22, 2007) ("[T]he

document, or other potential objects of evidence, must be in the party's possession, custody, or control for any duty to preserve to attach.").[9]

It is undisputed that Mr. Rojas Mamani preserved—and has now produced—any document *he* maintained regarding the death of his daughter and the other categories of documents requested by Defendants. He never "handed them over" to any party. As Mr. Rojas Mamani explained at his deposition, the Association separately maintains, and preserves, its own documents. Mamani Dep. Tr., at 171:14-20; 211:3-25. He believes the Association maintains these documents in confidence and further believes the documents are still in the Association's possession. *Id.* Had Defendants properly served discovery on the Association, the parties and the Court could assess whether the Association's documents were not preserved.

*     *     *

Defendants do not cite any case, and Plaintiffs are not aware of any such case, where a court has ordered a former entity executive to produce entity documents on facts similar to those here. Given Defendants' insistence on the importance of the Association documents, there is no reason why Defendants—who doubtless have the resources—could not have served a subpoena on the Association in Bolivia through the proper channels.[10]  Had Defendants properly served

---

[9] Defendants' reliance on *Luellen v. Hodge* is misplaced. No. 11-cv-6144P, 2014 WL 1315317, at *5 (W.D.N.Y. Mar. 28, 2014) (based on "common-sense understanding of the relationship between an account holder and a financial institution," the court found that account holder had "sufficient control" of personal bank account records as "to be able to direct their preservation"). The facts here are plainly different. Mr. Rojas Mamani is a member—not an account holder—of the Association, which is not a financial institution. A "common-sense understanding of the relationship" between them only further reinforces that he did not control, and certainly could not direct the preservation of, Association documents.

[10] Throughout discovery, the parties have worked together to secure the cooperation of witnesses in Bolivia to, for example, sit voluntarily for depositions (if the witness was amenable to do so). Where a witness was not amenable to voluntary discovery, the parties submitted discovery through the appropriate international channels. Earlier this week, the Court signed a

discovery on the Association, the Association would have had the opportunity to object to the request and/or negotiate any additional protections it requires before producing its documents. Instead, Defendants attempt to circumvent the proper discovery channels set up for this very purpose by couching their request for Association documents as a demand to Mr. Rojas Mamani. As explained above, whatever access Mr. Rojas Mamani may have had to the documents from 2007 to 2009, and whatever access he could conceivably acquire now, does not satisfy the legal standard of possession, custody, or control that would obligate him to personally preserve and produce the documents.  *See Kent*, 646 F.2d at 969 ("That Allen had access to the records is irrelevant, for mere access is not possession, custody, or control.").

**IV.    CONCLUSION**

For the reasons set forth above, Defendants' Motion should be denied.

---

request for international judicial assistance (letters rogatory) so the parties could propound questions to Carlos Mesa, a Bolivian citizen living in Bolivia.  *See* Dkt. 268, 269.

Defendants have no excuse why they did not use proper channels to seek the Association documents—and no argument that their failure to obtain these documents will cause them prejudice.  *See SeaRock*, 736 F.2d at 654 ("Since Allied Marine also could have obtained the required documents—if they were then in existence—and failed to attempt to do so, it does not appear that Allied Marine's preparation for trial was substantially prejudiced by Stripling's failure to obtain and produce them.").

Dated: July 28, 2017
        Miami, Florida

                        Respectfully submitted,

                        By*:*   */s/ Ira J. Kurzban*
                        Ira J. Kurzban (Fla. Bar No. 225517)
                        KURZBAN KURZBAN WEINGER TETZELI AND PRATT P.A.
                        Plaza 2650
                        2650 SW 27th Avenue, 2nd Floor
                        Miami, FL  33133
                        Tel: (305) 444-0060
                        Fax: (305) 444-3503
                        E-mail: ira@kkwtlaw.com

