UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| ELOY ROJAS MAMANI, *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 08-21063-CV-COHN |
| GONZALO DANIEL SÁNCHEZ DE LOZADA SÁNCHEZ BUSTAMANTE, | ) |
| Defendant. | ) |
| ELOY ROJAS MAMANI, *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 07-22459-CV-COHN |
| JOSÉ CARLOS SÁNCHEZ BERZAÍN, | ) |
| Defendant. | ) |

**PLAINTIFFS' REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR
MOTION *IN LIMINE* TO EXCLUDE REFERENCE TO AKIN GUMP'S
REPRESENTATION OF THE GOVERNMENT OF BOLIVIA**

As Defendants acknowledge in their Opposition—"Evidence is relevant 'if it has a tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action.'" Opp. at 7 (quoting Fed. R. Evid. 401). Introducing the fact of Akin Gump's 1995-1997 representation of the Government of Bolivia is simply not relevant because Akin Gump had nothing to do with Defendants' response to protests in 2003. Even if Akin Gump's representation were relevant to the events of 2003, Defendants' use of the firm's name would only lead to jury confusion and litigation of collateral matters.

1

The simple fact is this:  If Akin Gump attorneys were not standing in the courtroom, Defendants would not seek to use Akin Gump's name in connection with the mid-90s privatization of Bolivia's natural gas corporation.  Plaintiffs' motion should be granted.

## I. Akin Gump's Prior Representation of the Government of Bolivia Is Irrelevant

Defendants advance various claims to support the alleged relevance of the identity of the law firm that assisted with the capitalization process in the first administration of Sánchez de Lozada, which ended in 1997, six years before the events at issue.  None of them pass muster.

*First*, and as a threshold matter, the legitimacy of the capitalization process from 1995-1997 is neither relevant nor in dispute.  Defendants mischaracterize Plaintiffs' allegations to attempt to show otherwise.  Defendants contend, for example, that the legal work done on the capitalization program is relevant to show that "the Sánchez de Lozada government pursued the gas project through legitimate means."  Opp. at 2.  But Plaintiffs have never alleged that the "means" of implementing the "gas project" were illegitimate; rather, Plaintiffs have challenged Defendants' scheme to quash the anticipated popular dissent to their decision to export natural gas.

Indeed, Defendants can make a case for relevance under the Rule 401 standard only by distorting Plaintiffs' allegations, arguing that Plaintiffs "characterize the [pipeline] project as a nefarious motive to kill civilians."  *Id.* at 10; *see also id.* at 11 ("Plaintiffs' allegations that the gas project was a pretext for premeditated killings").  Plaintiffs have made no such allegations.  Plaintiffs have never argued that Defendants sought to construct a Potemkin pipeline, or that the "gas project" was merely an excuse to kill civilians.  The relevant issue in this case is not the legitimacy of the planning for the pipeline project itself, but the legality of the Defendants' *plan to respond* to the expected public opposition to the pipeline and other economic policies.

This Court has previously rejected attempts to compel discovery of matters beyond "the events of September and October 2003 and the identity of those who bear responsibility for those events." *See* Order Affirming Magistrate Judge's Order at 3, Dkt. No. 266 (Case No. 08-21063) (rejecting discovery regarding Defendants' payments to potential witnesses) (internal citations omitted). The facts Plaintiffs presented in opposition to Defendants' Motion for Summary Judgment make clear this distinction between the pipeline plan itself and the Defendants' response to popular protests.[1] Moreover, the capitalization process pre-dated by years Defendants' discussions of the necessity of killing civilians to overcome popular protests, *see* Opp. at 7 & n.4, thus severing any logical connection between the legitimacy of capitalization and the legitimacy of the response to protests.

*Second*, even if the legitimacy of capitalization were at issue here, Defendants make no case why *Akin Gump*'s specific role in the capitalization program has any relevance to the issues in this case. Defendants start by offering the baseless allegation that Akin Gump was the "legal architect of President Sánchez de Lozada's 'unpopular' economic programs during his first term." Opp. at 1. Akin Gump was not hired until December 1995, more than two years into that first term, and provided advice for just 20 months only with respect to capitalization. *See* Ex. E (representation agreement dated December 18, 1995 limiting scope of representation to "[l]egal consultancy required during the entire Bolivian Fiscal Oilfield (YPFB) capitalization process");[2] *see also* Ex. B (Berindoague Dep. Tr. 221:23-222:2) (Dec. 18, 2017). There is no evidence that

---

[1] Plaintiffs' Opposition to Defendants' Motion for Summary Judgment does not make any reference to a pipeline or to the capitalization project from 1995-1997.

[2] Exhibits A-E cited herein are attached to the Declaration of Steven H. Schulman in Support of Plaintiffs' Motion *in Limine* to Exclude Reference to Akin Gump's Representation of the Government of Bolivia dated January 5, 2018, and Exhibit F is attached to the Declaration of Steven H. Schulman in Support of Plaintiffs' Reply in Further Support of Plaintiffs' Motion *in Limine* to Exclude Reference to Akin Gump's Representation of the Government of Bolivia dated January 26, 2018.

