UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| ELOY ROJAS MAMANI, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> GONZALO DANIEL SÁNCHEZ DE LOZADA SÁNCHEZ BUSTAMANTE, <br><br> Defendant. | Case No. 08-21063-CV-COHN |
| ELOY ROJAS MAMANI, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> JOSÉ CARLOS SÁNCHEZ BERZAÍN, <br><br> Defendant. | Case No. 07-22459-CV-COHN |

**PLAINTIFFS' MOTION TO ALLOW TESTIMONY AT TRIAL BY VIDEOCONFERENCE, OR IN THE ALTERNATIVE, TO ALLOW TRIAL DEPOSITIONS, AND TO SET STATUS CONFERENCE**

Plaintiffs Eloy Rojas Mamani, Etelvina Ramos Mamani, Sonia Espejo Villalobos, Hernán Apaza Cutipa, Teófilo Baltazar Cerro, Felicidad Rosa Huanca Quispe, Gonzalo Mamani Aguilar, Juana Valencia de Carvajal and Hermógenes Bernabé Callizaya (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby move this Court for an order allowing certain Bolivian witnesses to testify by videoconference at the upcoming trial in this action, or in the alternative to allow the parties to take trial depositions of these witnesses. Given the recent hurdles in arranging for in-person testimony from these foreign witnesses, Plaintiffs further

1

move this Court to set a status conference with all parties to discuss the trial schedule and coordinate the technical and logistical requirements of trial, and respectfully request the Court grant an order confirming that the trial is proceeding, and that Plaintiffs expect to rely on a number of witnesses who are Bolivian nationals.

## BACKGROUND

On October 4, 2016, the Court entered an Order Lifting Stay and Setting Case for Trial and Order of Reference to United States Magistrate Judge for Pretrial Discovery Matters. Dkt. 214 (Case No. 08-21063). Pursuant to that Order, trial in this action is set for the two-week calendar commencing on March 5, 2018.

Plaintiffs plan to call approximately 34 witnesses to testify at trial, including Plaintiffs themselves. The vast majority of these individuals are Bolivian citizens who reside in Bolivia. In preparation for trial, Plaintiffs' counsel has been assisting Plaintiffs and trial witnesses with visa applications. *See* Decl. Thomas Becker Supp. Pls.' Mot. Allow Test. Trial Videoconference ("Becker Decl.") ¶ 6. Plaintiffs and their counsel planned the timing of the visa applications based on a consultation with an official at the U.S. Embassy, *see id.* ¶ 5, and the successful visa applications for the individual Plaintiffs last spring and summer, but are now encountering unexpected difficulties.

Last spring, all nine Plaintiffs and one witness applied for visas to travel to the United States to consult with counsel and to sit for depositions in this case. *Id.* ¶ 4. Each submitted to the U.S. Embassy in Bolivia a letter from counsel inviting them to the United States for deposition preparation and depositions. *Id.* Eight of the Plaintiffs were granted visas and each traveled twice to the United States. *Id.*

In the fall of 2017, counsel for the Plaintiffs talked with an official at the U.S. Embassy who recommended waiting until the trial date was closer before submitting visa applications for

2

trial witnesses. *Id.* ¶ 5. Based on that conversation and the experience with the successful visa applications last spring, counsel have worked with the trial witnesses to obtain visa appointments at the U.S. Embassy in Bolivia and to submit the required paperwork. *Id.* ¶¶ 5-6. Each applicant followed the same process that was followed by the Plaintiffs last spring and submitted a letter from counsel indicating that the purpose of the travel was to testify at a March 2018 trial in this case. *Id.* ¶¶ 6-7. However, the effort to obtain visas for trial has met with much greater resistance by the U.S. Embassy than the efforts to obtain visas for depositions last spring.[1] *Id.* ¶ 8. As of this filing, four of the eight witnesses who have applied for visas for entry into the United States to appear at trial have been denied.[2] *Id.* ¶ 8.

