UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-22459-CIV-COHN/SELTZER
CASE NO. 08-21063-CIV-COHN/SELTZER

ELOY ROJAS MAMANI, et al.,

    Plaintiffs,

v.

JOSÉ CARLOS SÁNCHEZ BERZAÍN,

    Defendant in No. 07-22459,

GONZALO DANIEL SÁNCHEZ DE
LOZADA SÁNCHEZ BUSTAMANTE,

    Defendant in No. 08-21063.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION *IN LIMINE*

**THIS CAUSE** is before the Court upon Defendants' Motion *in Limine* to Exclude Material Concerning the 2009 Trial of Responsibilities in Bolivia [DE 360 in Case No. 07-22459; DE 337 in Case No. 08-21063] ("Motion").[1] The Court has considered the Motion, Plaintiffs' Response and Defendants' Reply, the parties' related submissions, and the record in these cases, and is otherwise advised in the premises. For the reasons stated below, Defendants' Motion is granted in part and denied in part.

## BACKGROUND

The Trial of Responsibilities ("TOR") was a 2009 criminal proceeding in Bolivia, in which a series of former military officers and government ministers were tried for their roles in the events of September and October 2003. The various charges included,

---

[1] All docket citations refer to Case No. 07-22459, which was consolidated with Case No. 08-21093 in May 2008. See DE 68.

*inter alia*, "genocide" and "mistreatment and torture." See Defendants' Ex. R at 936, 942.² Defendants Lozada and Berzaín were charged but never tried, since they had already fled to the United States.³ DE 360-1 at 1. Plaintiffs seek, in these cases, to present videotaped testimony from the TOR. Defendants have moved *in limine* to exclude that testimony as inadmissible hearsay. DE 360-1. Plaintiffs counter that the material in question is admissible pursuant to Federal Rule of Evidence 804(b)(1)'s hearsay exception for prior testimony from an unavailable declarant, or, alternatively, pursuant to Rule 807's residual exception. DE 396.

## DISCUSSION

**I.    THE PRIOR TESTIMONY EXCEPTION**

**A.  Legal Standard**

Rule 804(b)(1) provides that the prior testimony of an unavailable declarant is not excluded by the rule against hearsay if: A) "[the testimony] was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one;" and B) "is now offered against a party who had—or, in a civil case, whose predecessor in interest had—an opportunity and similar motive to develop it by direct, cross-, or redirect examination." Here, there is no dispute that the TOR witnesses—all of them Bolivian nationals residing in Bolivia—are well beyond the subpoena power of this Court and thus unavailable, as defined in Rule 804(a)(5)(A). See United States v. Drogoul, 1 F.3d 1546, 1553 (11th Cir. 1993) (foreign nationals located abroad are beyond district court subpoena power). Nor is there any question that the relevant

---

² Defendants' Exhibits are attached to the Declaration of Ana C. Reyes in Support of Defendants' Motion to Exclude Material Concerning the Trial of Responsibilities [DE 360-2.]
³ For a more comprehensive discussion of the relevant factual history, see the Court's contemporaneous Order Denying Defendants' Joint Motion for Summary Judgment.

2

testimony was given in a trial, by witnesses testifying under oath and subject to cross-examination. DE 360-1 at 8; DE 396 at 2. Accordingly, admissibility pursuant to the prior testimony exception hinges on whether the TOR defendants qualify as "predecessor[s] in interest" of the Defendants, and, if so, whether the TOR defendants had "an opportunity and similar motive" to develop their testimony. Fed. R. Evid. 804(b)(1).

### Predecessor in Interest

The meaning of "predecessor in interest" is a source of some ambiguity. Defendants, understandably, argue for a narrow definition. See DE 360-1 at 8-12. They review the legislative history of Rule 804(b)(1), flagging a 1973 House committee report. Id. at 9. That report demonstrates that the Supreme Court's original draft rule omitted any relational requirement between a party against whom prior testimony is offered and the parties in the earlier proceeding in which the witness testified. See H.R. Rep. No. 650, 93d Cong., 2d Sess. 15 (1973). The "predecessor in interest" language was apparently added during a House committee markup, owing to concerns about the unfairness of using against a party testimony which that party had no opportunity to develop or challenge. Id. Relying upon this history and a plain reading of the text, Defendants contend that the Court should reject a broad construction of "predecessor in interest" and instead define that term to mean something resembling privity. DE 360-1 at 9-12. According to this view, without the privity standard, a "predecessor in interest" would amount to nothing more than a similarly situated party, which, in practice, would mean a party with similar motive to develop or challenge a witness's testimony. Such approach would effectively collapse Rule 804(b)(1)(B)'s two distinct requirements, rendering the "predecessor in interest" provision nugatory. Id. at 12.

