# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

| | |
|---|---|
| ELOY ROJAS MAMANI, *et al.*, | ) **Case No. 08-21063-CV-COHN** |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| GONZALO DANIEL SÁNCHEZ DE | ) |
| LOZADA SÁNCHEZ BUSTAMANTE, | ) |
| | ) |
| Defendant. | ) |
| ———————————————————— | ) |
| | ) **Case No. 07-22459-CV-COHN** |
| ELOY ROJAS MAMANI, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| JOSÉ CARLOS SÁNCHEZ BERZAÍN, | ) |
| | ) |
| Defendant. | ) |
| ———————————————————— | ) |

## PLAINTIFFS' PROPOSED JURY INSTRUCTIONS

Plaintiffs in the above-captioned cases hereby submit the following set of proposed jury instructions for use at trial. Plaintiffs reserve the right to withdraw, amend, modify and/or add to these instructions at any time before closing argument.  Moreover, Plaintiffs further reserve the right to object to the proposed jury instructions provided by Defendants Gonzalo Daniel Sánchez de Lozada Sánchez Bustamante and Carlos Sánchez Berzaín.  Further, attached hereto as Exhibit 1 is a compilation of Plaintiffs' proposed verdict forms.

**TABLE OF CONTENTS**

PRELIMINARY INSTRUCTIONS ...................................................................................1

1.1 General Preliminary Instructions .....................................................................1

1.2 Official English Translation/Interpretation ......................................................7

1.3 Jury Questions ...................................................................................................8

1.4 Interim Statements ..........................................................................................10

1.5 The Parties ......................................................................................................11

1.6 Claims on Behalf of Deceased .......................................................................12

TRIAL INSTRUCTIONS ..........................................................................................13

2.1 Stipulations .....................................................................................................13

2.2 Use of Depositions ..........................................................................................14

2.3 Judicial Notice .................................................................................................15

2.4 Use of Interrogatories and Requests for Admission.......................................16

2.5 In-Trial Instructions on News Coverage.........................................................17

BASIC INSTRUCTIONS ...........................................................................................18

3.1 Introduction .....................................................................................................18

3.2 The Duty to Follow Instructions .....................................................................19

3.3 Consideration of Direct and Circumstantial Evidence; Argument of Counsel;
        Comments by the Court ...............................................................................20

3.4 Credibility of Witnesses..................................................................................21

3.5 Impeachment of Witnesses Because of Inconsistent Statements or Felony Conviction .........23

3.6 Expert Witness ................................................................................................24

3.7 Responsibility for Proof – Plaintiffs' Claims – Preponderance of the Evidence ...................25

3.8 Duty to Deliberate When Only a Plaintiff Claims Damages ..........................26

3.9 Election of Foreperson Explanation of Verdict Form[s] ................................27

SPECIFIC INSTRUCTIONS ON CLAIMS & LIABILITY ....................................28

4.1 Extrajudicial Killing .......................................................................................29

4.2 Wrongful Death ...............................................................................................31

4.3 Defendants' Liability .......................................................................................32

4.4 Command Responsibility .................................................................................33

4.5 Conspiracy .......................................................................................................36

4.6 Principal Agent Relationship ..........................................................................38

5.1 Damages ...........................................................................................................40

5.2 Compensatory Damages ........................................................................................41

5.3 Punitive Damages for Extrajudicial Killing .......................................................43

5.4 Moral Damages for Wrongful Death.................................................................45

## PRELIMINARY INSTRUCTIONS

**1.1 General Preliminary Instructions**

Members of the Jury:

Now that you've been sworn, I need to explain some basic principles about a civil trial and your duty as jurors. These are preliminary instructions. I will give you more detailed instructions at the end of the trial.

The Jury's Duty:

It is your duty to listen to the evidence, decide what happened, and apply the law to the facts. It's my job to provide you with the law you must apply – and you must follow the law even if you disagree with it.

What is evidence:

You must decide the case on only the evidence presented in the courtroom. Evidence comes in many forms. It can be testimony about what someone saw, heard, or smelled. It can be an exhibit or a photograph. It can be someone's opinion.

Some evidence may prove a fact indirectly. Let's say a witness saw wet grass outside and people walking into the courthouse carrying wet umbrellas. This may be indirect evidence that it rained, even though the witness did not personally see it rain. You might find that there was a chance someone spilled a bucket of water on the sidewalk — but that it is more likely true that it was raining. Indirect evidence like this is also called "circumstantial evidence" – simply a chain of circumstances that likely proves a fact. In this example, a reasonable person could infer that it likely had rained.

1

As far as the law is concerned, it makes no difference whether evidence is direct or indirect. You may choose to believe or disbelieve either kind.  Your job is to give each piece of evidence whatever weight you think it deserves.

What is not evidence:

During the trial, you will hear certain things that are not evidence and you must not consider them.

First, the lawyers' statements and arguments are not evidence.  In their opening statements and closing arguments, the lawyers will discuss the case.  Their remarks may help you follow each side's arguments and presentation of evidence.  But the remarks themselves are not evidence and should not play a role in your deliberations.

Second, the lawyers' questions and objections are not evidence.  Only the witnesses' answers are evidence.  Do not decide that something is true just because a lawyer's question suggests that it is.  For example, a lawyer may ask a witness, "You saw Mr. Jones hit his sister, didn't you?"  That question is not evidence of what the witness saw or what Mr. Jones did – unless the witness agrees with it.

There are rules of evidence that control what the court can receive into evidence.  When a lawyer asks a witness a question or presents an exhibit, the opposing lawyer may object if he/she thinks the rules of evidence do not permit it.  If I overrule the objection, then the witness may answer the question or the court may receive the exhibit.  If I sustain the objection, then the witness cannot answer the question, and the court cannot receive the exhibit.  When I sustain an objection to a question, you must ignore the question and not guess what the answer might have been.

Sometimes I may disallow evidence – this is also called "striking" evidence – and order you to disregard or ignore it.  That means that you must not consider that evidence when you are deciding the case.

I may allow some evidence for only a limited purpose.  When I instruct you that I have admitted an item of evidence for a limited purpose, you must consider it for only that purpose and no other.

Credibility of witnesses:

To reach a verdict, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, part of it, or none of it.  When considering a witness's testimony, you may take into account:

- the witness's opportunity and ability to see, hear, or know the things the witness is testifying about;
- the witness's memory;
- the witness's manner while testifying;
- any interest the witness has in the outcome of the case;
- any bias or prejudice the witness may have;
- any other evidence that contradicts the witness's testimony;
- the reasonableness of the witness's testimony in light of all the evidence; and
- any other factors affecting believability.

At the end of the trial, I will give you additional guidelines for determining a witness's credibility.

