UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-22459-CIV-COHN/SELTZER
CASE NO. 08-21063-CIV-COHN/SELTZER

ELOY ROJAS MAMANI, et al.,

     Plaintiffs,

v.

JOSÉ CARLOS SÁNCHEZ BERZAÍN,

     Defendant in No. 07-22459,

GONZALO DANIEL SÁNCHEZ DE
LOZADA SÁNCHEZ BUSTAMANTE,

     Defendant in No. 08-21063.
_____/

**ORDER GRANTING DEFENDANTS' MOTION
TO EXCLUDE TESTIMONY OF PHILIP P. HAYDEN**

     **THIS CAUSE** is before the Court upon Defendants' Motion to Exclude the
Testimony of Philip P. Hayden [DE 337 in Case No. 07-22459; DE 314 in Case No. 08-
21063] ("Motion").[1]  The Court has considered the Motion, Plaintiffs' Response and
Defendants' Reply, the parties' related submissions, and the record in these cases, and
is otherwise advised in the premises.  For the reasons stated below, Defendants' Motion
is granted.

---

[1] All docket citations refer to Case No. 07-22459, which was consolidated with Case No. 08-
21093 in May 2008.  See DE 68.

## BACKGROUND[2]

According to Plaintiffs, Philip P. Hayden is to testify as "an expert in the use of force." DE 352 at 1. But as a "use of force" expert, Mr. Hayden is not opining on, for example, whether Defendants' use of military force was disproportionate or excessive under the circumstances.[3] Rather, Plaintiffs explain that "[a]s an expert in the use of force, Mr. Hayden analyzes **how**, and **by whom**, force was used in a given situation." Id. at 4. Based on his analysis of the shootings at issue in these cases, Mr. Hayden concludes that each of the eight decedents were intentionally shot and killed by members of the Bolivian military. See Defendants' Ex. 3 ¶ 193 (Opening Expert Report of Philip Hayden ("Hayden Report")).[4]

Defendants move to exclude Mr. Hayden's testimony for failing to satisfy the standards set forth in Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and its progeny. First, Defendants argue that Mr. Hayden is unqualified to offer an opinion on how the decedents were shot and by whom because he is not qualified to assess bullet point of origin or trajectory, reconstruct a shooting scene, or determine a shooter's intent. DE 337-1 at 4-8. Second, Defendants claim that Mr. Hayden's opinions are unreliable because he applies no discernable methodology, improperly parrots the opinions of Bolivian

---

[2] The Court's Order Denying Defendants' Joint Motion for Summary Judgment contains a comprehensive discussion of the facts of these cases, which will not be repeated here. See DE 408 at 2-24.

[3] The closest Mr. Hayden comes to a traditional "use of force" opinion is his conclusion that the shootings at issue "had no strategic value to the military and merely represented a display of power and violence, intended to place fear into the population." Defendants' Ex. 3 ¶ 190 (Opening Expert Report of Philip Hayden). But as explained below, there is nothing in the record remotely suggesting that Mr. Hayden is qualified to render such an opinion, and Plaintiffs make no attempt to defend Mr. Hayden's competence on this point. Moreover, this opinion is clearly peripheral to Mr. Hayden's main conclusion that each decedent was intentionally shot by the Bolivian military.

[4] Defendants' exhibits are attached to the Motion. See DE 337-2 to DE 337-4.

ballistics expert José Goitia Durán, and because his opinions are results-driven. Id. at 8-20. And third, Defendants contend that Mr. Hayden's opinions are unhelpful to the trier of fact because, *inter alia*, the evidence that he reviewed to form his opinions would be intelligible to a lay juror and Plaintiffs concede that Mr. Hayden applied no scientific expertise to this evidence. Id. at 20; DE 363 at 10-11.