                        *Counsel for Plaintiffs*

*Counsel for Plaintiffs*

| | |
|---|---|
| Ira J. Kurzban<br>KURZBAN KURZBAN WEINGER TETZELI<br>    AND PRATT P.A.<br>Plaza 2650<br>2650 SW 27th Avenue, 2nd Floor<br>Miami, FL 33133<br>Tel:  (305) 444-0060<br>Fax: (305) 444-3503<br>E-mail: ira@kkwtlaw.com | Steven H. Schulman (*pro hac vice*)<br>AKIN GUMP STRAUSS HAUER & FELD LLP<br>Robert S. Strauss Building<br>1333 New Hampshire Avenue NW<br>Washington, DC 20036<br>Tel:  (202) 887-4000<br>Fax: (202) 887-4288<br>E-mail: sschulman@akingump.com |
| Judith Brown Chomsky (*pro hac vice*)<br>CENTER FOR CONSTITUTIONAL RIGHTS<br>Post Office Box 29726<br>Elkins Park, PA  19027<br>Tel:  (215) 782-8367<br>Fax:  (215) 782-8368<br>E-mail: judithchomsky@icloud.com | Jennifer L. Woodson (*pro hac vice*)<br>Saurabh Sharad (*pro hac vice*)<br>Christine D. Doniak (*pro hac vice*)<br>AKIN GUMP STRAUSS HAUER & FELD LLP<br>One Bryant Park<br>Bank of America Tower<br>New York, NY 10036-6745<br>Tel:  (212) 872-1000<br>Fax: (212) 872-1002<br>E-mail: jwoodson@akingump.com<br>E-mail: ssharad@akingump.com<br>E-mail: cdoniak@akingump.com |
| Beth Stephens (*pro hac vice*)<br>CENTER FOR CONSTITUTIONAL RIGHTS<br>666 Broadway<br>Seventh Floor<br>New York, NY 10012<br>Tel:   (212) 614-6431<br>Fax:  (212) 614-6499<br>E-mail: beth.stephens@rutgers.edu | Edward A. Woods (*pro hac vice*)<br>Mariya Hutson (*pro hac vice*)<br>Jonathan Slowik (*pro hac vice*)<br>Zak Franklin (*pro hac vice*)<br>Daniela Spencer (*pro hac vice*)<br>AKIN GUMP STRAUSS HAUER & FELD LLP<br>1999 Avenue of the Stars, Suite 600<br>Los Angeles, CA 90067<br>Tel:  (310) 229-1000<br>Fax: (310) 229-1001<br>E-mail: ewoods@akingump.com<br>E-mail: mhutson@akingump.com<br>E-mail: jpslowik@akingump.com<br>E-mail: zfranklin@akingump.com<br>E-mail: dspencer@akingump.com |
| David Rudovsky (*pro hac vice*)<br>KAIRYS, RUDOVSKY, MESSING &<br>FEINBERG LLP<br>718 Arch Street, Suite 501 South<br>Philadelphia, PA 19016<br>Tel: (215) 925-4400 | Rubén H. Muñoz (*pro hac vice*)<br>Jason Weil (*pro hac vice*)<br>AKIN GUMP STRAUSS HAUER & FELD LLP<br>Two Commerce Square<br>2001 Market Street, Suite 4100<br>Philadelphia, PA 19103 |

| | |
|---|---|
| Fax: (215) 925-5365<br>E-mail: drudovsk@law.upenn.edu | Tel:  (212) 965-1328<br>Fax: (215) 965-1210<br>E-mail: rmunoz@akingump.com<br>E-mail: jweil@akingump.com |
| Jeremy F. Bollinger (*pro hac vice*)<br>MOSS BOLLINGER LLP<br>15300 Ventura Blvd., Suite 207<br>Sherman Oaks, California 91403<br>Tel: (310) 982-2984<br>Fax: (310) 861-0389<br>Email: jeremy@mossbollinger.com | Paul Hoffman<br>SCHONBRUN, SEPLOW,<br>HARRIS & HOFFMAN, LLP<br>723 Ocean Front Walk<br>Venice, CA 90201<br>Tel: (310) 396-0731<br>Fax: (310) 399-7040<br>E-mail: hoffpaul@aol.com |
| Tyler R. Giannini (*pro hac vice*)<br>Susan H. Farbstein (*pro hac vice*)<br>INTERNATIONAL HUMAN RIGHTS<br>CLINIC, Human Rights Program<br>Harvard Law School<br>Pound Hall 401, 1563 Massachusetts Avenue<br>Cambridge, MA 02138<br>Tel: (617) 495-9362<br>Fax: (617) 495-9393<br>E-mail: giannini@law.harvard.edu<br>E-mail: sfarbstein@law.harvard.edu | |

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2017, I electronically filed the foregoing document and exhibits attached thereto with the Clerk of the Court using CM/ECF. I also certify that the foregoing document and exhibits attached thereto are being served this day on counsel of record on the attached Service List either via transmission of Notice of Electronic Filing generated by CM/ECF or via e-mail.

*/s/ Ira J. Kurzban*
Ira J. Kurzban

## SERVICE LIST

Ana C. Reyes
Stephen D. Raber
James E. Gillenwater
Suzanne M. Salgado
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC  20005
(202) 434-5000
(202) 434-5029 (facsimile)
areyes@wc.com
sraber@wc.com
jgillenwater@wc.com
ssalgado@wc.com

Evan B. Berger
BECKER & POLIAKOFF, P.A.
1 East Broward Blvd., Suite 1800
Ft. Lauderdale, FL  33301
(954) 364-6055
(954) 985-4176 (facsimile)
eberger@bplegal.com