Defendant Sánchez de Lozada ever met with Akin Gump or discussed overall economic policy with the firm's lawyers. *See* Ex. B (Berindoague Dep. Tr. 225:19-226:4) (Dec. 18, 2017). This is hardly the résumé of a "legal architect" of a presidential administration's economic programs.

More to the point, the fact that an international law firm provided legal counsel on capitalization is simply not relevant to the issues in this case. *Of course* the Government of Bolivia sought legal counsel for capitalization—a complex transaction to attract international investment that was a predicate to the unpopular pipeline project. *See* Ex. F (Berindoague Dep. Tr. 235:19-236:12). Presumably the Government of Bolivia also hired consultants, engineers, financiers, oil and gas experts, and other professionals necessary for the execution of the project. Indeed, the Government of Bolivia established an entire agency to conduct the capitalization. *See* Ex. F (Berindoague Dep. Tr. 26:7-27:4). But Defendants have neither produced nor sought any evidence of the involvement of those other professionals in the capitalization. Their singular focus on Akin Gump's involvement—ignoring every other professional involved in the transaction—undermines their own assertion that the mechanics and legitimacy of the transaction is essential evidence in this matter.[3]

*Third*, Defendants' effort to pull Akin Gump into this case by pointing to the Government of Bolivia's unsuccessful effort to hire the firm in June 2003 similarly fails to establish any relevance to the events of September and October 2003. *See* Opp. at 10 (arguing potential lobbying by Akin Gump relevant to perception of events of early 2003 "on the international stage"). Again, Defendants offer no reason why Akin Gump's name or identity is at all relevant,

---

[3] If Defendants' intention here were simply to demonstrate that the capitalization project was legitimately organized or run from 1995-1997, they had ample opportunity to discover evidence and pursue that issue—however irrelevant—by other means. Instead, Defendants chose only to serve a third-party subpoena on Akin Gump and declined to serve subpoenas on any of the other professionals involved in the project.

particularly as *there was no work done by Akin Gump for the Government of Bolivia in 2003*. Furthermore, the view from "the international stage" bears no relationship to whether Defendants are ultimately responsible for the killings of Plaintiffs' decedents.

**II.      Even if Relevant, Reference to Akin Gump's Prior Representation Is Unduly Prejudicial, Will Confuse the Jury, and Lead to Litigation of Collateral Matters**

Even if Defendants were successful in showing the relevance of this evidence, they make no effort to show that the relevance outweighs the prejudice of introducing Akin Gump to the jury in this way.  *See* Fed. R. Evid. 403.  Defendants do not, and cannot explain why *the identity of the firm* is relevant to the issues in this case, and why that relevance outweighs the associated risk of prejudice, jury confusion, and litigation of matters that are collateral at best.

If Defendants need to prove that the pipeline project in fact involved some measure of professional planning six years before the relevant events—an issue that is simply not in dispute—they are free to do so without using the firm's identity as a seal of approval for Defendants' actions.  Defendants never address the implications of Florida Rule of Professional Conduct 4-1.2(b), which prohibits exactly what they seek to do here—using the lawyers' representation as an endorsement of the client's activities.  "A lawyer's representation of a client, including representation by appointment, does not constitute an endorsement of the client's political, economic, social, or moral views or activities."  *Id.*; *see also id.* cmt. ("[R]epresenting a client does not constitute approval of the client's views or activities.").  For that reason alone, Defendants should be precluded under Federal Rule of Evidence 403 from using Akin Gump's name in this context.

Finally, Defendants complain that Akin Gump sought "no input from Defendants themselves" before representing Plaintiffs in this case, and thus "Defendants should not be penalized in their ability to present relevant evidence."  Opp. at 12.  It was beyond imagination

5

that Defendants would believe that Akin Gump's 20-month limited representation of an agency of the Government of Bolivia—not these Defendants—more than six years prior to the events at issue in this case could be considered relevant in any way. Akin Gump owed no duty whatsoever to seek input from these Defendants.

Defendants' Opposition to Plaintiffs' Motion *in Limine* makes clear that Defendants are grasping at straws to present an argument to allow them to present to the jury some connection to Akin Gump, however slim that nexus may be. Throughout their Opposition, Defendants fail to establish (1) why it is paramount that the jury be made aware that Akin Gump previously represented the Government of Bolivia, and (2) how the jury will be able to distinguish Akin Gump's prior work for the Government of Bolivia from the firm's efforts on behalf of Plaintiffs in this litigation. Accordingly, tying Akin Gump's name to Defendants while Akin Gump attorneys represent Plaintiffs will unacceptably risk confusing the jury while providing minimal, if any, probative value. Defendants should be barred from doing so.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion *in Limine* to Exclude Reference to Akin Gump's Representation of the Government of Bolivia.