Each of the witnesses who was denied a visa has requested an interview date in order to reapply for a visa. *Id.* Plaintiffs are exploring multiple means by which to obtain assistance at the U.S. Embassy and from other U.S. government officials who might authorize a decision to grant visas to all of the witnesses. Given that Plaintiffs assert claims under the Torture Victim Protection Act (TVPA), a statute that explicitly applies only to acts committed under color of

---

[1] Statistics available on the Department of State website indicate that, overall, B1/B2 non-immigrant visas issued to Bolivian citizens have dropped substantially. Based on the yearly report of Nonimmigrant Visas Issued, there were on average over 2,200 B1/B2 visas issued per month in 2016. *See* U.S. Dep't of State, Table XVII (Part I) Nonimmigrant Visas Issued Fiscal Year 2016 at 7 (Bolivia), available at https://travel.state.gov/content/dam/visas/Statistics/AnnualReports/FY2016AnnualReport/FY16AnnualReport-TableXVII.pdf. In March 2017, there were 2,330 B1/B2 nonimmigrant visas issued to Bolivians. The numbers began to drop steadily after that. In May 2017, around the time Plaintiffs received their visas to prepare for and attend depositions, 1,905 visas were granted to Bolivians. In December 2017, however, the last month for which statistics are available, only 1,478 were granted. *See* U.S. Dep't of State, Monthly Nonimmigrant Visa Issuance Statistics (Bolivia), available at https://travel.state.gov/content/travel/en/legal/visa-law0/visa-statistics/nonimmigrant-visa-statistics/monthly-nonimmigrant-visa-issuances.html.

[2] Six of the Plaintiffs—Eloy Rojas Mamani, Etelvina Ramos Mamani, Sonia Espejo Villalobos, Hernán Apaza Cutipa, Felicidad Rosa Huanca Quispe, Gonzalo Mamani Aguilar, and Juana Valencia de Carvajal—have already received visas and the remaining two Plaintiffs—Teófilo Baltazar Cerro and Hermógenes Bernabé Callizaya—have appointments scheduled at the U.S. Embassy in La Paz.

foreign law, government assistance in making it possible for foreign witnesses to those acts to travel to the United States to testify at trial seems particularly appropriate. However, Plaintiffs are now proceeding with the understanding that these witnesses will be unavailable to testify at trial. Therefore, Plaintiffs seek leave to permit witnesses to testify by contemporaneous transmission at trial pursuant to Rule 43 of the Federal Rules of Civil Procedure. If the Court is not amenable to testimony via videoconference, Plaintiffs respectfully request that the Court allow the parties to take trial depositions of these witnesses. Lastly, Plaintiffs request a status conference with all parties either in person or telephonically to discuss these issues, and request that the Court sign an order confirming that trial is proceeding in this matter and that Plaintiffs expect to rely on witnesses at trial who are Bolivian nationals.

## ARGUMENT

### I. A Witness's Inability to Procure a Visa to Attend Trial Establishes Good Cause to Permit Testimony by Videoconference

Federal Rule of Civil Procedure 43(a) permits an exception for "testimony in open court by contemporaneous transmission from a different location" when justified by "good cause in compelling circumstances" and when accompanied by "appropriate safeguards."

"[G]ood cause in compelling circumstances" exists where a "significant geographical distance" separates the witness from the location of the court proceedings. *See Scott Timber, Inc. v. United States*, 93 Fed. Cl. 498, 500-01 (Fed. Cl. 2010) ("The significant geographical distance between Oregon and Washington, D.C., represents a 'compelling circumstance' justifying the use of contemporaneous transmission."); *see also, e.g.*, *Beltran-Tirado v. INS*, 213 F.3d 1179, 1186 (9th Cir. 2000) (affirming use telephonic testimony for Missouri-based witness where hearing was in California and witness was subject to cross-examination); *Junjiang Ji v. Jling Inc.*, 2017 WL 6501865, at *3 (E.D.N.Y. Dec. 19, 2017) (good cause for contemporaneous

4

transmission established when plaintiff would have to travel to United States from China); *Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 480 (D. Md. 2010) (good cause established where indigent Honduran plaintiffs would have been forced to travel to the United States); *Fed. Trade Comm'n v. Swedish Match N. Am., Inc.*, 197 F.R.D. 1, 2 (D.D.C. 2000) (finding good cause where witness was in Oklahoma and hearing was in Washington, D.C.).