3

While acknowledging the innate analytical appeal of Defendants' position, the Court cannot ignore that the overwhelming weight of authority is diametrically opposed. The best Defendants can muster is a citation to a single case from the District of Oregon.  See DE 360-1 at 10 (citing Edwards v. Techtronic Indus. N. Am., Inc., 2015 WL 3616558, at *11 (D. Or. June 9, 2015) (endorsing privity standard)).  In contrast, Plaintiffs observe—and Defendants do not seriously dispute—that every federal appellate court to address the issue has rejected a privity requirement and adopted some permutation of "similarity of motive" to define "predecessor in interest."  See DE 396 at 7; DE 360-1 at 10-11; see also Culver v. Asbestos Defendants (BP), 2010 WL 5094698, at *4 (N.D. Cal. Dec. 8, 2010) ("The Third, Fourth, and Sixth Circuits have all taken the position that the term 'predecessor in interest' actually adds quite little to the rest of the requirements of the rule . . . . It does not appear that any circuit court has expressly disavowed this interpretation . . . .").  And while the Eleventh Circuit is one of the few circuits not to have weighed in, see Hearn v. McKay, 603 F.3d 897, 904 (11th Cir. 2010), the Court will follow the lead of the other courts of appeals.

## Opportunity and Similar Motive

Having concluded that application of the hearsay exception hinges on "opportunity and similar motive," the Court must interpret that component of the Rule.  In so doing, the Court notes that the appellate courts have diverged.  Several, including the Ninth and D.C. Circuits, apply an exceedingly permissive standard.  According to these courts, if the parties in a prior proceeding and present proceeding merely fall on the same side of an issue, the requirement is satisfied.  See United States v. McFall, 558 F.3d 951, 963 (9th Cir. 2009); United States v. Miller, 904 F.2d 65, 68 (D.C. Cir. 1990).  Others have followed the Second Circuit's decision in United States v. DiNapoli,

4

8 F.3d 909 (2d Cir. 1993) (en banc), which imposes a more stringent test.  See Battle ex rel. Battle v. Mem'l Hosp. at Gulfport, 228 F.3d 544, 552-53 (5th Cir. 2000); United States v. Bartelho, 129 F.3d 663, 671-72 (1st Cir. 1997).

In its well-reasoned opinion, the DiNapoli Court held that: "The test must turn not only on whether the questioner is on the same side of the same issue at both proceedings, but also on whether the questioner had a *substantially similar interest* in asserting that side of the issue."  8 F.3d at 912 (emphasis added).  As the Second Circuit explained: "If a fact is critical to a cause of action at a second proceeding but the same fact was only peripherally related to a different cause of action at a first proceeding, no one would claim that the questioner had a similar motive at both proceedings to show that the fact had been established (or disproved)."  Id.

The Court finds DiNapoli to be persuasive.  For "similar motive" to have any reasonable meaning, it must account for the degree of importance attached to an issue at both proceedings.  The Court observes that, while the Eleventh Circuit has not explicitly adopted the DiNapoli standard, it has cited DiNapoli approvingly.  See United States v. Miles, 290 F.3d 1341, 1352-53 (11th Cir. 2002).  Therefore, in determining admissibility of the TOR testimony, the Court will review each category of disputed testimony and assess not only whether the TOR defendants and Defendants in these cases were on the same side of the key issues, but also whether the TOR defendants had a "substantially similar interest" in asserting their side of those issues.

Finally, the Court notes that Plaintiffs, as the parties offering hearsay evidence, bear the burden of demonstrating admissibility.  United States v. Acosta, 769 F.2d 721, 723 (11th Cir. 1985) ("The burden of proving the unavailability of a witness under Rule 804(a) rests with the proponent of the hearsay evidence . . . ."); United States v. Amato,

5

2006 WL 1788190, at *1 (E.D.N.Y. June 26, 2006) (party seeking to admit prior testimony must prove each element of hearsay exception by a preponderance of the evidence).  With these principles in mind, the Court will analyze each category of challenged testimony to determine whether it qualifies for the Rule 804(b)(1) exception.