Description of the case:

This is a civil case.  In a civil case, one party (referred to as the Plaintiff) sues another party (referred to as the Defendant) to establish the Defendant's responsibility.  In this case the Plaintiffs are claiming that the Defendants are responsible for the deaths of their family members.  To help you as you listen to the witnesses and follow the evidence submitted in this case, I will summarize in a very basic way the parties' positions.  In this case, the Plaintiffs are

3

suing the defendants both on behalf of themselves and behalf of their deceased family members – sisters, brothers, mothers, fathers, sons, and daughters. The Defendants are José Carlos Sánchez Berzaín and Gonzalo Daniel Sánchez de Lozada Sánchez Bustamante. The Plaintiffs claim that these Defendants are responsible for the killings of their deceased relatives which happened during September and October 2003. Each Plaintiff contends that, even if the Defendants did not personally kill their relatives, the Defendants are responsible for the killings because of their relationship with the person or persons who killed their family members. Defendants deny those claims.

Although the events and deaths involved in this case occurred in a foreign country and some time ago, the law allows the Plaintiffs to sue the Defendants here in this court.

Burden of proof:

A Plaintiff has the burden of proving his or her case by what the law calls a "preponderance of the evidence." That means a Plaintiff must prove that, in light of all the evidence, what he or she claims is more likely true than not. So, if you could put the evidence favoring a Plaintiff and the evidence favoring a Defendant on opposite sides of balancing scales, a Plaintiff needs to make the scales tip to his or her side – but only by the margin of 1%. If a Plaintiff fails to meet this burden, you must find in favor a Defendant.

To decide whether any fact has been proved by a preponderance of the evidence, you may – unless I instruct you otherwise – consider the testimony of all witnesses, regardless of who called them, and all exhibits that the court allowed, regardless of who produced them. After considering all the evidence, if you decide a claim or fact is more likely true than not, then the claim or fact has been proved by a preponderance of the evidence.

Conduct of the jury:

While serving on the jury, you may not talk with anyone about anything related to the case.  You may tell people that you are a juror and give them information about when you must be in court.  But you must not discuss anything about the case itself with anyone.

You should not even talk about the case with each other until you begin your deliberations.  I want to make sure you have heard everything – all the evidence, the lawyers' closing arguments, and my instructions on the law – before you begin deliberating.  You should keep an open mind until the end of the trial.  Premature discussions may lead to a premature decision.

In this age of technology, I want to emphasize that in addition to not talking face-to-face with anyone about the case, you must not communicate with anyone about the case by any other means.  This includes e-mails, text messages, and over the internet, including social-networking websites such as Facebook, MySpace, and Twitter.

You also should not Google or search online or offline for any information about the case, the parties, or the law.  Do not read or listen to the news about this case, visit any places related to this case, or research any fact, issue, or law related to this case.  The law forbids the jurors to talk with anyone else about the case and forbids anyone else to talk to the jurors about it.  It is very important that you understand why these rules exist and why they are so important.  You must base your decision only on the testimony and other evidence presented in the courtroom.  It is not fair to the parties if you base your decision in any way on information you obtain outside the courtroom.  For example, the law often uses words and phrases in special ways, so it is important that any definitions you hear come only from me and not from any other source.  Only

you as jurors can decide a verdict in this case.  The law sees only you as fair, and only you have promised to be fair – no one else is so qualified.

<u>Taking notes</u>:

If you wish, you may take notes to help you remember what the witnesses said.  If you do take notes, please do not share them with anyone until you go to the jury room to decide the case.  Do not let note-taking distract you from carefully listening to and observing the witnesses.  When you leave the courtroom, you should leave your notes hidden from view in the jury room.

Whether or not you take notes, you should rely on your own memory of the testimony.  Your notes are there only to help your memory.  They are not entitled to greater weight than your memory or impression about the testimony.

<u>Course of the trial</u>:

Let's walk through the trial.  First, each side may make an opening statement, but they do not have to.  Remember, an opening statement is not evidence, and it is not supposed to be argumentative; it is just an outline of what that party intends to prove.

Next, Plaintiffs will present their witnesses and ask them questions.  After the Plaintiffs' attorney questions the witness, the Defendants' attorney may ask the witness questions – this is called "cross-examining" the witness.  Then the Defendants' attorney will present their witnesses, and the Plaintiffs' attorney may cross-examine them.  You should base your decision on all the evidence, regardless of which party presented it.

After all the evidence is in, the parties' lawyers will present their closing arguments to summarize and interpret the evidence for you, and then I will give you instructions on the law.

You will then go to the jury room to deliberate.

**Authority**:  Eleventh Circuit Civil Pattern Jury Instructions §§ 1.1-1.2 (2013 ed.).

6

**1.2 Official English Translation/Interpretation**

You may hear or see languages other than English during this trial.

You must consider evidence in another language only as provided by the official court translators/interpreters.  It is important that all jurors consider the same evidence.  So even if some of you know Spanish, you must accept the English translation/interpretation provided and disregard any different meaning.

Do not place any significance on the behavior or tone of voice of any person translating the witness' questions or answers.

**Authority**:  Eleventh Circuit Civil Pattern Jury Instructions § 1.3 (2013 ed.).

**1.3 Jury Questions**

During this trial, you may submit questions to a witness after the lawyers have finished their own questioning.  Here is how the procedure works:  After each witness has testified, and the lawyers have asked all of their questions, I will ask if any of you have questions.  If you have a question, write it down and give it to the court staff.

You may submit a question for a witness only to clarify an answer or to help you understand the evidence.  My experience with juror questions indicates that jurors rarely have more than a few questions for any one witness, and there may be no questions at all for some witnesses.

If you submit a question, the court staff will give it to me and I will first share your question with the lawyers in the case.  If the rules of evidence allow your question, one of the lawyers or I will read your question to the witness.  I may modify the form or phrasing of a question so that it is allowed under the evidence rules.  Sometimes, I may not allow the questions to be read to the witness, either because the law does not allow it or because another witness is in a better position to answer the question.  If I cannot allow the witness to answer a question, you must not draw any conclusions from that fact or speculate on what the answer might have been.

Here are several important things to keep in mind about your questions for the witnesses:

- First, you must submit all questions in writing. Please do not ask any questions aloud.

- Second, the court cannot re-call witnesses to the stand for additional juror questions. If you have a question for a particular witness, you must submit it when I ask.

- Finally, because you should remain neutral and open-minded throughout the trial, you should phrase your questions in a way that does not express an opinion about the case or a witness.  You must keep an open mind until you have heard all the evidence, the closing arguments, and my final instructions on the law.

**Authority**:  Eleventh Circuit Civil Pattern Jury Instructions § 1.4 (2013 ed.).

**1.4 Interim Statements**

At times during the trial, the lawyers will address you.  For example, you will soon hear the lawyers' opening statements, and at the trial's conclusion you'll hear their closing arguments. Sometimes the lawyers may choose to make short statements to you, either to preview upcoming evidence or to summarize and highlight evidence they just presented.  These statements and arguments are the lawyers' views of the evidence or of what they anticipate the evidence will be. They are not evidence themselves.