Plaintiffs respond that Mr. Hayden's experience qualifies him as an expert on the use of force and permits him to testify about narrow "subtopics" within his broader use of force expertise, which apparently includes bullet path reconstruction and whether a shooting has the characteristics of an intentional killing. DE 352 at 3-7. Plaintiffs also argue, *inter alia*, that Defendants' critiques of Mr. Hayden's methodology miss the mark because they are "aimed at a scientific expert who might be expected to provide calculations and measurements" but "Mr. Hayden is not such an expert." Id. at 1, 8-12. Rather, Plaintiffs assert that Mr. Hayden's opinions are based on his experience, and that the methodology he used to arrive at these opinions is analogous to the methodology he used as a FBI agent. Id. at 9. Finally, Plaintiffs also argue that Mr. Hayden's testimony is helpful to the trier of fact because he is able to use his experience to link together evidence, such as ballistics and autopsy reports, in a way that a lay juror could not. Id. at 19-20.

## LEGAL STANDARD

In applying Rule 702,[5] district courts are charged with "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at

---

[5] Rule 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

hand." Daubert, 509 U.S. at 597. This critical gatekeeping function "ensure[s] that speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation 'expert testimony.'" Rink v. Cheminova, Inc., 400 F.3d 1286, 1291 (11th Cir. 2005) (some internal quotation marks omitted). To perform this gatekeeping function, district courts engage in a "rigorous inquiry" to determine whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. Id. at 1291-92. "The party offering the expert has the burden of satisfying each of these three elements by a preponderance of the evidence." Id. at 1292.

In addressing the reliability prong of the Daubert analysis, the Supreme Court has identified four factors that the district courts should consider: (1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the theory or technique used by the expert has been subjected to peer review and publication; (3) whether there is a known or potential error rate of the methodology; and (4) whether the technique has been generally accepted in the relevant scientific community. United Fire & Cas. Co. v. Whirlpool Corp., 704 F.3d 1338, 1341 (11th Cir.

_____

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

2013) (citing <u>Daubert</u>, 509 U.S. at 593-94).  Yet, "these factors are not exhaustive and are intended to be applied in a 'flexible' manner."  <u>Id.</u> (quoting <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 141 (1999)).

**DISCUSSION**

I.    <u>Mr. Hayden is Not Qualified to Opine on Who Shot Each Decedent</u>

Although Plaintiffs seek to cast Mr. Hayden as a "use of force" expert, he is plainly not offering a use of force opinion except in the broadest, most literal sense of the term.  That is, technically, he does opine on ***who*** used force against the decedents.  But typically, use of force experts assess the ***reasonableness*** of a known individual's— usually a law enforcement officer's—use of force.  <u>See, e.g.</u>, <u>Samples v. City of Atlanta</u>, 916 F.2d 1548, 1551 (11th Cir. 1990) (holding testimony of "use of force" expert admissible where defendant "establish[ed] the witness's extensive qualifications as an expert in the field of the proper use of force by law enforcement officers" and testimony went to reasonableness of officer's actions); <u>Ayers v. Harrison</u>, 650 F. App'x 709, 719 (11th Cir. 2016) (per curiam) (rejecting contention that district court improperly permitted "use of force experts" to instruct the jury on whether law enforcement officer defendant violated the Fourth Amendment); <u>Flint v. Scott</u>, 2018 WL 327166, at *1 (M.D. Ga. Jan. 8, 2018) ("Plaintiff's use of force expert opines that Defendant used excessive force when he shot and killed Plaintiff's son.").  Mr. Hayden admits that this is what he has done previously as a use of force expert.  <u>See</u> Defendants Exhibit 1 at 10:10-14 (Philip P. Hayden Deposition Transcript ("Hayden Dep. Tr.")) ("Q: When you say you're an expert in the use of force scenarios, I understand you investigated previously whether

an officer's use of force was reasonable under the circumstances? A: Yes.").[6] But this is not the type of opinion that Plaintiffs seek to have Mr. Hayden offer in these cases. Rather, he opines on where the bullets that struck the decedents came from, who fired the shots, and whether they were intentional. Despite what Plaintiffs label these opinions, it is clear that the first two are opinions based on ballistics and bullet trajectories. It is equally clear that Mr. Hayden is unqualified to render opinions of this nature, or to determine a shooter's intent.