Dated: January 26, 2018
       Miami, Florida

Respectfully submitted,

By: */s/ Ilana Tabacinic*
Ilana Tabacinic (Florida Bar No. 57597)
AKERMAN LLP
Three Brickell City Centre
98 Southeast Seventh Street, Suite 1100
Miami, FL 33131
Tel: (305) 374-5600
Fax: (305) 374-5095
Email: ilana.tabacinic@akerman.com

*Counsel for Plaintiffs*

6

*Counsel for Plaintiffs*

| | |
|---|---|
| Ilana Tabacinic (Florida Bar No. 57597)<br>AKERMAN LLP<br>Three Brickell City Centre<br>98 Southeast Seventh Street, Suite 1100<br>Miami, FL 33131<br>Tel: (305) 374-5600<br>Fax: (305) 374-5095<br>Email: ilana.tabacinic@akerman.com | Steven H. Schulman (*pro hac vice*)<br>AKIN GUMP STRAUSS HAUER & FELD LLP<br>Robert S. Strauss Building<br>1333 New Hampshire Avenue NW<br>Washington, DC 20036<br>Tel: (202) 887-4000<br>Fax: (202) 887-4288<br>E-mail: sschulman@akingump.com |
| Judith Brown Chomsky (*pro hac vice*)<br>CENTER FOR CONSTITUTIONAL RIGHTS<br>Post Office Box 29726<br>Elkins Park, PA 19027<br>Tel: (215) 782-8367<br>Fax: (215) 782-8368<br>E-mail: judithchomsky@icloud.com | Joseph L. Sorkin (*pro hac vice*)<br>Jennifer L. Woodson (*pro hac vice*)<br>Saurabh Sharad (*pro hac vice*)<br>Christine Doniak (*pro hac vice*)<br>Harley Raff (*pro hac vice*)<br>AKIN GUMP STRAUSS HAUER & FELD LLP<br>One Bryant Park<br>Bank of America Tower<br>New York, NY 10036-6745<br>Tel: (212) 872-1000<br>Fax: (212) 872-1002<br>E-mail: jsorkin@akingump.com<br>E-mail: jwoodson@akingump.com<br>E-mail: ssharad@akingump.com<br>E-mail: cdoniak@akingump.com<br>E-mail: hraff@akingump.com |
| Beth Stephens (*pro hac vice*)<br>CENTER FOR CONSTITUTIONAL RIGHTS<br>666 Broadway<br>Seventh Floor<br>New York, NY 10012<br>Tel: (212) 614-6431<br>Fax: (212) 614-6499<br>E-mail: beth.stephens@rutgers.edu | Zak Franklin (*pro hac vice*)<br>Erica Abshez Moran (*pro hac vice*)<br>AKIN GUMP STRAUSS HAUER & FELD LLP<br>1999 Avenue of the Stars, Suite 600<br>Los Angeles, CA 90067<br>Tel: (310) 229-1000<br>Fax: (310) 229-1001<br>E-mail: zfranklin@akingump.com<br>E-mail: emoran@akingump.com |
| David Rudovsky (*pro hac vice*)<br>KAIRYS, RUDOVSKY, MESSING & FEINBERG LLP<br>718 Arch Street, Suite 501 South<br>Philadelphia, PA 19016<br>Tel: (215) 925-4400<br>Fax: (215) 925-5365<br>E-mail: drudovsk@law.upenn.edu | Rubén H. Muñoz (*pro hac vice*)<br>Jason Weil (*pro hac vice*)<br>AKIN GUMP STRAUSS HAUER & FELD LLP<br>Two Commerce Square<br>2001 Market Street, Suite 4100<br>Philadelphia, PA 19103<br>Tel: (212) 965-1328<br>Fax: (215) 965-1210<br>E-mail: rmunoz@akingump.com<br>E-mail: jweil@akingump.com |

| | |
|---|---|
| Paul Hoffman (*pro hac vice*)<br>SCHONBRUN, SEPLOW,<br>HARRIS & HOFFMAN, LLP<br>723 Ocean Front Walk<br>Venice, CA 90201<br>Tel: (310) 396-0731<br>Fax: (310) 399-7040<br>E-mail: hoffpaul@aol.com | Tyler R. Giannini (*pro hac vice*)<br>Susan H. Farbstein (*pro hac vice*)<br>Thomas Becker (*pro hac vice*)<br>INTERNATIONAL HUMAN RIGHTS CLINIC,<br>Human Rights Program<br>Harvard Law School<br>Pound Hall 401, 1563 Massachusetts Avenue<br>Cambridge, MA 02138<br>Tel: (617) 495-9362<br>Fax: (617) 495-9393<br>E-mail: giannini@law.harvard.edu<br>E-mail: sfarbstein@law.harvard.edu<br>E-mail: thomasbainbecker@gmail.com |

**CERTIFICATE OF SERVICE**

I hereby certify that on January 26, 2018, I electronically filed the foregoing Reply and accompanying documents with the Clerk of the Court using CM/ECF. I also certify that the foregoing documents are being served this day on counsel of record in the attached Service List either via transmission of Notice of Electronic Filing generated by CM/ECF or via e-mail.



*/s/ Ilana Tabacinic*
Ilana Tabacinic