Courts have further recognized that difficulties with obtaining a visa can constitute good cause to permit testimony via videoconference. *See El-Hadad v. United Arab Emirates*, 496 F.3d 658, 669 (D.C. Cir. 2007). Indeed, the burden of international travel—including the inability to procure a visa—imposes substantial hardships on witnesses, and justifies the use of video testimony. *See, e.g.*, *Junjiang Ji*, 2017 WL 6501865, at *3 (recognizing "extreme expense and related inconvenience involved in having to travel from China to the United States for the purpose of a trial"); *Salguero v. Argueta*, 2017 WL 1113334, at *1 (E.D.N.C. Mar. 23, 2017) (good cause exists where El Salvadorian petitioner represented he could not afford international travel and would be unable to procure visa in time for hearing); *Lopez*, 748 F. Supp. 2d at 479 (granting leave to testify via videoconference where Honduran plaintiffs noted "the difficulty of securing a visa from Honduras and the substantial expense of travel"); *Virtual Architecture, Ltd. v. Rick*, 2012 WL 388507, at *2 (S.D.N.Y. Feb. 7, 2012) (allowing video testimony where witness expressed it was "impossible" to travel from Seychelles to United States because of the "rules for obtaining visas").

Moreover, appropriate safeguards exist where the "fact finder [can] see and hear the witness." *Scott Timber, Inc.*, 93 Fed. Cl. at 500. Plaintiffs are also willing to provide the appropriate safeguards to the extent possible, including making the arrangements to administer witness oaths by a person authorized to do so in Bolivia, ensuring the witness is alone in the

5

room when presenting testimony, providing any relevant documentary evidence in advance, and covering the associated costs. *See Cunningham v. Cunningham*, 2016 WL 8261726, at *2 (M.D. Fla. Dec. 27, 2016) (allowing testimony by video testimony with such safeguards).

This is not a case like that considered by this Court in *Lamonica v. Safe Hurricane Shutters, Inc.*, where plaintiffs sought only to avoid the inconvenience and expense of coming to the United States. 2011 WL 917726, at *1 (S.D. Fla. Feb. 18, 2011). Here Plaintiffs and their witnesses have demonstrated both a willingness and effort to come to Court in person, and have provided evidence of their unavailability. *See* Becker Decl. Exs. 1-4 (Letters from U.S. Embassy denying visas). Thus, "good cause in compelling circumstances" has been established for those witnesses who have been denied a visa to travel from Bolivia to the United States. *See* Fed. R. Civ. P. 43(a).

## II. Defendants Will Not Be Prejudiced if the Court Permits Testimony by Videoconference

The use of videoconferencing will not prejudice Defendants. Through a live videoconference, the trier of fact will be able to observe the witnesses' demeanor and evaluate their credibility in the same manner as traditional live testimony. *See Lopez*, 748 F. Supp. 2d at 480 (finding no prejudice where "witnesses will testify in open court, under oath, and will face cross-examination . . . [and the fact finder] will also be able to observe the witness' demeanor and evaluate his credibility in the same manner as traditional live testimony."); *see also Scott Timber, Inc.*, 93 Fed. Cl. at 500 (use of videoconference "will not have a significantly adverse effect on [party's] ability to examine or cross-examine [witness]"); *Swedish Match N. Am., Inc.*, 197 F.R.D. at 2 (remarking that "there is no practical difference between live testimony and contemporaneous video transmission").

Here, the out-of-country witnesses will testify in open court, under oath, and will face cross examination from Defendants. Further, through the videoconference, the jury will be able to evaluate the witness's demeanor and credibility just as they would through traditional live testimony.

**III.    In the Alternative, Trial Depositions Are Warranted**

If this Court determines that the circumstances do not permit testimony by contemporaneous transmission, this Court should allow the parties to take trial depositions. The parties expressly contemplated the use of trial depositions for witnesses that are unable to attend trial. *See* Joint Rule 26(f) Report, Dkt. 229 (Case No. 08-21063) ("The Parties will work on an agreement regarding trial depositions in Bolivia for witnesses who will be unable to attend trial in Florida.").