### B. Analysis

#### 1. Testimony as to the Absence of a Guerilla Force in Bolivia

Plaintiffs offer testimony from several TOR witnesses that no armed guerilla movements operated in Bolivia during September and October of 2003.  DE 396 at 12; Plaintiffs' Ex. 9 at 3 (TOR transcript of former Commander of the National Police Jairo Sanabria Gonzales), Ex. 10 at 1-2 (TOR transcript of military intelligence officer Jorge Botelo Monje), Ex. 11 at 6-7 (TOR transcript of former National Director of Intelligence Fernando Uribe Encinas).[4]  Defendants argue that this testimony fails the Rule 804(b)(1) standard, because the TOR defendants' questioning of these witnesses was insufficient.  DE 397 at 5-6.  Defendants stress that, had they been able to cross-examine the witnesses, they would have confronted them with evidence demonstrating the presence of guerilla leaders and of armed protestors attacking police with rifles and dynamite.  Id.

Defendants' argument thus goes to the comprehensiveness of the cross-examination, and, perhaps, to strategic decisions made by the TOR defendants in the earlier proceeding.  But these considerations are not determinative, since, as discussed above, the governing standard looks to the alignment of interests between the parties in the prior and present proceedings, not to whether the parties in the present proceeding

---

[4] Plaintiffs' Exhibits are attached to the Declaration of Joseph L. Sorkin in Opposition to Defendants' Motion to Exclude Material Concerning the Trial of Responsibilities [DE 396-1].

would have conducted the witness examinations differently.  See Miles, 290 F.3d at 1353 ("While the availability of foregone cross-examination opportunities is one factor to consider, it is not conclusive because examiners will frequently be able to suggest lines of questioning that were not pursued at a prior proceeding.")

Plaintiffs make a convincing case that, just as Defendants' decision to order the military to confront protestors would seem more justifiable if it were true that the "protestors" included armed insurgents, so too would the presence of armed insurgents have served as a helpful fact for the military defendants in the TOR, on trial in part for having caused protestor deaths.  In other words, the TOR defendants and Defendants were on the same side of this issue and had a substantially similar interest in asserting their position.  Accordingly, the Court finds that testimony regarding the absence of armed guerilla movements satisfies the Rule 804(b)(1) standard.

### 2. Testimony Regarding the Date of Implementation of the Republic Plan

The Republic Plan was a plan for the Bolivian Army to "apply the Principles of Mass and Shock" in an effort to quell protests and related subversive activities.[5]  Army General Juan Veliz Herrera testified that the Republic Plan was put into effect between September 10 and September 12, 2003.  DE 396 at 14; Plaintiffs' Ex. 13 at 2-3.  This testimony meets the Rule 804(b)(1) standard, because, to the extent it implies that any subsequent military action resulting in civilian deaths occurred as part of a premeditated plan to target protestors, the TOR defendants would have had a motive to challenge it at least as strong as that of Defendants.

---

[5] The Republic Plan is Exhibit ZZZ to the Declaration of Joseph L. Sorkin in Opposition to Defendants' Joint Motion for Summary Judgment [DE 375-2].

7

### 3. Testimony Regarding an Order for Police to Withdraw and for the Military to Assume Responsibility for Security in El Alto

Plaintiffs offer testimony from Commander Gonzales about an order from Defendants that the police relinquish—and the military assume—responsibility for security in El Alto. DE 396 at 12-13; Plaintiffs' Ex. 9 at 1-3. Gonzales further testified that, at the time the military entered the city, the police had not been overwhelmed, could have continued to perform their security function, and were under orders to avoid the use of lethal force. Id. Defendants argue that they have a significantly greater motive to pursue this point than did the TOR defendants. The Court agrees.