**Authority**:  Eleventh Circuit Civil Pattern Jury Instructions § 1.5 (2013 ed.).

**1.5 The Parties**

The parties to this case are the following Plaintiffs and Defendants:

Plaintiffs:

- Eloy Rojas Mamani on behalf of his deceased daughter, Marlene Nancy Rojas Ramos, and on his own behalf for the loss of his daughter.
- Etelvina Ramos Mamani on behalf of her deceased daughter, Marlene Nancy Rojas Ramos, and on her own behalf for the loss of her daughter.
- Sonia Espejo Villalobos on behalf of her deceased husband, Lucio Santos Gandarillas Ayala, and on her own behalf for the loss of her husband.
- Hernán Apaza Cutipa on behalf of his deceased sister, Roxana Apaza Cutipa, and on his own behalf for the loss of his sister.
- Teófilo Baltazar Cerro on behalf of his deceased wife, Teodosia Morales Mamani, and on his own behalf for the loss of his wife.
- Juana Valencia De Carvajal on behalf of her deceased husband, Marcelino Carvajal Lucero, and on her own behalf for the loss of her husband.
- Hermógenes Bernabé Callizaya on behalf of his deceased father, Jacinto Bernabé Roque, and on his own behalf for the loss of his father.
- Gonzalo Mamani Aguilar on behalf of his deceased father, Arturo Mamani Mamani, and on his own behalf for the loss of his father.
- Felicidad Rosa Huanca Quispe on behalf of her deceased father, decedent Raúl Ramón Huanca Márquez, and on her own behalf for the loss of her father.

Defendants:

- José Carlos Sánchez Berzaín
- Gonzalo Daniel Sánchez de Lozada Sánchez Bustamante

**1.6 Claims on Behalf of Deceased**

Plaintiffs bring these claims as the representatives of their deceased relatives. The law allows the Plaintiffs to file lawsuits on behalf of their deceased relatives for injuries suffered by their relatives when they were alive.

The way this works is you would determine whether the Defendants acted wrongfully and are responsible for the death of a Plaintiff's deceased relative. If you decide that the Defendants are responsible, you would award money to the deceased relative. That money would then be inherited by the deceased person's family members. The Plaintiffs represent these family members, and are in court on their behalf. If you decide that the Defendants acted wrongly you can also award damages to the Plaintiff individually for the harm he or she suffered from the death of their relative.

## TRIAL INSTRUCTIONS

**2.1 Stipulations**

Sometimes the parties have agreed that certain facts are true.  This agreement is called a stipulation.  You must treat these facts as proved for this case. The parties have stipulated to the following facts:

- [insert]

**Authority**:  Eleventh Circuit Civil Pattern Jury Instructions § 2.1 (2013 ed.).

**2.2 Use of Depositions**

A deposition is a witness's sworn testimony that is taken before the trial. During a deposition, the witness is under oath and swears to tell the truth, and the lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

The deposition(s) of the following witnesses will be presented to you either by a video or by reading a transcript of the testimony:

- [name and date(s) depositions taken]

The deposition testimony that you will see is entitled to the same consideration as live testimony in the courtroom, and you must judge the deposition testimony just as if the witness was testifying in court.

Do not place any significance on the behavior or tone of voice of any person translating the witness' questions or answers.

**Authority**:  Eleventh Circuit Civil Pattern Jury Instructions § 2.2 (2013 ed.).

**2.3 Judicial Notice**

The rules of evidence allow me to accept facts that no one can reasonably dispute.  The law calls this "judicial notice."  I have accepted [state the fact(s) that the court has judicially noticed] as proved even though no one introduced evidence to prove it.  You must accept it as true for this case.

**Authority**:  Eleventh Circuit Civil Pattern Jury Instructions § 2.5 (2013 ed.).

**2.4 Use of Interrogatories and Requests for Admission**

During the trial, you may hear answers that Defendants and their attorneys, or the Plaintiffs and their attorneys, gave in response to written questions submitted by the other side. The questions are called "interrogatories" or "requests for admission."  Before the trial, the Defendants and the Plaintiffs gave the answers in writing while under oath.

You must consider these answers to the interrogatories and requests for admission as though the Defendants and the Plaintiffs gave the answers on the witness stand.

**Authority**:  Eleventh Circuit Civil Pattern Jury Instructions § 2.6 (2013 ed.).

**2.5 In-Trial Instructions on News Coverage**

Reports about this trial or about this incident may appear in the media.  The reporters may not have heard all the testimony that you will hear, may be getting information from people who are not under oath and subject to cross examination, may emphasize an unimportant point, or may simply be wrong.

You must not read, listen to, or watch anything about this trial.  It would violate your oath as a juror to decide this case on anything other than the evidence presented at trial and on your own common sense.  You must decide this case exclusively on the evidence you receive here in court.

**Authority**:  Eleventh Circuit Civil Pattern Jury Instructions § 2.7 (2013 ed.).

## BASIC INSTRUCTIONS

**3.1 Introduction**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 08-21063-CV-COHN

ELOY ROJAS MAMANI, *et al.*

      Plaintiffs,

v.

GONZALO DANIEL SÁNCHEZ DE
LOZADA SÁNCHEZ BUSTAMANTE,

      Defendant.

_____/

CASE NO. 07-22459-CV-COHN

ELOY ROJAS MAMANI, *et al.*

      Plaintiffs,

v.

JOSÉ CARLOS SÁNCHEZ BERZAÍN,

      Defendant.

COURT'S INSTRUCTIONS TO THE JURY

Members of the jury:

It's my duty to instruct you on the rules of law that you must use in deciding this case.

When I have finished you will go to the jury room and begin your discussions, sometimes

called deliberations.

**3.2 The Duty to Follow Instructions**

Your decision must be based only on the evidence presented here.  You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole.  You must not single out or disregard any of the instructions on the law.

**Authority**:  Eleventh Circuit Civil Pattern Jury Instructions § 3.2 (2013 ed.).

**3.3 Consideration of Direct and Circumstantial Evidence; Argument of Counsel; Comments by the Court**

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted.   But, anything the lawyers say is not evidence and is not binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case.  Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence, you may use reasoning and common sense to make deductions and reach conclusions.  You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is a chain of facts and circumstances that tend to prove or disprove a fact.

There's no legal difference in the weight you may give to either direct or circumstantial evidence.