Mr. Hayden served in the U.S. Army from 1964 through 1968 and received numerous awards for his service in Vietnam. Hayden Report ¶ 7. During his military service, he trained as a sniper. Id. Mr. Hayden joined the FBI as a Special Agent in 1973 and retired as a Supervisory Special Agent in 1999. Id. ¶¶ 5-6. In the FBI, he was certified as an instructor in, *inter alia*, tactical concepts for law enforcement officers, special weapons and tactics (SWAT), firearms, and sniper training. Id. ¶ 6. He also worked as part of teams—typically comprising approximately ten agents—investigating shootings, where his role included canvasing for witnesses and drawing up schematics of the scene, but not performing any ballistics assessments or trajectory calculations since Mr. Hayden does not do those types of calculations. See Hayden Dep. Tr. at 10:22-20:18, 58:11-13. Since leaving the FBI, he has worked as a private law enforcement consultant. Hayden Report ¶ 2.

Notably, approximately three years ago, based on the same qualifications set forth above, Mr. Hayden was found unqualified "to provide an expert opinion on ballistics or bullet trajectories . . . [or] reconstructing the scene of [a] shooting." Lee v.

---

[6] And Mr. Hayden concedes that in most of these situations, the shooter's identity was known. Hayden Dep. Tr. at 10:15-21.

City of Richmond, 2014 WL 5092715, at *6 (E.D. Va. Sept. 30, 2014).[7]  The Court

noted that Mr. Hayden "admitted that he was not an expert in ballistics or bullet

trajectories . . . and that he does not have any specialized training or education

respecting to shooting scene reconstruction."  Id. at *5.  Mr. Hayden points to no new

training that he has received in the past three years that would now qualify him to testify

as an expert in these areas.  Rather, Plaintiffs argue that the exclusion of Mr. Hayden's

testimony in Lee "bear[s] little relevance to his proffered testimony in this case" because

they claim that in Lee, "Mr. Hayden was asked to perform a very different analysis than

here."  DE 352 at 1, 5.  Plaintiffs claim that the critical difference is that in Lee, "Mr.

Hayden was asked to assist with trajectory measurements and calculations and . . .

opine directly on bullet trajectory," whereas here, he "reach[es] a conclusion as to the

use of force exhibited against each victim" by assessing the "'general' path taken by the

bullets . . . in conjunction with the rest of the evidence."  Id. at 5-6.

Essentially, Plaintiffs argue that Mr. Hayden is qualified to opine on where each

bullet that struck a decedent was fired from because these opinions are based not on

the reconstruction of a bullet's trajectory to determine its point of origin, but on Mr.

Hayden's broad "use of force" expertise, which permits Mr. Hayden to opine on

"relevant subtopics" within that general area of expertise, including "bullet paths."  The

Court agrees with Defendants that this argument "finds no support in either law or logic."

DE 363 at 2.  First, it hinges on the existence of a meaningful distinction between "bullet

trajectory" and "bullet path."  The Court is not convinced that such a distinction can be

---

[7] Tellingly, Mr. Hayden also proffered a "use of force" opinion in Lee, but it was a traditional, narrow opinion on "the standards for the use of deadly force by law enforcement officers," not a generalized assessment of who used force and how.  See Lee v. City of Richmond, 2014 WL 5092715, at *7 (E.D. Va. Sept. 30, 2014).

drawn, at least in these cases given how loosely Plaintiffs have used the term "bullet path." During his deposition, Mr. Hayden was directly asked to distinguish these terms, and his answer provides little clarity:

> Q: What's the difference between bullet path and bullet trajectory?
>
> A: Bullet path is the way the bullet flies from the end of the barrel of the weapon to the target.
>
> Q: Okay.
>
> A: Bullet trajectory you're dealing with more factors in the bullet itself, the coefficiency of the bullet, and not only the drop, but the yaw in the bullet, the wiggle of the bullet. A lot of those different factors.
>
> . . . .
>
> Q: Are you offering expert opinion in the area of bullet path in this case?
>
> A. What I'm doing is I'm giving an opinion on what—what would happen as an expert in use of force dealing with bullet path.

Hayden Dep. Tr. at 9:7-10:2.