Even after the close of discovery, a party may take a deposition "as the testimony of a witness unavailable for trial." *Charles v. Wade*, 665 F.2d 661, 664 (5th Cir. Unit B 1982) (noting distinction between discovery and trial deposition is a "valid one"). Because "[a] party to a lawsuit obviously is entitled to present his witnesses," a trial deposition is a proper means to introduce an unavailable witness's testimony at trial. *See id.*; *see also Chrysler Int'l Corp. v. Chemaly*, 260 F.3d 1358, 1362 (11th Cir. 2002) (affirming that trial court may allow deposition to be taken for use at trial if appropriate under the circumstances of the case).

Plaintiffs here are not seeking to discover information, but simply to ensure that the jury hears all the relevant testimony from their witnesses. Therefore, the Court should allow the parties to take trial depositions in lieu of the testimony for the witnesses who are unavailable to attend trial.

7

**CONCLUSION AND REQUEST FOR STATUS CONFERENCE AND OTHER RELIEF**

For the reasons outlined above, Plaintiffs respectfully request that this Court permit the use of testimony via contemporaneous transmission pursuant to Federal Rule of Civil Procedure 43(a), or in the alternative, allow the parties to take trial depositions in lieu of testimony for the witnesses who are unavailable to attend trial. Given the number of potential witnesses and the intricacies of travel from Bolivia to the United States, Plaintiffs respectfully request a status conference with the Court to address the matters set forth herein. *See* Fed. R. Civ. P. 16. Plaintiffs further request the Court sign an Order confirming that the trial is proceeding, and that Plaintiffs expect to rely on a number of witnesses who are Bolivian nationals.

**LOCAL RULE 7.1(a)(3) CERTIFICATION**

Pursuant to Local Rule 7.1(a)(3), Plaintiffs' counsel has conferred with counsel for Defendants in a good faith effort to resolve the issues raised in this motion and has been unable to do so. Defendants' counsel has indicated that they will oppose Plaintiffs' requested relief, but will not oppose Plaintiffs' request for a status conference, with an additional request that any conference be set until after Defendants have had a chance to file their opposition.

Dated:  February 2, 2018                           Respectfully submitted,
        Miami, Florida

                                                   By: ___/s/ Ilana Tabacinic_____
                                                   Ilana Tabacinic (Florida Bar No. 57597)
                                                   AKERMAN LLP
                                                   Three Brickell City Centre
                                                   98 Southeast Seventh Street, Suite 1100
                                                   Miami, FL 33131
                                                   Tel: (305) 374-5600
                                                   Fax: (305) 374-5095
                                                   Email: ilana.tabacinic@akerman.com