The extent to which Defendants' decision to deploy the military was or was not an appropriate response to a deteriorating security environment could play an important role in coloring a jury's perception of their conduct. But that was not the case for the TOR defendants. As military officers, the rationale for the deployment was not particularly significant (absent any allegation that their orders included directives to target nonviolent protestors). Instead, those defendants would have been primarily motivated to disprove any allegations that the military, once stationed in El Alto, engaged in the improper use of force.[6]

Accordingly, the Court finds that Plaintiffs have not met their burden of proving that the TOR defendants had a substantially similar interest to that of Defendants

---

[6] The Court recognizes that, in addition to military officers, the TOR defendants included the former Environment and Labor Ministers. DE 360-1 at 3. These civilian officials were convicted of genocide for having signed, along with the rest of the cabinet, a decree authorizing the military to escort fuel tankers into La Paz. Id.; Defendants' Ex. M. While this would indicate that at least two TOR defendants were motivated to demonstrate the reasonableness of certain military deployment orders, the Court finds that the interest of the Defendants, who as President and Defense Minister were directly responsible for promulgating those orders, is considerably greater. Moreover, as the official in possession of intelligence reports from both the police and the military, Defendant Lozada would have had a greater opportunity to challenge the testimony. See DE 390 at 5.

Lozada and Berzaín in addressing the issue of the military deployment order and security environment in El Alto.

### 4. Testimony that Defendant Lozada Took Responsibility for the Events of Late 2003

Plaintiffs offer testimony from TOR defendant Roberto Claros Flores, former commanding officer of the Bolivian military. DE 396 at 12-13. Flores testified that Defendants paid a visit to military headquarters at some point subsequent to the deaths of protestors in El Alto, during which Defendant Lozada expressed regret for the situation in Bolivia, accepted responsibility for it, and asked the military to continue complying with his orders. Id.; Plaintiffs' Ex. 12 at 1. This evidence fails to satisfy the Rule 804(b)(1) standard. Lozada undoubtedly has a substantially stronger motive to undermine testimony pertaining to self-incriminating statements that he is alleged to have made than did the TOR defendants.

### 5. Testimony that Defendant Lozada Was Warned that Use of the Military Would Lead to Civilian Deaths

Former Bolivian Vice President Carlos Mesa testified about an October 12, 2003 meeting with Defendant Lozada. Mesa claims that, during this meeting, he warned Lozada that deployment of the military would result in civilian deaths and that a separate government official notified Lozada that nine civilians had perished in El Alto earlier that day. DE 396 at 13; Plaintiffs' Ex. 8 at 1-2. This testimony fails to satisfy the Rule 804(b)(1) standard. Once again, Lozada has a considerably stronger motive than did the TOR defendants to challenge testimony about unheeded warnings given directly to him. And he would have had greater knowledge, since he was the one present in the meeting who knows precisely what took place.

### 6. Testimony that Defendant Lozada Ordered the Military to Transport People Away from Sorata and that Defendant Berzaín Insisted Upon Traveling to Sorata

Testimony from General Veliz that Defendant Lozada ordered the military to transport people away from Sorata and that Defendant Berzaín insisted upon traveling to Sorata fails the Rule 804(b)(1) standard.  DE 396 at 14; Plaintiffs' Ex. 13 at 3-4.  Both Defendants have a greater motive to challenge testimony regarding their own actions, especially where, as here, the testimony goes to their effective control of the military and arguably evidences that their actions were carried out to implement their plan to quash opposition to their policies by killing civilians.

### 7. Testimony Regarding the Gas Export Plan

Intelligence officer Monje testified regarding his own opinion as to the downsides of the gas export plan.  DE 397 at 6; Plaintiffs' Ex. 10 at 2-3.  This testimony fails the Rule 804(b)(1) standard.  Defendants were involved in implementing that plan; the TOR defendants were not.[7]  See DE 397 at 6.

### 8. Testimony Regarding Military Caliber Firearms

Commander Gonzales testified that "according to medical reports," protestors were killed by gunshots from military caliber firearms.  DE 397 at 5; Plaintiffs' Ex. 9 at 2.  Since Gonzales relies upon material contained in reports which are themselves hearsay, the testimony constitutes inadmissible hearsay within hearsay.  See Fed. R. Evid. 805.

---

[7] The Court also questions the relevance of this evidence, as the merits of the plan are not at issue.

## II.    THE RESIDUAL EXCEPTION

Plaintiffs argue, as a fallback position, that any testimony which does not qualify under the prior testimony exception is admissible pursuant to Rule 807's residual exception. The residual exception provides for admission of a hearsay statement not specifically covered by other exceptions if that statement: (1) has equivalent circumstantial guarantees of trustworthiness; (2) is offered as evidence of a material fact; (3) is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and (4) admitting the statement will best serve the purposes of the Rules of Evidence and the interests of justice. Fed. R. Evid. 807. "Congress intended the residual exception to be used very rarely, and only in exceptional circumstances." United Techs. Corp. v. Mazer, 556 F.3d 1260, 1279 (11th Cir. 2009) (quoting United States v. Ingram, 501 F.3d 963, 967 (8th Cir. 2007)). And the exception applies "only when exceptional guarantees of trustworthiness exist." United States v. Jayyousi, 657 F.3d 1085, 1113 (11th Cir. 2011) (internal quotation marks omitted).