**Authority**:  Eleventh Circuit Civil Pattern Jury Instructions § 3.3 (2013 ed.).

### 3.4 Credibility of Witnesses

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate.  You should decide whether you believe what each witness had to say, and how important that testimony was.  In making that decision you may believe or disbelieve any witness, in whole or in part.  The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

    1. Did the witness impress you as one who was telling the truth?

    2. Did the witness have any particular reason not to tell the truth?

    3. Did the witness have a personal interest in the outcome of the case?

    4. Did the witness seem to have a good memory?

    5. Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

    6. Did the witness appear to understand the questions clearly and answer them directly?

    7. Did the witness's testimony differ from other testimony or other evidence?

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause you to discredit the testimony of that person. Two or more people seeing an event may see, hear, or experience it differently.  In weighing the effect of any discrepancy in a person's testimony, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.  After making your own judgment, you will give the testimony of each witness such weight, if any, that you may think it deserves.  In short, you may accept or reject the testimony of any witness, in whole or in part.

**Authority**:  Eleventh Circuit Civil Pattern Jury Instructions § 3.4 (2013 ed.).

**3.5 Impeachment of Witnesses Because of Inconsistent Statements or Felony Conviction**

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact.  And you should ask yourself whether there was evidence that at some other time a witness said or did something, or did not say or do something, that was different from the testimony the witness gave during this trial.

To decide whether you believe a witness, you may consider the fact that the witness has been convicted of a felony or a crime involving dishonesty or a false statement.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it.  People naturally tend to forget some things or remember them inaccurately.  So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception.  The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

**Authority**:  Eleventh Circuit Civil Pattern Jury Instructions § 3.5.2 (2013 ed.).

**3.6 Expert Witness**

When historical, technical, forensic, military, or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the topic of his or her testimony.

But that does not mean you must accept the witness's opinion.  As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion that the expert has expressed.

**Authority**:  Eleventh Circuit Civil Pattern Jury Instructions § 3.6 (2013 ed.).

**3.7 Responsibility for Proof – Plaintiffs' Claims – Preponderance of the Evidence**

In this case it is the responsibility of a Plaintiff to prove every essential part of his or her claims by a "preponderance of the evidence."  This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that the Plaintiff's claim is more likely true than not true.  As I said before, this means that the scales must tip in favor of the Plaintiff's claim even if the scales tip only 51% for them and 49% for the Defendants.

If the proof fails to establish any essential part of a claim by a preponderance of the evidence, you should find against the Plaintiff.

When more than one claim is involved, you should consider each claim separately.  In this case there is more than one Plaintiff and more than one Defendant.  So you should consider independently each claim of each Plaintiff against each Defendant.  If you find that a Plaintiff has not proven that one of the Defendants is responsible, that does not necessarily mean you must find a Plaintiff has not proven the responsibility of the other Defendant.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of one of Plaintiff's claim by a preponderance of the evidence, you should find for Defendant as to that claim.

**Authority**:  Eleventh Circuit Civil Pattern Jury Instructions § 3.7.1 (2013 ed.).

**3.8 Duty to Deliberate When Only a Plaintiff Claims Damages**

The fact that I have given you instructions concerning the issue of a Plaintiff's damages should not be interpreted in any way as an indication that I believe that the Plaintiffs should, or should not, prevail in this case.

You must come to a separate decision as to each Plaintiff's claims against each Defendant, and your verdict with respect to each claim must be unanimous – in other words, you must all agree. Your deliberations are secret, and you will never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you are discussing the case, do not hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But do not give up your honest beliefs just because others think differently or because you simply want to get the case over with. Under no circumstances should you feel pressured by one of your fellow jurors to come to a decision more quickly than you want to.

Remember that, in a very real way, you are the judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.

**Authority**: Eleventh Circuit Civil Pattern Jury Instructions § 3.8.1 (2013 ed.).

**3.9 Election of Foreperson Explanation of Verdict Form[s]**

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

Verdict forms have been prepared for your convenience – one form for each Plaintiff.

[Explain verdict form]

Take the verdict forms with you to the jury room. When you have all agreed on the verdict form for each Plaintiff, your foreperson must fill in the form, sign it and date it. When you have agreed to all the verdict forms, then you will return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I will respond as promptly as possible – either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.

**Authority**:  Eleventh Circuit Civil Pattern Jury Instructions § 3.9.1 (2013 ed.).

## SPECIFIC INSTRUCTIONS ON CLAIMS & LIABILITY

Each Plaintiff is pursuing two claims against each Defendant based on the allegations that their deceased relatives were the victims of two distinct violations, extrajudicial killings and wrongful death, and that the Defendants are responsible for those violations.  In a moment I will tell you what each Plaintiff must prove in order for you to find that those violations happened.

Plaintiffs have alleged that the Defendants are responsible for each of these violations under various forms of liability, any single one of which is, by itself, sufficient to establish their liability in connection with one of the violations.  A form of liability is the way the law defines how a person may be held legally responsible for a violation against another person.

Plaintiffs allege that each Defendant is liable as an individual for each of the violations because he: (1) exercised command responsibility over the person or persons who committed the violation; (2) entered into a conspiracy to commit the violation; and/or (3) the person or persons who committed the violation were agents of the Defendants.  After I discuss the alleged violations themselves, I will provide you with more detail on each of these forms of liability.  A Defendant may be found liable on any one basis even if he is not liable on the others.

**4.1 Extrajudicial Killing**

On their claims for extrajudicial killings, each Plaintiff must prove by a preponderance of the evidence that their deceased family member was intentionally killed by members of the Bolivian military, and that these killings were deliberated.  I will now explain what it means to say the killings were deliberated and intentional.

To prove extrajudicial killing, a Plaintiff must show that the killing was deliberated, meaning that it was carried out with studied consideration and purpose.  One way to show that a killing is deliberated is to show that the deaths of innocent people were the expected or desired outcome of a plan created by one or both of the Defendants, and that deaths actually resulted from implementation of the plan.  If you find that one or both of the Defendants expected or desired to cause deaths from the implementation of their plan and did cause deaths from the implementation of their plan, including the death of a Plaintiff's family member, then those findings are sufficient to conclude that the death was deliberated.  Evidence about how the Defendants created and implemented their plan could include circumstantial as well as direct evidence including, for example, evidence of changes in military doctrine, orders given to soldiers in the field, the actions of soldiers, and statements by Defendants.  Such evidence could lead you to a reasonable inference about the desired outcome of their plan and whether the implementation of that plan caused the deaths.

A Plaintiff must also prove that his or her deceased relative was intentionally killed by members of the Bolivian military.  To do so, a Plaintiff does not have to identify the specific Bolivian soldier who fired each lethal shot.  It is also not necessary to show the state of mind of each individual shooter.  For instance, you could reasonably infer that a person was intentionally killed by the military if a Plaintiff brings evidence that troops were ordered to shoot and did

shoot indiscriminately at civilians in the immediate vicinity of the person at the time of his or her death.

The troops do not have to target a specific person for death in order for a killing to be intentional. You could infer that a person was intentionally killed by the military based on the timing and placement of the bullet or the indiscriminate nature of the shooting.