It is clear that the only reason Plaintiffs seek to frame Mr. Hayden's opinions as involving bullet path as opposed to trajectory is because in <u>Lee</u>, while the court found Mr. Hayden unqualified to render an opinion on bullet trajectory, the court did permit him to testify about the "general path taken by the bullets." 2014 WL 5092715, at *7. But the <u>Lee</u> court strictly conditioned its admission of Mr. Hayden's testimony on "bullet path," holding that such testimony was only permissible "assuming that there is a foundation laid in other evidence to show that [the police] fired bullets at [the decedent], what the caliber of the weapons were, [and] where rounds of that caliber were recovered." <u>Id.</u> Moreover, the <u>Lee</u> court held that Mr. Hayden was only qualified to testify regarding bullet path because of his "placement of [trajectory] rods," and more

specifically, because of "the instruction that he received from another expert about where and how to place the rods." Id. Thus, Lee does not support Mr. Hayden's competence to opine on "bullet path" where, as here, there is no "foundation laid in other evidence" as to who the shooters were, the caliber of weapons is unknown, and no rounds were collected. And, as discussed below in connection with Mr. Hayden's methodology in these cases, he did not place rods at any of the locations to provide a basis for his testimony on "bullet path."

At bottom, Plaintiffs' argument that Mr. Hayden's opinions are permissibly based on bullet "path" as opposed to "trajectory"—like their characterization of Mr. Hayden as a "use of force" expert—fails because it puts form over substance. It is obvious that the opinions Plaintiffs seek to have Mr. Hayden offer in these cases do not simply describe the "general paths" that bullets traveled between two fixed locations (e.g. the location where rounds were recovered and, as indicated by trajectory rods, the location of a known shooter). Instead, Mr. Hayden specifically opines on the point of origin of the bullets that struck the decedents, ultimately concluding that the Bolivian military fired each shot. See, e.g., Hayden Dep. Tr. at 279:15-6 (stating that, although Mr. Goitia—a Bolivian ballistics expert—concluded that nothing could be determined regarding the point of origin of the bullet that struck decedent Roxana Apaza Cutipa due to a lack of evidence, "it would have been more than likely that [the bullet] would have come from [Avenue Juan Pablo II]"); Hayden Report ¶ 62 (noting that Mr. Goitia's conclusion that the shot that killed decedent Marlene Nancy Rojas Mamani "was fired from a small promontory of land next to an irrigation channel 75 meters from [her home] . . . is consistent with [Mr. Hayden's] observations"); id. ¶¶ 101, 105 (agreeing, based in part

on the "trajectory of the bullet," with Mr. Goitia's conclusion that decedent Marcelino

Carvajal Lucero's shooter was located approximately 18 meters away from him on

Avenue Juan Pablo II); id. ¶ 184 (confirming as reasonable Mr. Goitia's conclusion that

the bullet that struck decedent Teodosia Morales Mamani "was fired from [A]venue Juan

Pablo II, approximately 71 meters away, from the middle of the road").

While Plaintiffs may label these "bullet path" assessments, this is precisely the

type of bullet trajectory testimony that Mr. Hayden was precluded from offering in Lee.

Specifically, the Lee court precluded Mr. Hayden from offering "opinions as to [the

polices'] location at the time various shots were fired. That is what the parties refer to

as 'bullet trajectory' opinions." 2014 WL 5092715, at *6. Now, under the guise of a

"bullet path" analysis, Mr. Hayden seeks to do the same thing he was prohibited from

doing in Lee: opine on the locations of the shooters at the time the various shots that

struck the decedents were fired. Mr. Hayden even admits that "[b]ullet path begins with

the point of origin where the bullet has come out of that weapon." Hayden Dep. Tr. at

52:23-24. Thus, for the same reasons set forth in Lee, the Court concludes that Mr.

Hayden is unqualified to reconstruct a bullet's trajectory (or path) to determine the

locations of the shooters in these cases.

II.     Mr. Hayden is Not Qualified to Opine on Whether the Decedents Were Shot
        Intentionally

Defendants argue that Mr. Hayden is unqualified to opine about any shooter's

intent in these cases because expert opinions on intent "have no basis in any relevant

body of knowledge or expertise and lie outside the proper bounds of expert testimony."