                                                   *Counsel for Plaintiffs*

*Counsel for Plaintiffs*

| | |
|---|---|
| Ilana Tabacinic (Florida Bar No. 57597)<br>AKERMAN LLP<br>Three Brickell City Centre<br>98 Southeast Seventh Street, Suite 1100<br>Miami, FL 33131<br>Tel: (305) 374-5600<br>Fax: (305) 374-5095<br>Email: ilana.tabacinic@akerman.com | Steven H. Schulman (*pro hac vice*)<br>AKIN GUMP STRAUSS HAUER & FELD LLP<br>Robert S. Strauss Building<br>1333 New Hampshire Avenue NW<br>Washington, DC 20036<br>Tel:  (202) 887-4000<br>Fax: (202) 887-4288<br>E-mail: sschulman@akingump.com |
| Judith Brown Chomsky (*pro hac vice*)<br>CENTER FOR CONSTITUTIONAL RIGHTS<br>Post Office Box 29726<br>Elkins Park, PA  19027<br>Tel:  (215) 782-8367<br>Fax:  (215) 782-8368<br>E-mail: judithchomsky@icloud.com | Joseph L. Sorkin (*pro hac vice*)<br>Jennifer L. Woodson (*pro hac vice*)<br>Saurabh Sharad (*pro hac vice*)<br>Christine Doniak (*pro hac vice*)<br>Harley Raff (*pro hac vice*)<br>AKIN GUMP STRAUSS HAUER & FELD LLP<br>One Bryant Park<br>Bank of America Tower<br>New York, NY 10036-6745<br>Tel:  (212) 872-1000<br>Fax: (212) 872-1002<br>E-mail: jsorkin@akingump.com<br>E-mail: jwoodson@akingump.com<br>E-mail: ssharad@akingump.com<br>E-mail: cdoniak@akingump.com<br>E-mail: hraff@akingump.com |
| Beth Stephens (*pro hac vice*)<br>CENTER FOR CONSTITUTIONAL RIGHTS<br>666 Broadway<br>Seventh Floor<br>New York, NY 10012<br>Tel:   (212) 614-6431<br>Fax:  (212) 614-6499<br>E-mail: beth.stephens@rutgers.edu | Zak Franklin (*pro hac vice*)<br>Erica Abshez Moran (*pro hac vice*)<br>AKIN GUMP STRAUSS HAUER & FELD LLP<br>1999 Avenue of the Stars, Suite 600<br>Los Angeles, CA 90067<br>Tel:  (310) 229-1000<br>Fax: (310) 229-1001<br>E-mail: zfranklin@akingump.com<br>E-mail: emoran@akingump.com |
| David Rudovsky (*pro hac vice*)<br>KAIRYS, RUDOVSKY, MESSING & FEINBERG LLP<br>718 Arch Street, Suite 501 South<br>Philadelphia, PA 19016<br>Tel: (215) 925-4400<br>Fax: (215) 925-5365<br>E-mail: drudovsk@law.upenn.edu | Rubén H. Muñoz (*pro hac vice*)<br>Jason Weil (*pro hac vice*)<br>AKIN GUMP STRAUSS HAUER & FELD LLP<br>Two Commerce Square<br>2001 Market Street, Suite 4100<br>Philadelphia, PA 19103<br>Tel:  (212) 965-1328<br>Fax: (215) 965-1210<br>E-mail: rmunoz@akingump.com<br>E-mail: jweil@akingump.com |

1

| | |
|---|---|
| Paul Hoffman (*pro hac vice*) <br> SCHONBRUN, SEPLOW, <br> HARRIS & HOFFMAN, LLP <br> 723 Ocean Front Walk <br> Venice, CA 90201 <br> Tel: (310) 396-0731 <br> Fax: (310) 399-7040 <br> E-mail: hoffpaul@aol.com | Tyler R. Giannini (*pro hac vice*) <br> Susan H. Farbstein (*pro hac vice*) <br> Thomas Becker (*pro hac vice*) <br> INTERNATIONAL HUMAN RIGHTS CLINIC, <br> Human Rights Program <br> Harvard Law School <br> Pound Hall 401, 1563 Massachusetts Avenue <br> Cambridge, MA 02138 <br> Tel: (617) 495-9362 <br> Fax: (617) 495-9393 <br> E-mail: giannini@law.harvard.edu <br> E-mail: sfarbstein@law.harvard.edu <br> E-mail: thomasbainbecker@gmail.com |

**CERTIFICATE OF SERVICE**

I hereby certify that on February 2, 2018, I electronically filed the foregoing documents with the Clerk of the Court using CM/ECF.  I also certify that the foregoing documents are being served this day on counsel of record on the attached Service List either via transmission of Notice of Electronic Filing generated by CM/ECF or via e-mail.

                                                                                          */s/ Ilana Tabacinic*
                                                                                           Ilana Tabacinic

**SERVICE LIST**

Ana C. Reyes
Stephen D. Raber
James E. Gillenwater
Suzanne M. Salgado
Giselle Barcia
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC  20005
(202) 434-5000
(202) 434-5029 (facsimile)
areyes@wc.com
sraber@wc.com
jgillenwater@wc.com
ssalgado@wc.com
gbarcia@wc.com

Evan B. Berger
BECKER & POLIAKOFF, P.A.
1 East Broward Blvd., Suite 1800
Ft. Lauderdale, FL  33301
(954) 364-6055
(954) 985-4176 (facsimile)
eberger@bplegal.com