These cases do not present the "exceptional circumstances" that would warrant application of the residual exception. In fact, the circumstances surrounding the TOR constitute the precise opposite of the "exceptional guarantees of trustworthiness" necessary for admission of the TOR testimony. Defendants recount at length the severe defects in the TOR, including, *inter alia*, the fact that the original, independent prosecutors were fired and replaced by the Morales government when they recommended against prosecution, that President Morales publicly threatened to imprison one of the presiding judges for failing to convict the defendants quickly enough, that witnesses have testified about bribes being paid to other judges, and that,

11

more generally, Bolivia ranks near the bottom on various global lists assessing strength of the rule of law and judicial independence.  DE 360-1 at 3-6; DE 397 at 8-9.  These concerns necessarily influence the Court's view of the trustworthiness of testimony delivered in the TOR. [8]  Accordingly, the Court cannot find that any TOR testimony meets the high bar for admission under the residual exception.

### III.   RULE 403

Defendants move to exclude any reference to the Trial of Responsibilities under Rule 403.  They claim that discussion of a past proceeding which included charges of "genocide" and "torture" would prove highly prejudicial, especially if the jury were to learn that the TOR defendants were convicted.  DE 360-1 at 15-16.  They further contend that such discussion would cause undue delay and confusion, since it would necessitate Defendants' presentation of considerable rebuttal evidence regarding international legal principles, Bolivian law and politics, and the myriad deficiencies in the TOR itself.  Id. at 16-17.  Plaintiffs respond that they do not actually intend to offer much of the purportedly prejudicial evidence Defendants oppose.  DE 381 at 1.  But it is not clear to the Court what the Plaintiffs do intend to offer apart from the specific excerpts of TOR testimony addressed above, if anything.

The Court finds that the two categories of testimony which qualify under the Rule 804(b)(1) exception—testimony regarding the absence of armed guerilla groups and regarding timing of the implementation of the Republic Plan—would not be adversely impacted by Rule 403.  Accordingly, those two categories are admissible.  The Court

---

[8] Plaintiffs cite an opinion by the U.N. Human Rights Committee concluding that the TOR complied with international human rights standards and did not violate its defendants' due process rights. See DE 396 at 4.  While the Court acknowledges this opinion, the Court maintains its concern based on the alleged procedural irregularities.

will defer further ruling on any other evidence regarding the TOR which Plaintiffs may seek to introduce.

## CONCLUSION

In light of the foregoing, Defendants have demonstrated that, with the few exceptions addressed above, testimony from the Trial of Responsibilities is inadmissible hearsay. Accordingly, it is thereupon **ORDERED AND ADJUDGED** that Defendants' Motion [DE 360] is **GRANTED in part and DENIED in part** as follows:

1. Defendants' request to exclude testimony as to the absence of a guerilla force in Bolivia is **DENIED**.

2. Defendants' request to exclude testimony regarding the timing of the initiation of the Republic Plan is **DENIED**.

3. Defendants' request to exclude testimony regarding orders for the police to withdraw and for the military to assume responsibility for security in El Alto is **GRANTED**.

4. Defendants' request to exclude testimony that Defendant Lozada took responsibility for the events of late 2003 is **GRANTED**.

5. Defendants' request to exclude testimony that Defendant Lozada was warned that use of the military would lead to civilian deaths is **GRANTED**.

6. Defendants' request to exclude testimony that Defendant Lozada ordered the military to transport people away from Sorata and that Defendant Berzaín insisted upon traveling to Sorata is **GRANTED**.

7. Defendants' request to exclude testimony from Jorge Botelo Monje regarding his views of the gas plan is **GRANTED**.

8. Defendants' request to exclude testimony from Jairo Sanabria Gonzales that, according to medical reports, protestors were shot with military caliber firearms is **GRANTED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 14th day of February, 2018.

*/s/ James I. Cohn*
JAMES I. COHN
United States District Judge

Copies provided to counsel of record via CM/ECF