For a killing to be intentional, a Plaintiff must show that the killing, more likely than not, was not accidental or the result of a particular soldier's personal quarrel with the deceased person. Evidence concerning the circumstances of the death including, for example, orders given to troops, the actions of troops, and shootings and other deaths in the same area, could support an inference about whether a person was intentionally killed by the Bolivian military.

A Plaintiff can show that a killing constitutes an extrajudicial killing even if there is evidence that protesters or others were armed or shooting in the areas where a person was killed if, for example, the evidence showed isolated shots at the military a significant distance away from the killing or at an earlier point in time.

**Authorities:** *See* Order Denying Defendants' Joint Motion for Summary Judgment at 40-45, *Mamani v. Berzaín*, Dkt. 408, Case. No 07-22459 (S.D. Fla. Feb. 14, 2018); *see also* 28 U.S.C. § 1350 note (Torture Victim Protection Act); *Owens v. Republic of Sudan*, 864 F.3d 751, 762, 769-70 (D.C. Cir. 2017); *Mamani v. Berzaín*, 654 F.3d 1148, 1155 (11th Cir. 2011); *Tachiona v. United States*, 386 F.3d 205 (2d Cir. 2004); *Hilao v. Estate of Marcos*, 103 F.3d 767, 776-79 (9th Cir. 1996); *Flanagan v. Islamic Republic of Iran*, 190 F. Supp. 3d 138, 163 (D.D.C. 2016); *Thuneibat v. Syrian Arab Republic*, 167 F. Supp. 3d 22, 35-36 (D.D.C. 2016); *Mamani v. Berzaín*, 21 F. Supp. 3d 1353, 1375 (S.D. Fla. 2014); *Jaramillo v. Naranjo*, 2014 WL 4898210, at *13 (S.D. Fla. Sept. 14, 2014); *In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.*, 792 F. Supp. 2d 1301, 1354-55 (S.D. Fla. 2011), *rev'd on other grounds*, 760 F.3d 1185 (11th Cir. 2014); *Tachiona v. Mugabe,* 234 F. Supp. 2d 401, 420-423 (S.D.N.Y. 2002); *Mushikiwabo v. Barayagwiza*, 1996 WL 164496, at *2 (S.D.N.Y. Apr. 9, 1996); *Xuncax v. Gramajo*, 886 F. Supp. 162, 172-73 (D. Mass. 1995); *Umetaliev v. Kyrgyzstan*, Human Rights Comm., Views, U.N. Doc. CCPR/C/94/D/1275/2004 (Oct. 30, 2008), http://www.bayefsky.com/pdf/kyrgyzstan_t5_iccpr_1275_2004.pdf.

**4.2 Wrongful Death**

In order to succeed on a claim of wrongful death, a Plaintiff must prove that a Defendant intended to cause a person's death.  There are different ways to prove intent.  One way is to show that the Defendant wanted to cause a death and acted directly to achieve that goal by, for instance, pointing a gun at someone and pulling the trigger.  A second way is to show that a Defendant wanted to cause a death but took indirect action to cause the death by, for example, setting fire to a person's house knowing that a person was sleeping inside it.  A third way to show intent is to show that a Defendant knows that death is a probable result of his action, whether or not the Defendant wanted to cause that particular death.  For instance, when a Defendant aims a weapon at a flock of ducks surrounding a person, the shooter's intent may be to kill a duck but he knew of the risk that he might hit and kill the person.  If the shooter pulls the trigger anyway and hits and kills the person, he would be liable for wrongful death.

**Authority:**  Plaintiffs' Ex. OOO (Verástegui Rpt. ¶ 76), attached to the Declaration of Joseph L. Sorkin in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment, Dkt. 375-2, (Case. No. 07-22459) (under Bolivian law, proof of intentional wrongful death (willful homicide) requires a showing that "the subject has acted with knowledge of the concrete risk of producing the result."); *see also id.* ¶¶ 41-46 (defining the three levels of intent).

**4.3 Defendants' Liability**

People can be liable for killings even if they do not personally kill the victim.  In this case, the Plaintiffs claim that the Defendants are liable for the extrajudicial killings and wrongful deaths of their relatives under the following theories of liability:

1. **Command responsibility; and/or**

2. **Conspiracy; and/or**

3. **Principal agent relationship.**

Each of these is a separate theory of liability and will be explained in more detail in subsequent instructions.  You must consider each theory of liability individually.  You must decide in a Plaintiff's favor if any one of these three theories supports a finding that one of the Defendants is liable with respect to one of the Plaintiff's claims.  If you find that a Plaintiff has not met his or her burden of proof under any one theory of liability, that finding does not affect your decision  regarding any of the other theories of liability.


**Authorities:**   *See Mohamad v. Palestinian Auth.*, 566 U.S. 449, 458 (2012) (noting that the TVPA contemplates direct liability as well as "liability against officers who do not personally execute the torture or extrajudicial killing"); *Doe v. Drummond Co.*, 782 F.3d 576, 607-610 (11th Cir. 2015) (recognizing direct and secondary theories of liability under the TVPA, including command responsibility and aiding and abetting); *Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1157-60 (11th Cir. 2005); *Lizarbe v. Rondon*, 642 F. Supp. 2d 473, 491 (D. Md. 2009), *aff'd in part*, 402 F. App'x 834 (4th Cir. 2010); *Chavez v. Carranza*, 413 F. Supp. 2d 891, 905 (W.D. Tenn. 2005); *Doe v. Saravia*, 348 F. Supp. 2d 1112, 1148 (E.D. Cal. 2004).

**4.4 Command Responsibility**

A Defendant may be found liable if you find that he exercised command responsibility over the person or persons who committed a wrongful act – in this case the act of extrajudicial killing.  The law of command responsibility holds a superior liable for the acts of his subordinates even if the superior did not commit or order the specific act committed by the subordinates.  You must consider each Defendant's liability based on command responsibility separately.  The law of command responsibility applies to both military and civilian leaders.

In order to hold either Defendant liable under the law of command responsibility, a Plaintiff must prove each of the following requirements by a preponderance of the evidence:

1. **A superior-subordinate relationship existed between the Defendant and the person or persons who carried out a wrongful act;**

2. **The Defendant knew, or should have known, owing to the circumstances at the time, that his subordinates had committed, were committing, or were about to commit a wrongful act; and**

3. **The Defendant failed to prevent the commission of a wrongful act, or failed to punish the subordinates after the commission of a wrongful act.**

Element 1: Superior-Subordinate Relationship

The first requirement for command responsibility is the existence of a superior-subordinate relationship between the Defendant and the person or persons who carried out the wrongful act.  To establish this element, a Plaintiff must prove that the Defendant had "effective control" over the subordinates who committed the wrongful act.

Effective control over a subordinate is either the ability to prevent the wrongful conduct *or* the ability to punish that conduct.