DE 337-1 at 7 (quoting In re Trasylol Products Liab. Litig., 2010 WL 4052141, at *8

(S.D. Fla. May 12, 2010)). Further, Defendants contend that even if intent were a

permissible subject of expert testimony generally, Mr. Hayden's testimony on intent should still be excluded because, prior to these cases, he had "never actually assessed whether or not a shot . . . was intentional or accidental" and he lacks a sufficient basis to do so now. Id. (quoting Hayden Dep. Tr. 239:12-15). Plaintiffs respond that "Mr. Hayden does not seek to opine on the specific thoughts going through the individual shooter's head," but rather whether the circumstantial evidence regarding each shooting suggests that "it is likely that the shot(s) that killed each decedent was intentional rather than accidental." DE 352 at 6-7. Plaintiffs argue that Mr. Hayden is qualified to render such opinions based on his FBI experience. Id.

Plaintiffs have failed to meet their burden of establishing that Mr. Hayden is qualified to opine on whether the shots that struck the decedents were intentional. First, they offer no meaningful response to the caselaw holding that experts cannot opine on intent. Rather, Plaintiffs appear to concede that Mr. Hayden would be unqualified to opine on the thoughts going through a shooter's head, but argue that there is a distinction between that type of opinion and Mr. Hayden's opinion that the shootings at issue in these cases were intentional. The Court fails to see the difference between these two types of opinions. By testifying that the shootings were intentional, Mr. Hayden is necessarily opining on what was going through a shooter's mind. Mr. Hayden's opinions on intent, even if framed as merely explaining what the circumstantial evidence suggests, are inadmissible under Rule 702 and Daubert because "inferences about intent and motive are classic jury questions." In re Trasylol Products Liab. Litig., 2010 WL 4052141, at *8.

Even if expert opinions on intent were permissible, Plaintiffs have failed to show that Mr. Hayden is qualified to render such opinions. Plaintiffs generally reference Mr. Hayden's experience in the military and FBI, but the only specific basis they offer for his competency to opine on a shooter's intent is a course he designed at the FBI "where the officers and agents specifically discussed and analyzed whether shooting into a room more than once suggested the shooter intended to hit a target in that room." DE 352 at 6. But at his deposition, when pressed on the connection between this course and his qualifications to opine on a shooter's intent, Mr. Hayden revealed that the course was not directed at determining whether a shooting was intentional; it was titled "law enforcement for training for safety and survival." Hayden Dep. Tr. at 485:10-16. And the only portion of the course that related to intentional shootings apparently consisted merely of Mr. Hayden talking to FBI agents who agreed that a shooter firing more than one shot at a room suggests that the shots are intentional:

> Q: Identify one course that you taught and where you made a determination of intentional versus accidental shots based on the number of bullet holes in a wall?
>
> A: Law enforcement for training for safety and survival course that I designed and put together in the FBI.
>
> . . . .
>
> Q: And did those [course] materials include an assessment that you could make a determination of an intentional versus an accidental shot?
>
> A: What that determined is that if you're talking to FBI agents and talking to law enforcement, if you're shooting at someone and you're shooting more than one round in there, then you're shooting at an intentional target, would that be correct? And everyone's saying yes, that is correct. If we're shooting into a room more often than one, that means we're trying to hit somebody in there.

Id. at 485:10-486:7.

These discussions that Mr. Hayden had with FBI agents are plainly insufficient to qualify him to determine whether the shootings in these cases were intentional, especially given his admission that he has never previously assessed whether a shot was intentional or accidental. Moreover, it is clear that these discussions did not even form the basis for all of Mr. Hayden's conclusions on intent. For example, the FBI agents in Mr. Hayden's course agreeing that if a shooter is shooting at something *repeatedly* he is shooting at an intentional target cannot support Mr. Hayden's conclusion that decedent Marlene Nancy Rojas Mamani was shot intentionally because she "was shot in the chest by a *single bullet* through the window of her home." Hayden Report ¶ 70 (emphasis added).