A Plaintiff can prove that a Defendant had "effective control" over subordinates by showing that the Defendant had either the legal authority or the practical ability to exert control

over his subordinates. In other words, if the Defendant had formal legal authority over his subordinates, you should assume that the Defendant had effective control over his subordinates.

Even if a Defendant did not have legal authority, he had "effective control" if he had the practical ability to control the actions of his subordinates. Practical ability to control the actions of subordinates can be proved by evidence that the Defendant gave orders and the subordinates followed his orders.

If a Defendant had legal authority over subordinates, then you should presume he had effective control over subordinates, and the Defendant has the burden to show he did not have effective control. The Defendant cannot escape liability if his own actions or inaction contributed to the lack of effective control over his subordinates.

Element 2: Defendant Knew or Should Have Known of the Wrongful Acts

The second requirement for command responsibility is that the Defendant knew or should have known of wrongful acts committed by his subordinates. A Plaintiff may prove this element in one of two ways. First, a Plaintiff may prove that a Defendant actually knew that his subordinates had committed, were committing, or were planning to commit wrongful acts. Second, a Plaintiff may prove that, in light of the circumstances at the time, a Defendant should have known that subordinates had committed, were committing, or were planning to commit wrongful acts.

A Plaintiff does not have to prove that a Defendant knew or should have known about the extrajudicial killing of each individual person. Rather, the knowledge requirement is satisfied if a Plaintiff proves that a Defendant knew or should have known that his subordinates had committed, were committing, or were about to commit extrajudicial killings generally. A

Defendant should have known that abuses were being committed if his subordinates were engaged in a pattern, practice, or policy of extrajudicial killings.

Element 3:  Failure to Prevent or Punish

The third requirement for command responsibility is that a Defendant failed to take all necessary and reasonable measures to prevent extrajudicial killings or failed to punish a subordinate after he committed extrajudicial killings.

A superior is liable for extrajudicial killings if he failed to prevent those wrongful acts. You may find that a Defendant who had the ability to direct his subordinates to undertake military operations also had the ability to prevent his subordinates' wrongful conduct.

A superior is also liable for extrajudicial killings if he failed to investigate and punish subordinates who committed those wrongful acts.  Failure to punish may be established by proof that a Defendant failed to properly investigate reliable allegations of extrajudicial killings committed by subordinates or failed to submit these matters to appropriate authorities for investigation and prosecution.  Ultimate and final authority, responsibility, and accountability rests with the superior.

**Authorities:**  *See* Order Denying Defendants' Joint Motion for Summary Judgment at 47-51, *Mamani v. Berzaín*, Dkt. 408, Case. No 07-22459 (S.D. Fla. Feb. 14, 2018); *see also* Torture Victim Protection Act of 1991, S. Rep. No. 102-249, at 9 (1991) ("[A] higher official need not have personally performed or ordered the abuses to be held liable." (citing *Forti v. Suarez-Mason*, 672 F. Supp. 1531, 1537-38 (N.D. Cal. 1987))); *Doe v. Drummond Co.*, 782 F.3d 576, 609 (11th Cir. 2015); *Ford ex rel. Estate of Ford v. Garcia*, 289 F.3d 1283, 1286-88, 1297-98 (11th Cir. 2002); *Xuncax v. Gramajo*, 886 F. Supp. 162, 172 (D. Mass. 2005); Court's Jury Instructions, *Arce v. Garcia*, Dkt. 242, Case No. 99-08364 (S.D. Fla. July 22, 2002); *Prosecutor v. Delalic*, Case No. IT-96-21-A, Judgment, ¶ 256 (Appeals Chamber Int'l Crim. Trib. for the Former Yugoslavia, Feb. 20, 2001), http://www.icty.org/x/cases/mucic/acjug/en/cel-aj010220.pdf.

### 4.5 Conspiracy

A Defendant may be found liable if you find that he conspired with another person or persons to commit wrongful acts against a person.  To hold a Defendant liable under a theory of conspiracy, a Plaintiff must prove by a preponderance of the evidence:

    **1.  Two or more persons agreed to commit a wrongful act;**

    **2.  The Defendant joined the conspiracy knowing of at least one of the goals of the conspiracy and intending to help accomplish it; and**

    **3.  One or more acts were committed by someone who was a member of the conspiracy and acted in furtherance of the conspiracy.**

Element 1: Agreement

For a conspiracy to have existed, it is not necessary that the conspirators made a formal agreement or that they agreed to every detail of the conspiracy.  Proof of a spoken or written agreement is not required; proof of an unstated understanding is sufficient to show agreement.  Circumstantial evidence may also be used to show the existence of an agreement.  The very nature of conspiracy frequently requires that the existence of an agreement be proved by inferences from the conduct of the participants or from circumstantial evidence of a scheme.  Among other things, this may include the nature of the acts done, the relationship between the co-conspirators, the interests of the alleged co-conspirators, and the relationships between the co-conspirators and the actions (e.g., the proximity in time and place of the acts and the duration of the actors' joint activity).

Element 2: Knowledge

The exact scope of the plan need not be known to each conspirator, nor is it necessary that the identity of everyone involved in the conspiracy be known to all of them.  What a Plaintiff must show is that conspirators shared the same general objective, even if their motives for

desiring the result were not necessarily identical.  Knowledge of and participation in the plan

may also be shown by circumstantial evidence.

Element 3:  Act in Furtherance of the Conspiracy

As long as at least one overt act is done by a member of the conspiracy, then all of the

members of the conspiracy are also considered to have committed the wrongful act.  A

Defendant can be found liable even if his participation in the scheme is "slight" by comparison to

the actions of other co-conspirators.  Once the conspiracy has been formed, all its members are

liable for injuries caused by acts pursuant to or in furtherance of the conspiracy and all acts that

were the natural and foreseeable consequence of the conspiracy.  A conspirator need not

participate actively in or benefit from the wrongful action in order to be found liable.  He need

not even have planned or known about the injurious action, so long as the purpose of the action

was to advance the overall object of the conspiracy.

Notably, the "act" in furtherance of the conspiracy does not need to be a killing.  The

killing of a decedent need only be "a foreseeable result" of the act in furtherance of the

conspiracy.  For instance, in a conspiracy to rob a bank, all conspirators would be liable if one

member of the conspiracy shot a guard, because death could be a foreseeable result of a violent

robbery.

**Authorities:**  *See Pinkerton v. United States,* 328 U.S. 640,646-47 (1946); *Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1157-1160 (11th Cir. 2005); *United States v. Chandler*, 388 F.3d 796, 806 (11th Cir 2004); *United States v. Toler*, 144 F.3d 1423, 1428 (11th Cir 1998); *United States v. Calderon,* 127 F.3d 1314, 1324, 1326 (11th Cir.1997); *United States v. Mothersill*, 87 F.3d 1214, 1218 (11th Cir. 1996); *United States v. Gold,* 743 F.2d 800, 824 (11th Cir. 1984); *Halberstam v. Welch*, 705 F.2d 472, 481 (D.C. Cir. 1983); *Doe v. Saravia*, 348 F. Supp. 2d 1112, 1148 (E.D. Cal. 2004).