III.    Mr. Hayden is Not Qualified to Opine on the Strategic Value to the Military of the Shootings at Issue

In addition to concluding that each decedent was intentionally shot by the Bolivian military, Mr. Hayden also opines that "[e]ach of the eight shootings . . . had no strategic value to the military and merely represented a display of power and violence, intended to place fear into the population." Hayden Report ¶ 190. The parties do not address this opinion in their briefing, though Defendants do seek to exclude Mr. Hayden's testimony in its entirety. In any event, the Court is confident that Mr. Hayden is unqualified to offer this opinion. As noted above, this opinion is the closest Mr. Hayden comes to offering traditional "use of force" testimony. That is, similar to how a traditional use of force expert would assess the reasonableness of a law enforcement officer's use of force in a Fourth Amendment excessive force case, here, Mr. Hayden appears to be essentially assessing whether the Bolivian military's conduct was reasonably necessary to accomplish a strategic purpose. While Mr. Hayden may be

qualified in the law enforcement context to render an opinion on the reasonableness of the use of force, there is nothing in the record remotely suggesting that Mr. Hayden is qualified to opine on the strategic value to the Bolivian military of specific shots fired by unknown soldiers. To the extent Plaintiffs may rely generally on Mr. Hayden's military experience, they fail to make the requisite showing for admitting experience-based testimony—"*how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." <u>Frazier</u>, 387 F.3d at 1261. And finally, as discussed above, Mr. Hayden is unqualified to opine on intent, whether it be related to an intent to shoot or, as here, an alleged "intent[] to place fear into the population."

IV.     <u>Mr. Hayden's Opinions are Unreliable</u>

As discussed at length above, Plaintiff's characterization of Mr. Hayden's opinions as general "use of force" opinions is inaccurate. Mr. Hayden offers specific opinions regarding who shot each decedent based on the points of origin and trajectories of the bullets that struck them. Given the true nature of his opinions, there can be no question that, like in the <u>Lee</u> case, the Court must also exclude Mr. Hayden's opinions "as unreliable for lack of methodology." 2014 WL 5092715 at *7.

To reach the conclusions in his Report, Mr. Hayden went to Bolivia for "almost a week" to visit each of the eight shooting scenes. Hayden Dep. Tr. at 74:4-5. Before he went to Bolivia, he "had done quite a bit of reading of different documents that were supplied to [him] by the attorneys," including police reports, autopsy reports, and Mr. Goitia's ballistics reports. <u>See</u> <u>id.</u> at 78:15-18. Therefore, the primary purpose of Mr.

Hayden's visit to Bolivia appears to have been to confirm the information in the documents he reviewed:

> And so I had a very good understanding of what was happening in each one of those according to those documents. So when I went to Bolivia and I talked to these people, I wanted them to tell me in their own words so I could see if there's anything different from what was in the reports that I had read.

Id. at 78:20-79:2. In addition to speaking with witnesses of the shootings, Mr. Hayden analyzed the shooting scenes, but not by taking any measurements, using trajectory rods, or performing any calculations. See DE 352 at 10. In fact, he applied no discernable methodology at all, instead "eyeballing" the fourteen-year-old shooting scenes. See Hayden Dep. Tr. at 119:20-23.

Plaintiffs argue that Mr. Hayden's failure to take measurements or perform calculations is irrelevant because the Court's analysis of Daubert's reliability prong depends on the nature of the proffered opinion, and since Mr. Hayden "does not offer here an opinion based on specific measurements and calculations," his opinions are reliable based solely on his "knowledge, experience, and training." DE 352 at 8. In support, Plaintiffs cite caselaw for the general proposition that Daubert permits experience-based testimony in certain types of cases. See id. (citing Feliciano v. City of Miami Beach, 844 F. Supp. 2d 1258, 1263 (S.D. Fla. 2012)). But Plaintiffs submit no authority remotely supporting the ability of any type of expert to reliably reconstruct a bullet's trajectory or point of origin without taking any measurements or performing any calculations. For instance, they cite Feliciano for the proposition that "[c]ourts have repeatedly accepted the testimony of experts, like Mr. Hayden, who provide expert testimony on topics like use of force and police practices, among others, based on their

own experience, rather than a scientific analysis." Id.  But Feliciano involved a

traditional use of force opinion regarding proper police practices in an excessive force

case.  844 F. Supp. 2d at 1261.  Again, that is a far cry from the type of opinion that

Plaintiffs seek to have Mr. Hayden offer in these cases.