**4.6 Principal Agent Relationship**

A Defendant may be found liable if you find that the person or persons who killed a decedent were agents of that Defendant. You must assess each Defendant's potential agency relationship separately. The agency theory of liability means that a Defendant is liable for the acts of his agent or agents, even if the Defendant himself did not commit the acts, when certain elements are met.

In order to hold a Defendant liable under an agency theory, a Plaintiff must prove by a preponderance of the evidence:

1. **Consent to agency by a Defendant and the agent or agents that killed a decedent; and**

2. **That a Defendant controlled the acts of the agent or agents that killed a decedent.**

<u>Element 1: Consent</u>

The first element of Agent liability is that the Defendant and the soldier who killed the decedents consented to have an agency relationship. This consent can be proven by evidence that a soldier, as a member of the military subordinate to the Defendant, consented to follow orders and thus act as an agent of the Defendants.

<u>Element 2:  Control</u>

The second element needed to prove Agent liability is that a Defendant exercised control over the person or people who killed the decedent. A Plaintiff must prove that a Defendant exercised substantial control over the actions of the agent or agents who killed a decedent, which is the same concept as effective control in the command responsibility doctrine.

Effective control over a subordinate is either the ability to prevent the wrongful conduct *or* the ability to punish that conduct.

38

A Plaintiff can prove that a Defendant had "effective control" over a subordinate by showing that the Defendant had either the legal authority *or* the practical ability to exert control over his subordinates.

If a Defendant had legal authority over a subordinate who killed someone, that is legally sufficient evidence of effective control.  In other words, if a Defendant had formal legal authority over a subordinate, you should assume that the Defendant had effective control over that subordinate unless the Defendant can prove that he did not, in fact, have such control.  A Defendant cannot escape liability, however, if his own action or inaction contributed to the lack of effective control over his subordinates.

Even if a Defendant did not have legal authority, he had "effective control" if he had the practical ability to control the actions of his subordinates.  One form of evidence that a Defendant possessed the practical ability to control the actions of subordinates is that the Defendant gave orders and the subordinates followed his orders.

**Authorities:** *See* Order Denying Defendants' Joint Motion for Summary Judgment at 47-56, *Mamani v. Berzaín*, Dkt. 408, Case. No 07-22459 (S.D. Fla. Feb. 14, 2018); *see also Chowdhury v. Worldtel Bangladesh Holding, Ltd.,* 746 F.3d 42, 52 (2d Cir. 2015); *Doe v. Drummond Co.*, 782 F.3d 576, 607-09 (11th Cir. 2015); *CFTC v. Gibraltar Monetary Corp. Inc.* 575 F.3d 1180, 1189 (11th Cir. 2009); *Whetstone Candy Co. v. Kraft Foods, Inc.,* 351 F.3d 1067, 1077-78 (11th Cir. 2003); Restatement (Second) of Agency § 1 (1958).

**5.1 Damages**

It is my duty to instruct you as to the proper measure of damages to be applied in this case if you find that a Plaintiff has proved each of the elements of his or her claims.  By instructing you regarding damages, I am not indicating, one way or the other, that I have any opinion regarding whether or not damages should be awarded in this case.

**5.2 Compensatory Damages**

If you find in favor of a Plaintiff, then you must determine an amount that is fair compensation for the damages suffered by the Plaintiff for the loss of life of his or her family member, as well as the suffering of the decedent himself or herself prior to death. Compensatory damages seek to make the party whole – that is, to compensate the Plaintiff and decedent for the damage suffered as a result of the liable Defendant's wrongful conduct. The damages, if any, that you award, must be full and fair compensation, no more and no less.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require a Plaintiff to prove his or her losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

Compensatory damages are the measures of the loss or injury sustained by the Plaintiff, and may include grief, shame, mortification, humiliation, indignity to the feelings and the like; these do not require proof. Compensatory damages are also the measure of the injury and suffering sustained by the deceased, and may include physical harm, pain, distress, fear, loss of life, and the like; these do not require proof.

In particular, you may award compensatory damages for pain and suffering and mental and emotional distress. No evidence of the monetary value of such intangible things as pain and suffering has been, or need be, introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damages. Any award you make must be fair in light of the evidence presented at trial.

You should consider the following elements in determining the amount of compensatory damages, to the extent you find them proved by a preponderance of the evidence:

(1) A Plaintiffs' physical and emotional pain, suffering, and mental anguish;

(2) A Plaintiffs' physical and mental injury;

(3) A deceased person's physical and emotional pain, suffering, and mental anguish; and

(4) A deceased person's physical and mental injury or loss of life.

**Authorities:** Eleventh Circuit Civil Pattern Jury Instructions § 4.1 (2013 ed.); *see also Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1159 (11th Cir. 2005) (upholding general jury verdict that included an award of compensatory and punitive damages for liability under the TVPA); *Doe v. Saravia*, 348 F. Supp. 2d 1112, 1158 (E.D. Cal. 2004) ("Courts have awarded significant compensatory and punitive damages for extrajudicial killing under the TVPA.").

**5.3 Punitive Damages for Extrajudicial Killing**

In addition to compensatory damages, you have the discretion to award punitive damages for extrajudicial killing.  Unlike compensatory damages, which are imposed to reimburse the Plaintiffs and deceased for their injuries, punitive damages are designed to make an example of the Defendants' conduct so that others will not engage in similar practices.

For extrajudicial killing, you may award punitive damages to a Plaintiff if he or she has proven that a Defendant's conduct was wanton and reckless, not merely unreasonable. An act is wanton and reckless if it is done in such a manner, and under such circumstances, as to reflect utter disregard for the potential consequences of the act on the safety and rights of others.  The purpose of punitive damages is to punish a Defendant for shocking conduct, in order to deter him and others from committing similar acts in the future.  Punitive damages are intended to protect the community and to express the jury's indignation at a Defendant's misconduct.

The award of punitive damages is within your discretion.  Punitive damages are appropriate for especially shocking and offensive misconduct.  If you decide to award punitive damages, you must use sound reason in setting the amount.  It must not reflect bias, prejudice, or sympathy toward any party.  But the amount can be as large as you believe is necessary to fulfill the purpose of punitive damages.  There is no exact standard for fixing the amount of punitive damages.  Any award you make should be fair in the light of the evidence.

Should you award punitive damages to a Plaintiff, in fixing the amount, you must consider what is reasonably required to accomplish the goals of punishing the Defendant and deterring others from committing similar acts.  You should consider the degree of reprehensibility of the Defendant's conduct toward a Plaintiff and the relationship between the harm suffered by a Plaintiff and the amount of punitive damages you are considering.  In sum, in

computing punitive damages you should award the amount you find appropriate to punish a

Defendant for the injuries to the Plaintiffs in this lawsuit and to set an example to others that will

deter them from engaging in similar conduct.