Critically, Mr. Hayden even conceded at his deposition that measurements and

calculations are necessary to render an opinion on "bullet path":

> Q: And the attorney [in the Lee case] wanted [a precise definition of an angle] because you need those angles to assess the point of origin of a bullet, correct?
>
> A: You need angles.
>
> Q: Why do you need angles?
>
> A: To find the projection of the bullet.
>
> Q: To find the point of origin of the bullet, correct?
>
> A: Not necessarily always to find the point of origin, but where the bullet path was.
>
> Q: **Okay. You need the angles to find the bullet path?**
>
> A: **Yes.**

Hayden Dep. Tr. 45:10-24 (emphasis added; objection omitted).  Simply put, just as the

Lee court recognized (and as Mr. Hayden effectively conceded at his deposition), with

regard to the type of opinion Plaintiffs seek to have Mr. Hayden offer, there is "a clear

need for a technically or scientifically validated methodology," in the face of which,

"Hayden has offered little more than an insouciant shrug and a series of 'guesstimates.'"

Lee, 2014 WL 5092715 at *7.[8]

---

[8] Mr. Hayden's opinions regarding whether the shootings at issue were intentional are also unreliable for lack of methodology, because as with his opinions on bullet trajectory and point of origin, he applies no discernable methodology whatsoever to form his opinions on intent.

Even if Mr. Hayden's experience alone was a reliable basis for any of his opinions, Plaintiffs fail to explain "*how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Frazier, 387 F.3d at 1261. Plaintiffs argue that Mr. Hayden "[r]epeatedly" linked his experience and knowledge to the opinions he offers in these cases, but the only specific experience they cite includes his work as a part of large FBI investigative teams (where his role was mainly to canvass the area for witnesses—something that he did not do here), his experience shooting firearms, and the course he designed at the FBI—discussed above—where he talked to FBI agents about whether multiple shots at a target indicated they were intentionally fired. See DE 352 at 11-12. There has been no showing, however, as to how any of Mr. Hayden's experience can reliably form the basis for his opinions in these cases, especially as he admits that—whether at the FBI or as an expert witness—he has never before identified an unknown shooter based on the type of information he relies on here or determined whether the shooter was shooting intentionally. See Hayden Dep. Tr. at 20:12-18, 239:12-15. Put differently, Plaintiffs fail to show how Mr. Hayden's experience alone sufficiently enabled him to reach the conclusions in his Report regarding the point of origin and trajectory of bullets by eyeballing fourteen-year-old shooting scenes, talking to some witnesses, and reading—but, as discussed below, doing nothing to confirm— the reports of others.

Moreover, although Plaintiffs claim that "[a]n appropriate inquiry for an expert like Mr. Hayden is whether his 'preparation' was acceptable to others in the field" and that "[t]he methodology he used to arrive at his opinions is analogous to the methodology he

would use when he was an FBI agent," DE 352 at 9 (citing <u>Kumho Tire</u>, 526 U.S. at

151), it is clear that Mr. Hayden does not employ, in these cases, "the same level of

intellectual rigor that characterizes the practice of an expert in the relevant field."

<u>Kumho Tire</u>, 526 U.S. at 152.  In fact, Mr. Hayden freely concedes that the methodology

he utilized in these cases would have been unreasonable at the FBI:

> Q: Are you aware of any situation in which the FBI has said we're going to
> investigate eight different people who were shot at eight different places
> and we're going to finish all of those investigations in the course of a
> week?
>
> A: I am not.
>
> Q: That's not even probable, is it?
>
> A: It doesn't seem reasonable at all, no.

Hayden Dep. Tr. at 574:25-575:10.