**Authorities:**  *See Xuncax v. Gramajo*, 886 F. Supp. 162, 199 (D. Mass. 1995) (noting that "[t]he various federal courts that have adjudicated claims of human rights violations comparable to those asserted by plaintiff Ortiz in this case, … have all seen fit to issue sizable punitive awards, often in excess of the corresponding compensatory recovery"); *see also Baloco ex rel. Tapia v. Drummond Co.*, 640 F.3d 1338, 1348 n.11 (11th Cir. 2011); *Cabello v. Fernandez–Larios*, 402 F.3d 1148, 1151, 1156-58 (11th Cir. 2005).

**5.4 Moral Damages for Wrongful Death**

       For wrongful death, you may award damages in addition to compensatory damages that

take into account the culpability of the Defendant, the seriousness of the violations committed,

the suffering of the people who died as well as the suffering of their family members, and the

Defendant's assets.

**Authority:**  Declaration of Paulino L. Verástegui Palao ¶ 30, attached to Compendium of
Evidence in Support of Plaintiffs' Opposition to Defendants' Joint Motion to Dismiss, Dkt. 191-
5, (Case. No. 07-22459) (under Bolivian law, "a civil judgment for damages for the deaths and
injuries in September and October 2003 would include moral damages and would take into
account the culpability of the defendants as well as their assets.").

*Counsel for Plaintiffs*

| | |
|---|---|
| Ilana Tabacinic (Florida Bar No. 57597)<br>AKERMAN LLP<br>Three Brickell City Centre<br>98 Southeast Seventh Street, Suite 1100<br>Miami, FL 33131<br>Tel: (305) 374-5600<br>Fax: (305) 374-5095<br>Email: ilana.tabacinic@akerman.com | Steven H. Schulman (*pro hac vice*)<br>AKIN GUMP STRAUSS HAUER & FELD LLP<br>Robert S. Strauss Building<br>1333 New Hampshire Avenue NW<br>Washington, DC 20036<br>Tel:  (202) 887-4000<br>Fax: (202) 887-4288<br>E-mail: sschulman@akingump.com |
| Judith Brown Chomsky (*pro hac vice*)<br>CENTER FOR CONSTITUTIONAL RIGHTS<br>Post Office Box 29726<br>Elkins Park, PA  19027<br>Tel:  (215) 782-8367<br>Fax:  (215) 782-8368<br>E-mail: judithchomsky@icloud.com | Joseph L. Sorkin (*pro hac vice*)<br>Jennifer L. Woodson (*pro hac vice*)<br>Saurabh Sharad (*pro hac vice*)<br>Christine Doniak (*pro hac vice*)<br>Harley Raff (*pro hac vice*)<br>AKIN GUMP STRAUSS HAUER & FELD LLP<br>One Bryant Park<br>Bank of America Tower<br>New York, NY 10036-6745<br>Tel:  (212) 872-1000<br>Fax: (212) 872-1002<br>E-mail: jsorkin@akingump.com<br>E-mail: jwoodson@akingump.com<br>E-mail: ssharad@akingump.com<br>E-mail: cdoniak@akingump.com<br>E-mail: hraff@akingump.com |
| Beth Stephens (*pro hac vice*)<br>CENTER FOR CONSTITUTIONAL RIGHTS<br>666 Broadway<br>Seventh Floor<br>New York, NY 10012<br>Tel:   (212) 614-6431<br>Fax:  (212) 614-6499<br>E-mail: beth.stephens@rutgers.edu | Zak Franklin (*pro hac vice*)<br>Erica Abshez Moran (*pro hac vice*)<br>AKIN GUMP STRAUSS HAUER & FELD LLP<br>1999 Avenue of the Stars, Suite 600<br>Los Angeles, CA 90067<br>Tel:  (310) 229-1000<br>Fax: (310) 229-1001<br>E-mail: zfranklin@akingump.com<br>E-mail: emoran@akingump.com |
| David Rudovsky (*pro hac vice*)<br>KAIRYS, RUDOVSKY, MESSING &<br>FEINBERG LLP<br>718 Arch Street, Suite 501 South<br>Philadelphia, PA 19016<br>Tel: (215) 925-4400<br>Fax: (215) 925-5365<br>E-mail: drudovsk@law.upenn.edu | Rubén H. Muñoz (*pro hac vice*)<br>Jason Weil (*pro hac vice*)<br>AKIN GUMP STRAUSS HAUER & FELD LLP<br>Two Commerce Square<br>2001 Market Street, Suite 4100<br>Philadelphia, PA 19103<br>Tel:  (212) 965-1328<br>Fax: (215) 965-1210<br>E-mail: rmunoz@akingump.com<br>E-mail: jweil@akingump.com |

| | |
|---|---|
| Paul Hoffman (*pro hac vice*)<br>SCHONBRUN, SEPLOW,<br>HARRIS & HOFFMAN, LLP<br>723 Ocean Front Walk<br>Venice, CA 90201<br>Tel: (310) 396-0731<br>Fax: (310) 399-7040<br>E-mail: hoffpaul@aol.com | Tyler R. Giannini (*pro hac vice*)<br>Susan H. Farbstein (*pro hac vice*)<br>Thomas Becker (*pro hac vice*)<br>INTERNATIONAL HUMAN RIGHTS CLINIC,<br>Human Rights Program<br>Harvard Law School<br>Pound Hall 401, 1563 Massachusetts Avenue<br>Cambridge, MA 02138<br>Tel: (617) 495-9362<br>Fax: (617) 495-9393<br>E-mail: giannini@law.harvard.edu<br>E-mail: sfarbstein@law.harvard.edu<br>E-mail: thomasbainbecker@gmail.com |

CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2018, I electronically filed the foregoing documents with the Clerk of the Court using CM/ECF.  I also certify that the foregoing documents are being served this day on counsel of record on the attached Service List either via transmission of Notice of Electronic Filing generated by CM/ECF or via e-mail.

*/s/ Ilana Tabacinic*
Ilana Tabacinic

## SERVICE LIST

Ana C. Reyes
Stephen D. Raber
James E. Gillenwater
Suzanne M. Salgado
Giselle Barcia
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC  20005
(202) 434-5000
(202) 434-5029 (facsimile)
areyes@wc.com
sraber@wc.com
jgillenwater@wc.com
ssalgado@wc.com
gbarcia@wc.com

Evan B. Berger
BECKER & POLIAKOFF, P.A.
1 East Broward Blvd., Suite 1800
Ft. Lauderdale, FL  33301
(954) 364-6055
(954) 985-4176 (facsimile)
eberger@bplegal.com