Finally, Mr. Hayden's reliance on Mr. Goitia's ballistics reports does not salvage

the reliability of the opinions that Plaintiffs seek to have Mr. Hayden offer in these

cases.[9]  Plaintiffs argue that Mr. Hayden is permitted to rely on Mr. Goitia's opinions

since they are the type of opinions "reasonably relied upon by experts in [Mr. Hayden's]

field."  DE 352 at 13 (citing Fed. R. Evid. 703).  Defendants assert that Mr. Hayden is

not merely relying on Mr. Goitia's reports as data upon which an expert in Mr. Hayden's

field would reasonably rely on, but as substantive evidence of Mr. Hayden's ultimate

conclusions.  DE 363 at 9 n.3.  Defendants further argue that Mr. Hayden's reliance on

Mr. Goitia's conclusions is improper because Mr. Hayden does not "attempt[] to assess

the validity of the opinions relied upon," and simply parrots Mr. Goitia's opinions.  DE

---

[9] Mr. Hayden relied on Mr. Goitia's bullet point of origin determinations for three out of the eight
shootings at issue.

337-1 (citing <u>Sofillas v. Carnival Corp.</u>, No. 14-cv-23920, 2016 WL 5407889 at *4 (S.D. Fla. July 8, 2016)).

As an initial matter, Plaintiffs offer no support for their proposition that experts in Mr. Hayden's field—presumably "use of force" experts—reasonably rely on the opinions of ballistics experts in forming their opinions. Nevertheless, given that Plaintiffs define Mr. Hayden's "use of force" expertise as including the ability to determine who "used force"—i.e., where a shot was fired from—Defendants are correct that Mr. Hayden improperly uses Mr. Goitia's reports as substantive evidence of Mr. Hayden's ultimate conclusions regarding bullet point of origin, not simply as data points relied upon to form his own opinion. <u>See</u> <u>Deutz Corp. v. City Light & Power, Inc.</u>, 2009 WL 2986415 at *6 (N.D. Ga. Mar. 21, 2009) (excluding a proffered expert who "did not merely use [another expert's] report as data upon which an expert in his field would reasonably rely to form an opinion, but rather used the report as substantive evidence of one of his ultimate conclusions").

More fundamentally, Mr. Hayden's reliance on Mr. Goitia's reports is improper because Mr. Hayden is not a ballistics expert and is otherwise unqualified based on his experience to independently assess the validity of Mr. Goitia's opinions. <u>See</u> <u>Sofillas</u>, 2016 WL 5407889 at *4 (S.D. Fla. July 8, 2016) ("An expert . . . may not simply repeat or adopt the findings of another expert without attempting to assess the validity of the opinions relied upon." (internal quotation marks omitted)). Although Plaintiffs argue that "Mr. Hayden determined that Mr. Goitia's ballistics reports . . . were reliable," DE 352 at 13, they claim that Mr. Hayden made this reliability determination based solely on his experience. But as detailed above, Mr. Hayden is not a ballistics expert and has no

relevant experience to rely upon to evaluate Mr. Goitia's conclusions. See Deutz, 2009 WL 2986415 at *6 ("An expert who is not qualified in the field of metallurgy is not permitted to simply adopt the conclusions of the report of a metallurgist in forming his opinion."). Moreover, Mr. Hayden concedes that the purpose of his examinations of the shooting scenes was not "to confirm what Mr. Goitia had done," but rather, "to look at his report and see is it reasonably correct to be able to take a look at something and say the way he said it happened is the way it happened . . ." Hayden Dep. Tr. at 109:8-12. The Court cannot find that Mr. Hayden "tak[ing] a look" at the shooting scenes and evaluating, without any ballistics expertise and solely based on his general experience with firearms, whether a ballistics expert's opinions were "reasonably correct" is sufficient to elevate Mr. Hayden's reliance on Mr. Goitia beyond the mere parroting of Mr. Goitia's conclusions.

## CONCLUSION

In light of the foregoing, the Court finds that Mr. Hayden is not qualified to offer the opinions in his Report and that even if he was qualified, the methodology employed by Mr. Hayden to formulate the opinions in his Report is not sufficiently reliable. Accordingly, it is **ORDERED AND ADJUDGED** that Defendants' Motion to Exclude the Testimony of Philip P. Hayden  [DE 337 in Case No. 07-22459; DE 314 in Case No. 08-21063] is **GRANTED**.  Philip P. Hayden is precluded from providing expert testimony in these cases.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida, this 26th day of February, 2018.

JAMES I. COHN
United States District Judge

Copies provided to counsel of record via CM/ECF